WAGNER, CHOI & VERBRUGGE
James A Wagner
Neil J. Verbrugge
745 Fort Street, Suite 1900
Honolulu, Hawaii, 96813
(808) 533-1877
808) 566-6900(facsimile)
jwagner@hibklaw.com
nverbrugge@hibklaw.com

Attorneys for Hawaii
Outdoor Tours Inc.
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re: | Case No. 12-02279 (RJF) |
| HAWAII OUTDOOR TOURS, INC. dba Naniloa Volcanoes Resort and Naniloa Volcanoes Golf Club, | Chapter 11 |
| Debtor and Debtor-in-Possession | Date: N/A<br>Time: N/A<br>Place: United States Courthouse<br>Judge: Honorable Robert J. Faris |

**DEBTOR'S DISCLOSURE STATEMENT RE: PLAN OF REORGANIZATION, DATED MARCH 20, 2013; EXHIBITS A - I**

The debtor is a Corporation, tax ID # xx-xxx2353. The Debtor's address is P.O. Box 1417, Hilo, HI 96721

# TABLE OF CONTENTS

ARTICLE I. INTRODUCTION ................................................................................ 4
    1.01    Purpose of this Document ............................................................ 7
    1.02    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ..... 9
    1.02.1    Time and Place of the Confirmation Hearing ................................. 9
    1.02.2    Deadline for Objecting to the Confirmation of the Plan ...................... 9
    1.02.3    Identity of Person to Contact for More Information Regarding the Plan .. 10
    1.03    Disclaimer ...................................................................... 10
    1.04    Definitions, Interpretations and Rules of Construction ...................... 14
    1.04.1    Definitions ................................................................ 14
    1.04.2    Undefined Terms ......................................................... 26
    1.05    Interpretations, Computation of Time and Governing Law .................... 26
    1.05.1    Rules of Interpretation ................................................... 26
    1.05.2    Computing Time Periods ................................................. 28
    1.05.3    Section Numbers ........................................................ 28
    1.05.4    Notices and Delivery of Documents ...................................... 28

ARTICLE II. BACKGROUND ............................................................................ 29
    2.01    Description and History of the Debtor's Business .......................... 29
    2.02    Principals/Affiliates of Debtor's Business ................................. 31
    2.03    Management of the Debtor Before and After the Bankrutpcy ................ 31
    2.04    Events Leading to Chapter 11 Filing ...................................... 31
    2.05    Significant Events During the Bankrutpcy ................................. 34
    2.05.1    Bankrutpcy Proceedings ................................................. 35
    2.05.2    Other Legal Proceedings ................................................ 35
    2.05.3    Actual and Projected Recovery of Preferential or Fraudulent Transfers ... 36
    2.05.4    Procedures Implemented to Resolve Financial Problems .................... 36
    2.05.5    Current ................................................................. 37

ARTICLE III. SUMMARY OF THE PLAN OF REORGANIZATION ............................ 40
    3.01    What Creditors and Interest Holders Will Receive Under The Proposed Plan
        40
    3.02    Unclassified Claims ...................................................... 41
    3.02.1    Administrative Expenses ................................................. 41
    3.02.2    Priority Tax Claims ..................................................... 43
    3.03    Classified Claims and Interests ........................................... 44
    3.03.1    Classes of Secured Claims ............................................... 44
    3.03.2    Classes of Priority Unsecured Claims ..................................... 52
    3.03.3    Classes of General Unsecured Claims .................................... 53
    3.03.4    Classes of Interest Holders .............................................. 55
    3.03.5    Other State Court Actions ............................................... 56
    3.04    Means of Effectuating Plan ............................................... 56
    3.04.1    Funding for the Plan .................................................... 57
    3.04.2    Post-Confirmation Management .......................................... 57
    3.04.3    Disbursing Agent ....................................................... 57

3.05   Risk Factors ............................................................................. 58
3.06   Other Provisions of the Plan ................................................ 58
3.06.1   Executory Contracts and Unexpired Leases ................. 58
3.06.2   Changes in Rates Subject to Regulatory Commission ..... 62
3.06.3   Retention of Jurisdiction ............................................. 62
3.07   Tax Consequences of Plan ..................................................... 62

ARTICLE IV. CONFIRMATION REQUIREMENTS AND PROCEDURES ................. 64
4.01   Who May Vote or Object ...................................................... 64
4.01.1   Who May Object to Confirmation of the Plan ............... 64
4.01.2   Who ................................................................................. 64
4.01.3   Who Is Not Entitled to Vote ........................................ 66
4.01.4   Who Can Vote in More Than One Class ........................ 66
4.01.5   Votes Necessary to Confirm the Plan ........................... 66
4.01.6   Votes Necessary for a Class to Accept the Plan ........... 67
4.01.7   Treatment of Nonaccepting Classes ............................. 67
4.01.8   Request for Confirmation Despite Nonacceptance by Impaired Class(es) 67
4.02   Liquidation Analysis .............................................................. 68
4.03   Feasibility ............................................................................... 74

ARTICLE V. EFFECT OF CONFIRMATION OF PLAN ................................ 76
5.01   Discharge ................................................................................ 76
5.02   Revesting of Property in the Debtor .................................... 76
5.03   Modification of Plan .............................................................. 76
5.04   Post-Confirmation Status Report .......................................... 76
5.05   Post-Confirmation Conversion/Dismissal ........................... 77
5.06   Final Decree ........................................................................... 77

# ARTICLE I.

## INTRODUCTION

HAWAII OUTDOOR TOURS INC., the Debtor in Possession (hereinafter referred to as "Debtor" in this Case[1], provides this Disclosure Statement to all of its Creditors, Equity Security Holders, and to other parties in interest in the Case.

The Debtor commenced its Bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code, ("Code") Sections 101-1330, on November 20, 2012 (the "Petition Date"). The Debtor is continuing in the operation and management of its business pursuant to Bankruptcy Code Sections 1107 and 1108.

Section 1125 of the Bankruptcy Code requires that, at the time when the Plan is delivered to Creditors, the Plan be accompanied by this Disclosure Statement[2]. The purpose of this Disclosure Statement is to provide information of a kind, and in sufficient detail, so far as is reasonably practicable, in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable a typical Creditor or Equity Security Holder to make an informed judgment about the Plan and to enable such Creditor or Equity Security Holder to

---

[1]    The definitions of the capitalized terms used in this Disclosure Statement are contained in Section II. of this Disclosure Statement.

[2]    Section 1125(b) provides, in pertinent part, as follows: An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. . . .

11 U.S.C. § 1125(b) (2003).

Debtor's Disclosure Statement - 4

determine whether it is in his best interest to vote for (accept) or against (reject) the Plan.

Chapter 11 of the Bankruptcy Code allows debtors, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. The plan may provide for Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN. This Disclosure Statement contains a description of the Plan and other information relevant to the decision whether to vote to accept or to reject the Plan. The Debtor urges you to read this Disclosure Statement because it contains important information concerning the Debtor's history, business, assets, and liabilities and sets forth a summary of the Plan.

The Debtor's Plan is a reorganizing plan accomplished through the continuation of Debtor's primary business, the ownership, management, refinance and or sale of the Debtors' Hotel. In other words, the Plan Proponent (i.e., the Debtor) seeks to accomplish payment under the Plan primarily from the net proceeds and revenues generated through the revenues resultant from the room sales, bar and restaurant revenue, golf course revenue, convention and banquet revenue, and or the sale or refinance of the Naniloa Hotel Property. The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, refinancing assets of the estate or a combination of all of the above. The Debtor, Hawaii Outdoor Tours Inc., is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a _reorganizing_ Plan. In other words, the Proponent seeks to accomplish payments under the Plan by restructuring a note secured by real property of the estate held by First Citizens Bank. The secured creditors of the estate shall be paid the present value of their claim at a market interest rate over a sixty month period through net income generated from the Naniloa Hotel Property and/or through a sale or refinance of the Naniloa Hotel Property. The Effective Date of the proposed Plan is projected to be September 15, 2013. The first payment due under the plan is based upon the projected Effective Date is October 15, 2013.

The Plan will be implemented through the following means: The proceeds from net income resultant from the room sales, bar and restaurant revenue, golf course revenue, convention and banquet revenue will be used to fund the payments to both Secured and Unsecured Creditors provided for under the Plan The CEO of Debtor Kenneth Fujiyama, will provide oversight and assistance in the operation of the Debtor's business and day-to-day management decisions. The Debtor will work to maintain and increase room sales, bar and restaurant revenue, golf course revenue, convention and banquet revenue, as well as to refinance and or sell the Naniloa Hotel Property providing funds for the payment of creditors.

- The proceeds from net income resultant from the room sales, bar and restaurant revenue, golf course revenue, convention and banquet revenue and or the sale/refinance of the Naniloa Hotel Property will be used to fund the payments to both Secured and Unsecured Creditors provided for under the Plan. It is anticipated that there will be sufficient funds from the above referenced sources to pay all Allowed Secured and Allowed Unsecured Claims as follows:

- The secured claims of the Director of Finance-RPT County of Hawaii, Hawaii State Tax Collector, Department of Taxation, and First Citizens Bank

will be paid in full on or before the sixtieth (60th) month following the Effective Date, **excepting that the Allowed Claims of Director of Finance-RPT County of Hawaii and Hawaii State Tax Collector, Department of Taxation shall be paid in full on the Effective Date should the state of Hawaii or its assignee as Lessor to Hawaii Outdoor Tours, as Lessee under General Lease No. S-5844 effective February 1, 2006, determine that those allowed claims shall be paid in full on the Effective Date as a cure of monies due to maintain the terms and conditions due under General Lease No. S-5844.**

- Unsecured Priority Claims other than Priority Tax Claims shall be paid in full on the Effective Date

- Allowed Class 4 General Unsecured Claims will receive 100% of their allowed claim on or before the sixtieth (60th) month following the Effective Date.

**A MORE COMPLETE DESCRIPTION OF THE PROVISIONS OF THE PLAN AND THE MEANS OF EFFECTUATING THE PLAN ARE LOCATED AT SECTION IV.D. BELOW.**

**1.01** <u>**Purpose of this Document**</u>.

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan. This Disclosure Statement does not purport to be a complete description of the Plan, the financial data pertaining to the Debtor's business operations, the applicable provisions of the Bankruptcy Code, or any other matter which may be deemed significant by Creditors or Interest Holders. Out of practical necessity, this Disclosure

Statement represents an attempt to summarize extensive overall data, legal documents and legal principles, including provisions of the Bankruptcy Code, and to set them forth in understandable, readable form.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

1. **WHO CAN VOTE OR OBJECT;**

2. **WHAT THE TREATMENT OF YOUR CLAIM IS, (i.e., what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

3. **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

4. **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

5. **WHAT IS THE EFFECT OF CONFIRMATION; AND**

6. **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you. Be sure to read the Plan as well as all of this Disclosure Statement.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court has conditionally approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or

Debtor's Disclosure Statement - 8

against the Plan. However, the statements and conclusions set forth in this document are, unless otherwise noted, those of the Proponent of the Plan. The accuracy has not yet been determined by the Court, and the Court may determine such accuracy at the hearing regarding whether or not to confirm the Plan.

**1.02**    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS AND INTEREST HOLDERS IN THE CASE.**

**1.02.1    Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, 2013, at _____ A.M., 1132 Bishop Street, Suite 250L, Honolulu, Hawaii.

**1.02.2    Deadline for Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon **WAGNER, CHOI & VERBRUGGE** to the attention of James A Wagner , 745 Fort Street, Suite 1900, Honolulu, Hawaii, 96813 Telephone: (808) 533-1877, by _____,2013, at 5:00 P.M. Hawaii time.

At the Confirmation Hearing, the Bankruptcy Court will determine, pursuant to Section 1129 of the Bankruptcy Code, whether the Plan has been accepted by the necessary Classes of Claims and Interests created under the Plan, and if not, whether the Bankruptcy Court should nevertheless confirm the Plan. If at the Confirmation Hearing the Bankruptcy

Debtor's Disclosure Statement - 9

Court determines that the Plan meets all of the requirements for confirmation prescribed by the Bankruptcy Code, the Bankruptcy Court will enter a Confirmation Order. Pursuant to Section 1141 of the Bankruptcy Code, the effect of the Confirmation Order will be to make the provisions of the Plan binding upon the Debtor and each of its Creditors and Interest Holders, regardless of whether each Creditor or Interest Holder voted to accept the Plan.

### 1.02.3    Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan may contact James A Wagner at **WAGNER, CHOI & VERBRUGGE** 745 Fort Street, Suite 1900, Honolulu, Hawaii, 96813, Telephone: (808) 533-1877

### 1.03    Disclaimer

The Plan involves the payment of Claims from available Cash, from the room sales, bar and restaurant revenue, golf course revenue, convention and banquet revenue, and or from the sale or refinance of the Naniloa Hotel Property. The Debtor projects that there will be sufficient funds available to make the payments called for under the Plan. **The Debtor's financial projections filed in support of the Plan (included in Exhibit C attached hereto) were prepared by the Debtor.**

THE PROJECTIONS SET FORTH IN THIS DISCLOSURE STATEMENT REPRESENT A PREDICTION OF FUTURE EVENTS BASED UPON CERTAIN ASSUMPTIONS SET FORTH WITH SUCH PROJECTIONS. THESE FUTURE EVENTS MAY OR MAY NOT OCCUR, AND THE PROJECTIONS MAY NOT BE RELIED UPON AS A GUARANTEE OR OTHER ASSURANCE OF THE ACTUAL RESULTS WHICH WILL OCCUR. BECAUSE OF THE UNCERTAINTIES INHERENT IN PREDICTIONS OF

FUTURE EVENTS, THE DEBTOR'S ACTUAL CASH FLOW MAY WELL BE DIFFERENT FROM THAT PREDICTED, AND SUCH DIFFERENCE MAY BE MATERIAL AND ADVERSE TO THE INTERESTS OF THE CREDITORS.

The projections are intended to assess the future cash flow available to the Debtor for making the distributions required by the Plan. Significant assumptions underlying the financial projections include the following:

1. Effective Date of the Plan

For the purpose of the Projections, the Debtor estimates that the Confirmation Date will occur in or about August 15, 2013 and hence, that the Effective Date will occur in or about September 15, 2013.

2. Earnings Generated by Naniloa Hotel Property.

The Debtor's projection of the future earnings which will be generated by the Naniloa Hotel Property through the room sales, bar and restaurant revenue, golf course revenue, convention and banquet revenue, and or the sale/refinance of Naniloa Hotel Property is derived from Debtor's estimate of the revenue which the Naniloa Hotel Property will generate after the Confirmation Date.

3. Expenses of the Debtor

The Debtor has assumed, for the purpose of the Projections that their expenses will not increase by any significant amount, except as specifically set forth in the Projections, during the term of the Plan.

The information contained in this Disclosure Statement is provided by the Debtor. The Debtor represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge. The Court has not yet determined whether or not the Plan is confirmable and

U.S. Bankruptcy Court - Hawaii  #12-02279  Dkt # 230  Filed  03/20/13  Page 11 of 121

makes no recommendation as to whether or not you should support or oppose the Plan.

The financial data relied upon in formulating the Plan is based on the Debtor's post-petition financial projections, the Debtor's Bankruptcy Schedules, and the financial information contained in pleadings filed with the Bankruptcy Court. This information was not audited or reviewed by an independent accountant and the Debtor is unable to warrant or represent that such financial information is without any inaccuracies, although Debtor believes it has made reasonable efforts under the circumstances to present such financial information fairly and accurately. The Debtor represents that everything stated in the Disclosure Statement is true to the best of Debtor's knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

THIS IS A SOLICITATION BY THE DEBTOR. THE REPRESENTATIONS HEREIN ARE THOSE OF THE DEBTOR AND NOT OF ITS ATTORNEYS OR CONSULTANTS. NO REPRESENTATIONS CONCERNING THE DEBTOR OR POST-CONFIRMATION DEBTOR, INCLUDING, BUT NOT LIMITED TO, REPRESENTATIONS AS TO THE POST-CONFIRMATION DEBTOR'S FUTURE ACTIVITIES, THE VALUE OF ITS PROPERTY, THE AMOUNT OF CLAIMS AGAINST THE DEBTOR'S ESTATE, OR ANY TAX EFFECT OF THE TRANSACTIONS PROPOSED UNDER THE PLAN, ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN THAT ARE IN ADDITION TO OR DIFFERENT FROM THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT

SHOULD NOT BE RELIED UPON BY ANY PARTY IN INTEREST. ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO THE DEBTOR'S ATTORNEYS WHO, IN TURN, WILL DELIVER THE INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS THE BANKRUPTCY COURT MAY DEEM TO BE APPROPRIATE.

UNLESS SPECIFICALLY SET FORTH HEREIN TO THE CONTRARY, THE INFORMATION CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT REGARDING THE DEBTOR HAS NOT BEEN SUBJECT TO CERTIFIED AUDIT. RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY ON BOOKKEEPING PERFORMED INTERNALLY BY THE DEBTOR. THE DEBTOR BELIEVES THAT EVERY REASONABLE EFFORT HAS BEEN MADE TO PRESENT FINANCIAL INFORMATION AS ACCURATELY AS IS REASONABLY PRACTICABLE GIVEN THE NATURE AND HISTORY OF THE DEBTOR'S BUSINESS AND THE CONDITION OF THE DEBTOR'S BOOKS AND RECORDS. HOWEVER, THE FINANCIAL INFORMATION CONTAINED HEREIN REGARDING THE DEBTOR IS NEITHER WARRANTED NOR REPRESENTED TO BE FREE OF INACCURACY. COUNSEL FOR THE DEBTOR HAS NOT INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED HEREIN AND MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE ACCURACY THEREOF.

ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO REVIEW CAREFULLY THE PLAN AND THIS DISCLOSURE STATEMENT PRIOR TO VOTING ON THE PLAN. THE CONTENTS OF THIS DISCLOSURE

STATEMENT SHOULD NOT BE CONSTRUED IN ANY MANNER TO BE LEGAL, BUSINESS, OR TAX ADVICE. EACH CREDITOR AND OTHER PARTY IN INTEREST SHOULD CONSULT WITH HIS OWN LEGAL COUNSEL, BUSINESS ADVISOR, CONSULTANT, AND/OR ACCOUNTANT PRIOR TO VOTING TO ENSURE A COMPLETE UNDERSTANDING OF THE TERMS OF THE PLAN. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF THE CREDITORS AND INTEREST HOLDERS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED DECISION REGARDING THE PLAN.

THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT INDICATES ONLY THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION FOR THE PURPOSE OF SOLICITATION OF ACCEPTANCES TO THE PLAN BY THE DEBTOR, ASSUMING IT IS ACCURATE. HOWEVER, THE BANKRUPTCY COURT HAS NOT YET DETERMINED THE ACCURACY OF SUCH INFORMATION. IT MAY DO SO AT THE CONFIRMATION HEARING.

### 1.04 Definitions, Interpretations and Rules of Construction

#### 1.04.1 Definitions

1. "**Administrative Claim**" means a Claim for costs and expenses of the administration of the Case under Sections 503(b) or 507(b) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services); (b) all Claims of professionals employed at the expense of the Estate; and (c) any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

2.     "**Allowed Administrative Claim**" means an Administrative Claim allowed pursuant to Sections 503(b) or 507(b) of the Bankruptcy Code.

3.     "**Allowed Amount**" means the amount of any Claim against the Debtor determined in accordance with Sections 502 and 506(a) of the Bankruptcy Code and any other applicable Section of the Bankruptcy Code, and recognized by the Debtor as value or allowed by Final Order of the Court, except to the extent described or defined otherwise herein.

4.     "**Allowed Claim**" means a Claim: (a) with respect to which a Proof of Claim has not been filed but the Claim has been listed in the Schedules filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent, or unliquidated as to amount and as to which no objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such objection has been determined by a Final Order; or (b) with respect to which a Proof of Claim has been filed within the time period fixed by the Bankruptcy Court, and as to which no objection is filed within the time period fixed by the Bankruptcy Court, or as to which any such objection has been determined by a Final Order. **Class ___ Claim** means an Allowed Claim in the particular Class described.

5.     "**Allowed Class    Interest**" means an Allowed Interest in the particular Class described

6.     "**Allowed Class    Interest**" means an Allowed Interest in the particular Class described

7.     "**Allowed General Unsecured Claim**" means an unsecured Allowed Claim against the Debtor, however arising, not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, an Allowed Claim based on the rejection of an executory contract or unexpired lease.

**8.** "**Allowed Priority Claim**" means an Allowed Administrative Claim, Allowed Priority Tax Claim, or Allowed Priority Unsecured Claim.

**9.** "**Allowed Priority Tax Claim**" means an Allowed Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

**10.** "**Allowed Priority Unsecured Claim**" means an Allowed Claim entitled to priority pursuant to Sections 507(a)(3), 507(a)(4), or 507(a)(6) of the Bankruptcy Code.

**11.** "**Allowed Secured Claim**" means an Allowed Claim secured by a lien, security interest or other charge against property in which the Estate has an interest, or which is subject to setoff under Section553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Secured Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

**12.** "**Amended First Citizens Bank Note 1 Security Documents**" means the First Citizens Bank Note 1 Security Documents as they relate to the collateral securing the First Citizens Bank Note 1, as amended pursuant to the Plan. .

**13.** "**Approved Date**" means the date on which an Order approving the Disclosure Statement, or an amended version thereof, is entered by the clerk on the Court's docket.

**14.** "**Avoidance Action**" means any action which is filed or which may be filed pursuant to the provisions of Sections 510, 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, any actions based on applicable non Bankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, or any other similar action or proceeding filed to recover property for or on behalf of the Estate or to avoid a lien or transfer.

**15.** "**Ballot**" means the form distributed to holders of claims and interests on which is to be stated an acceptance or rejection of the Plan.

**16.** "**Bankruptcy Code**" means Title 11 of the United States Code, as now in effect or hereafter amended. All citations in the Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

**17.** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Hawaii, which has jurisdiction over the Case and the Estate of the Debtor, or such successor court or tribunal as may hereafter be confirmed or created by lawful authority with power to confirm reorganization plans under Chapter 11 of the Bankruptcy Code and all applicable statutes, rules, and regulations pertaining thereto.

**18.** "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for use in the Bankruptcy Court, as now in effect or hereafter amended.

**19.** "**Bar Date**" means the last date for filing Proofs of Claim other than Administrative Claims or Claims based upon the rejection of any executory contracts or unexpired leases. The Bar Date for filing Proofs of Claim was set by the Bankruptcy Court as _____.

**20.** "**Business Day**" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**21.** "**Case**" means the Debtor's Chapter 11 case which was filed in the Bankruptcy Court, as 12-02279 (RJF)

**22.** "**Cash**" means cash and cash equivalents, including, but not limited to, checks or similar forms of payment or exchange.

23.     "**Claim**" means: (a) a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

24.     "**Claimant**" means the holder of a Claim.

25.     "**Class**" means a grouping into which Claims or Interests which are substantially similar to other Claims or Interests have been classified pursuant to Article IV of the Plan.

26.     "**Confirmation**" means the entry of the Confirmation Order by the Bankruptcy Court.

27.     "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

28.     "**Confirmation Hearing**" means the hearing, including any continued or postponed session thereof, at which time the Bankruptcy Court will consider and determine whether to confirm the Plan.

29.     "**Confirmation Order**" means the order, as entered, of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

30.     "**Creditor**" means the holder of an Allowed Claim.

31.     "**Debtor or HOT**" means HAWAII OUTDOOR TOURS INC., the debtor and debtor-in-possession in the Case.

**32.** "__Disallowed Claim__" means a Claim against the Debtor, which Claim is disallowed pursuant to an order of the Bankruptcy Court as to which eleven (11) calendar days have passed following entry of such order and no stay pending an appeal of such order is obtained during such period

**33.** "__Disbursing Agent__" means the person or entity charged with making Distributions pursuant to the terms of the Plan. Pursuant to the Plan, the Reorganized Debtor will serve as the Disbursing Agent under the Plan.

**34.** "__Disclosure Statement__" means the Disclosure Statement (and all exhibits or schedules annexed thereto or referenced therein) which accompanies the Plan, as the Disclosure Statement may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

**35.** "__Disputed Claim__" means any Claim: (a) listed on the Debtor's Schedules as unliquidated, disputed, or contingent; or (b) as to which the Debtor, or any other party in interest, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation or subordination has not been withdrawn or determined by a Final Order. A Claim will be considered a Disputed Claim in its entirety if an objection is timely filed to any portion of such Claim.

**36.** "__Disputed Claims Reserve Account__" means the segregated account to be created for holding the pro-rata share of any Disputed Claims pending final resolution of the Disputed Claim.

**37.** "__Distribution__" means the Cash which is required to be distributed under the Plan to the holders of Allowed Claims.

**38.** "**DLNR Fiscal Office**" means The Hawaii Department of Land and Natural Resources, the beneficiary of a $500,000 performance bond dated February 1, 2012 by and between DLNR as beneficiary and Hawaii Outdoor Tours, Inc., as Obligor and which bond had a balance owing of approximately $259,971.03 on the petition date.[3]

**39.** "**Effective Date**" means the date not later than ninety (90) days following the date upon which the Confirmation Order becomes a Final Order; provided, however, that, if an appeal of the Confirmation Order is timely filed, the Debtor may elect to cause the Plan to become effective, notwithstanding the pendency of such appeal, so long as no stay of the Confirmation Order is in effect, by filing with the Bankruptcy Court a notice of such election, in which event the Plan will become effective as provided herein.

**40.** "**Equity Security Holder**" means the holder of an Interest in the Debtor.

**41.** "**Estate**" means the estate created under Section 541 of the Bankruptcy Code in the Case.

**42.** "**Exhibits**" means those exhibits annexed to the Plan or Disclosure Statement or incorporated by reference in the Plan or Disclosure Statement.

**43.** "**File**," "**Filed**," or "**Filing**" means filed with the Bankruptcy Court having jurisdiction over the Case.

---

[3] On October 5, 2012, the Lender made a payment of $260,015.95 to cure the default on the performance bond. On November 20, 2012, the Debtor filed for bankruptcy. In December 2012, the Lender made a lease payment for August 2012 rent in the amount of $262,000 which is a superpriority administrative claim under the terms of the Second Cash Collateral Stipulation.

**44.** "**Final Distribution**" means, for each Class, the last Distribution to be made to holders of Allowed Claims in that Class.

**45.** "**Final Order**" means an order or judgment of the Bankruptcy Court, or of any court of competent jurisdiction where there is pending an action in which the Debtor is a party, which has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending; or (b) any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor; or (c) any appeal, petition for certiorari, reargument or rehearing has been resolved by the highest court to which the order or judgment was appealed timely or from which certiorari, reargument, or rehearing was sought.

**46.** "**Financial Projections**" means the financial statements prepared by the Debtor which sets forth, among other things, the Debtor's cash flow projections, and which is attached as Exhibit "C" hereto.

**47.** "**First Citizens Bank**" means First Citizens Bank, the holder of the beneficial interest in: (1) 1st deed of trust encumbering the Naniloa Hotel Property. First Citizens Bank is the successor in interest to First Regional Bank. On January 29, 2010 First Citizens Bank entered into an agreement with the Federal Deposit Insurance Corp. (FDIC) to purchase substantially all the assets and assume the majority of the liabilities of First Regional Bank of Los Angeles, California.

**48.** "**First Citizens Bank Note 1**" means that certain Promissory Note secured by a first trust deed encumbering the Naniloa Hotel Property, of First Citizens Bank, as successor in

interest to First Regional Bank, as of the petition date including all amendments and modifications thereto.

49. **"First Citizens Bank Note 1 Collateral**" means the first deed of trust encumbering the leasehold interest of the Naniloa Hotel Property.

50. **"First Citizens Bank First Note 1**" means that certain Promissory Note to be executed by the Reorganized Debtor as maker in favor of the current holder of the First Citizens Bank Note 1 pursuant to the Plan in an amount equal to the amount of the First Citizens Bank Note 1 on the Effective Date secured by an first deed of trust encumbering the First Citizens Bank Note 1 Collateral as of the Effective Date.

51. **"General Lease No. S-5844"** means the state of Hawaii or its assignee as Lessor to Hawaii Outdoor Tours, as Lessee under General Lease No. S-5844 effective February 1, 2006.

52. **"General Unsecured Claim"** means an unsecured Claim against the Debtor that is not entitled to priority under Section 507(a) of the Bankruptcy Code, including, without limitation, a Claim based on the rejection of an executory contract or unexpired lease.

53. **"KDC"** means Ken Direction Corporation, the parent company of the Debtor.

54. **"Kenneth Fujiyama**" means Kenneth Fujiyama, the CEO of the Debtor

55. **"Naniloa Hotel Property or Debtors Property**" means the Hotel and golf course located at 93 Banyon Drive, Hilo, Hawaii, 96721 95356, consisting of an area of 6.35 acres, more or less ("Naniloa Hotel"), and a nine-hole Golf Course and Allied Facilities Site, containing a gross area of 63.775 acres, and a net area of 62.576 acres after exclusions ("Golf Course").

**56.** "**Net Sales Proceeds**" means all of the Cash proceeds from the sale of the assets of the Estate minus all costs of sale and administrative expenses of the Estate including, but not limited to, the fees and expenses of the Disbursing Agent and Professionals employed by the Estate, income taxes and payments pursuant to the Plan to creditors holding Allowed

**57.** "**New Value contribution**" means the equity contribution by KDC for the benefit of the Debtor consisting of proceeds from the future sale of the approximately 1,952 acres of oceanfront land in the Kau district of Hawaii as well as from sale of other KDC and its' subsidiary assets and any third party cash contributions to fund the plan on the Effective date.

**58.** "**Order**" means an order or judgment of the Bankruptcy Court as entered on the Court's docket.

**59.** "**Person**" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision, governmental unit (as defined in the Bankruptcy Code) or official committee appointed by the United States Trustee.

**60.** "**Petition Date**" means November 20, 2012, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code, commencing the Case.

**61.** "**Plan**" means the Debtor's Chapter 11 Plan of Reorganization, as the Plan may be amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

**62.** "**Post-Confirmation Estate Claims** "means any and all claims and causes of action which constitute property of the Estate including, but not limited to, any Avoidance

Actions, whether or not such claims or causes of action are the subject of litigation pending as of the Effective Date.

63. **"Post-Petition Earnings"** means any funds received by Debtor since the Petition Date.

64. **"Priority Claim"** means an Administrative Claim, Priority Tax Claim, or Priority Unsecured Claim.

65. **"Priority Tax Claim"** means a Claim asserted to have priority under Section 507(a)(8) of the Bankruptcy Code.

66. **"Priority Unsecured Claim"** means a Claim asserted to have priority under Sections 507(a)(3), 507(a)(4), or 507(a)(6) of the Bankruptcy Code.

67. **"Professionals"** mean professionals, such as attorneys, consultants or accountants employed by the Disbursing Agent in this case after the confirmation of the Plan, including but not limited to, James A Wagner.

68. **"Pro Rata"** means the proportional amount of any one Claim or Equity Interest in a Class or a group of Claims to the aggregate amount of all Claims or Equity Interests in the same Class or group, including Disputed Claims until disallowed.

69. **"Proof of Claim"** means a statement under oath filed in the Case by a Claimant in which the Claimant sets forth the amount claimed to be owed to it and sufficient detail to identify the basis for the Claim, in accordance with Federal Rule of Bankruptcy Procedure 3001.

70. **"Reorganized Debtor"** means the Debtor, Hawaii Outdoor Tours Inc., on and after the Effective Date, who shall assume all of the rights and obligations of the Debtor

together with title to and control of the Debtor's assets and liabilities upon Confirmation of the Plan, as such rights, obligations, assets and liabilities are modified in the Plan

71.  "**Schedules**" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor in the Case, as amended, modified, or supplemented from time to time.

72.  "**Secured Claim**" means a Claim secured by a lien, security interest or other charge against property in which the Estate has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such Secured Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be.

73.  "**Secured Creditor**" shall mean the holder of an Allowed Secured Claim.

74.  "**Shareholder Interest**" means a shareholder interest in the Debtor.

75.  "**Tax Collector**" means the County Treasurer/Tax Collector or its successors-in-interest

76.  "**Unclaimed Distribution**" means any Distribution which is unclaimed as a result of any of the following: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which remain un-negotiated for a period of ninety (90) days after the date of issuance.

77.  "**Unclassified Claims**" means the Allowed Amount of all Administrative Claims of the Debtor's Case, allowed pursuant to Section 503(b) of the Bankruptcy Code; and

U.S. Bankruptcy Court - Hawaii   #12-02279   Dkt # 230   Filed  03/20/13   Page 25 of 121

(ii) all Priority Tax Claims entitled to priority pursuant to SECTION 507(a)(8) of the Bankruptcy Code.

**78.** "**Unsecured Creditors**" means Creditors holding Allowed Unsecured Claims against the Debtor for which there are no assets of the Debtor serving as a security, but not including Priority Claims.

**79.** "**Wage Claimant**" means a Claimant asserting a Claim pursuant to Section 507(a)(3) or (a)(4) of the Bankruptcy Code.

### 1.04.2    Undefined Terms

Any term used in the Disclosure Statement that is not defined in the Disclosure Statement, either in Section II.A (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

## 1.05    Interpretations, Computation of Time and Governing Law

### 1.05.1    Rules of Interpretation

For the purposes of the Disclosure Statement:

1.    Whenever, from the context, it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural.

2.    Any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

3.    Any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date.

Debtor's Disclosure Statement - 26

4.      Unless otherwise specified in a particular reference in the Plan, all references in the Plan to Sections, Articles or Exhibits are references to Sections, Articles and Exhibits of or to the Plan.

5.      Unless otherwise specified in a particular reference in the Plan, the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan in its entirety rather than only to a particular paragraph, subparagraph, or clause contained in the Plan.

6.      Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

7.      The rules of construction set forth in Bankruptcy Code Section 102 shall apply.

8.      The provisions of the Plan will control over any description thereof contained in the Disclosure Statement.

9.      Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply hereto. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to the exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in each exhibit to the Plan.

10.      Except to the extent that federal law, including the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be

governed by, and construed and enforced for all purposes in accordance with, the laws of the state of Hawaii, without giving effect to any principles of conflict of laws thereof.

All exhibits to the Plan are incorporated into the Plan and will be deemed to be included in the Plan, regardless of when they are filed.

### 1.05.2    Computing Time Periods

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 1.05.3    Section Numbers

References in the Plan and Disclosure Statement to a Code section are references to the United States Bankruptcy Code (Title 11 of the United States Code) except as otherwise indicated.

### 1.05.4    Notices and Delivery of Documents

All notices, correspondence, and other deliveries under this Disclosure Statement must be directed as follows:

| To the Debtor or Reorganized Debtor: | HAWAII OUTDOOR TOURS INC.,<br>Attn: Kenneth Fujiyama<br>P.O. Box 1417, Hilo, HI 96721 |
|---|---|
| With a Copy to: | James A Wagner  Esq.<br>745 Fort Street, Suite 1900, Honolulu, Hawaii, 96813 Telephone: (808) 533-1877 |

## ARTICLE II.

## BACKGROUND

### 2.01    Description and History of the Debtor's Business

The Debtor Hawaii Outdoor Tours Inc. is a Corporation formed under the laws of the State of Hawaii.

Hawaii Outdoors Tours Inc., the owner of the Naniloa Hotel Property was formed by KDC on December 6, 1991 to create a tour company to provide activities on some 5,000 acres of land HOT leased from the State of Hawaii intended to complement the services provided at the Volcano House Hotel.  HOT had requested a special use permit to allow horseback riding and camping on the property, however, the State of Hawaii took over 5 years to respond to HOT's request, and HOT finally decided to drop its tour activities plan.

The Debtor acquired the Naniloa Hotel Property on September 30, 2005, by placing the high bid of $500,000 per annum and other consideration to acquire the ground leasehold rights under General Lease No. S-5844 ("General Lease"), which auction included a provision that the successful bidder pay the former lessee $6,000,000, for its leasehold improvements, FF&E, and related assets.  In addition, the Debtor agreed to pay the former lessee $130,000 for personal property.

In conjunction with acquiring the leasehold rights, on or about January 20, 2006, the State of Hawaii and the Debtor entered into the General Lease which covers a resort site, containing an area of 6.35 acres, more or less ("Naniloa Hotel"), and a nine-hole Golf Course and Allied Facilities Site, containing a gross area of 63.775 acres, and a net area of 62.576 acres after exclusions ("Golf Course").  The General Lease is for a term of 65 years, commencing February 1, 2006, and provides for total ground rent for the first ten years of

U.S. Bankruptcy Court - Hawaii  #12-02279  Dkt # 230  Filed 03/20/13  Page 29 of 121

$500,000 annually (or 2% of gross revenues, whichever is greater), payable by two semi-annual payments of $250,000.

The Debtor acquired the Naniloa Hotel Property with the understanding that the property was in disrepair and required significant renovations in order for it to achieve its highest and best use. To that end, a condition of the state in auctioning the General Lease rights was the requirement for the successful bidder to complete $5 million in Hotel improvements within approximately 3 years of the successful bid, which outside date was agreed to be no later than January 31, 2009. As part of its investment analysis, the Debtor understood that the along with the significant renovations to the Naniloa Hotel Property, there was major deferred maintenance that also required capital infusion and that the physical plant would be in a state of flux requiring its operations to be limited while the rehabilitation took place; hence, the Debtor anticipated incurring operating losses for 5 years while managing the Naniloa Hotel Property until the scheduled renovations and deferred maintenance work were completed.

On or about January 23, 2006, the Debtor executed a Note in favor of First Regional Bank in the principal amount of $10,000,000 (the "Note"), and executed a Construction Mortgage and security agreements in favor of First Regional Bank under which the Naniloa Hotel Property was collateral securing the indebtedness. The Debtor used its own cash plus some of the loan proceeds to acquire the leasehold improvements. The Debtor also paid to the prior Lessee $300,000 to assume a lease for 2 acres of land and the former Banyan Broiler restaurant from the Eleanor Benda Trust. The Debtor applied the remaining balance of funds from the loan from First Regional towards paying for costs for improvement, acquisition of upgraded furniture, fixtures, and equipment ("FFE"), and operating costs for the Naniloa Hotel

Property.  Besides the $10,000,000 loan from First Regional Bank, the Debtor estimates that it has invested and additional approximately $10,000,000 of its own cash by way of invested capital and loan proceeds from its parent company KDC and a sister corporation.

The property is comprised of 3 towers connected by an interior lobby and consists of 375 rooms totaling 138,521 square feet of living space out of a total of 229,018 square feet of hotel space which includes ancillary uses dedicated to food service areas, a spa, administrative offices and a gift shop.  In addition to the hotel space and ancillary uses, the property contains special use, convention and restaurant space totaling 30,716 square feet as well as 195 parking spaces a pool and the nine hole golf course.

The property has an average daily rate and average occupancy generating revenues sufficient to meet the debt service requirements and plan payments to all of the creditors of the estate.

**2.02     Principals/Affiliates of Debtor's Business**

The Debtor, Hawaii Outdoor Tours Inc., is made up of 1 shareholder, KDC, as listed in Section 21 of the schedules.

**2.03     Management of the Debtor Before and After the Bankruptcy**

Management of the Debtor and the Debtor's Naniloa Hotel Property both before and after the filing of the Bankruptcy is by the Debtor.

**2.04     Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

The Debtor acquired the leasehold interest in the Property for the purpose of

Debtor's Disclosure Statement - 31

re-posturing the property and remodeling the Naniloa Hotel Property into a destination resort. After the closing of the leasehold purchase and execution of the 65 year lease with the State of Hawaii, in February, 2006, construction commenced on the remodeling of the property and in mid, 2006, the Debtor started demolition work and commenced its renovation plan. The Debtor's planned renovation project included significant work on all 3 towers located on the Naniloa Hotel Property: Mauna Kea Tower, Mauna Loa Tower, and the Kilauea Tower. The Debtor successfully made $5 million in improvements to the Naniloa Hotel Property by the State's January 31, 2009 deadline. From 2007 to 2009, the State of Hawaii conducted inspections of the Naniloa Hotel Property confirming the Debtor's expenditure of more than $5,000,000 in improvements by the January 31, 2009 deadline. As of 2009, the Debtor's expenditure of $5 million had funded a significant portion of the Debtor's renovation plan. However, the Debtor's satisfaction of the State's $5 million renovation value requirement was not the completion of the Debtor's planned renovation project which had an estimated budget of approximately $10,000,000 or more. Instead, the Debtor was only about half way through its renovation plan.

As the Debtor was diligently performing its renovation plan, which envisioned a "complete remodel" of all the rooms in the Naniloa Hotel Property, the Debtor anticipated obtaining additional funding from KDC to fund the remaining renovation costs. In 2009 and 2010, the Debtor expected to receive additional funding from KDC in the approximate amount of $5 million to finish the renovation plan for the Naniloa Hotel Property. In 2009-2010, KDC expected to close a sale of land in Kau to the National Park Service for approximately $4 million, and expected to have another subsidiary refinance and sell another real property asset to generate an additional $1 million. However, the sale of the Kau land to National Park

Debtor's Disclosure Statement - 32

Service did not close due to National Park Service's budget problems, and the deal was not consummated. Additionally, by 2009 and 2010, as a result of the historic "credit crunch" and the subsequent Great Recession, the real estate market had crashed which prevented KDC's other subsidiary from refinancing and selling its other real property asset.

Although the Debtor was expecting to incur operating losses during the renovation of the Naniloa Hotel, due to the lack of financing from KDC, the delay in completing the renovation plan has been much longer than anticipated and the Debtor has incurred net operating losses for a longer period than expected.

Although the first $5M in renovations were finished on schedule, the completion of the first phase of the remodel coincided with the onset of the great recession and the general economic decline that has been a drag on the overall economy since the recession began in December, 2007; therefore, the Debtor's projected revenues from room sales plummeted and the Debtor experienced difficulties in meeting its debt service obligations to First Citizens Bank and in meeting its land lease payment obligations to the state of Hawaii.

Throughout 2010, 2011 and 2012, the Debtor attempted to negotiate a loan restructure with First Citizens Bank. To that end, First Citizens Bank had made assurances to the Debtor that it would extend the loan including written e-mails in September of 2011 and December of 2011 wherein First Citizens acknowledged by that it was preparing final documents to extend the loan,

In direct contradiction to the e-mail assurances that the loan would be extended, on February 7, 2012, the Debtor was notified in writing by First Citizens Bank that unless the Debtor paid the loan in full within 7 days, that First Citizens Bank would pursue all of its legal options which included foreclosure. Just 5 days later, on February 12, 2012 the Debtor

Debtor's Disclosure Statement - 33

U.S. Bankruptcy Court - Hawaii  #12-02279  Dkt # 230  Filed  03/20/13  Page 33 of 121

1  negotiated an amendment to its Performance Bond with the DLNR whereby the DLNR

2  withdrew and credited $500,000 of the $1,000,000 Performance Bond that was secured by

3  $1,000,000 in cash the Debtor had placed on deposit at First Citizens Bank in Torrance,

4  California.  The $500,000 withdrawal by the State of Hawaii was credited to the payment of

5  $500,000 in past due bi-annual land lease payments ($250,000 apiece) and reduced the

6  Performance Bond obligation to $500,000.

7       After successfully negotiating the interim resolution with the DLNR, the Debtor

8  continued in its attempts to negotiate a loan restructure with First Citizens Bank who continued

9  to demand that the Debtor pay off the approximately $9.7M balance owing on the construction

10  loan. On June 18, 2012, First Citizens Bank sent the Debtor a Notice of Default letter notifying

11  Debtor that it was in default and that all sums due under the promissory note were due and

12  payable and that First Citizens Bank had the right to institute foreclosure proceedings.

13  After June 18, 2012, the Debtor continued in its attempts to negotiate a loan restructure, with

14  First Citizens Bank, but was unsuccessful.

15       On about May 25, 2012, the DLNR withdrew an approximate additional $259,971.03

16  from the performance bond on deposit with First Citizens Bank in Torrance, California for the

17  payment of the bi-annual $250,000 land lease payment and late fees, resulting in the $500,000

18  performance bond being in default and requiring a $259,971.03 cash replenishment.  .

19       Unable to finalize negotiations with First Citizens Bank and needing to modify the

20  terms of its performance bond with the State of Hawaii, on November 20, 2012, in order to

21  protect its business and to reorganize its debt, the Debtor filed for protection under Chapter 11

22  of the Federal Bankruptcy Code.

23  **Significant Events During the Bankruptcy**

24

Debtor's Disclosure Statement - 34

### 2.04.1   Bankruptcy Proceedings

The following is a chronological list of significant events which have occurred <u>during</u> this case:

On or about November 20, 2012, the Debtor' filed its chapter 11 case.

12/20/12:   The debtor & the secured lender have reached a stipulation regarding the continued use of cash collateral

12/20/12:   Order Granting Application to Employ Wagner Chooi & Verbrugge as Debtor's Bankruptcy Counsel

12/20/12:   Order Authorizing Debtor To Pay Pre-Petition Wages and Other Employment-Related Costs and Expenses and to Honor Pre-Petition Employee Benefits

12/20/12:   Notice of Appointment of Committee of Creditors

2/19/13:   Motion to Appoint Trustee ; Memorandum in Support of Motion; Filed by Dana R.C. Lyons on behalf of First-Citizens Bank & Trust Company.

3/4/13:   Motion for Order Extending Time for Debtor to Assume or Reject Non-Residential Leases

This Disclosure Statement and the accompanying Plan are part of substantial opposition to the Motion to Appoint Trustee.

### 2.04.2   Other Legal Proceedings[4]

In addition to the proceedings discussed above, the Debtor is currently involved in the following non-Bankruptcy legal proceedings:

Foreclosure Action:   Case # 12-1-2105-08: First Citizens Bank vs. Hawaii Outdoor Tours Inc.

Rosenbaum Litigation:   Deborah Rosenbaum vs. Hawaii Outdoor Tours Inc.

---

[4] See Exhibit B – List of Litigation.

Debtor's Disclosure Statement - 35

Appointment of Receiver:       First Citizens Bank vs. Hawaii Outdoor Tours Inc.

### 2.04.3    Actual and Projected Recovery of Preferential or Fraudulent Transfers

Nothing is estimated to be realized from the recovery of fraudulent and preferential transfers.  The following is a summary of the fraudulent conveyance and preference actions filed or to be filed in this case:  Because the Debtor's Plan of Reorganization proposes payment in full of all claims, the Debtor does not expect, at this time, to file any fraudulent conveyance or preference actions in this case.

### 2.04.4    Procedures Implemented to Resolve Financial Problems

To attempt to fix the problems that led to the Bankruptcy filing, Debtor has implemented the following procedures:

The Debtor has jointly put in place a new marketing plan with a major Travel wholesaler who has travel offices in California, New York, Nevada, Canada and China to bring visitors to Hilo for 3 to 4 nights which up until instituting new marketing plan had not been done on Hilo. Additionally, the Debtor changed its sales personnel to better fit the new marketing plan. The effects of this new marketing plan and sales personnel changes have greatly improved the hotel occupancy since the petition date.  The Debtor also expanded its' restaurant and bar operations by operating both of them in-house since it had not been able to find viable tenants to run its' restaurants or bars. In order to bring profitability to the restaurant and bar, the Debtor scaled down its' banquet operations so it could rent the banquet facilities without long term commitments to customers, with the intention of building up the food and beverage business as Ken Fujiyama had done in his prior experience in Hotel operation and management for almost 30 years.

In addition to the new marketing and staffing, the Debtor has cut expenses and increased efficiencies such that any increase in revenues will greatly enhance net income and will not require a major increase in staffing. To that end, the Debtors Monthly Operating Reports reflect payroll remaining fairly constant while major increases in room revenue have taken place. What increase there is in overall hourly time is mainly in housekeeping where the Debtor has added one housekeeper for every 15 to 20 rooms increase in occupancy. In order to maintain efficiencies as revenues grow the Debtor has cross trained most of its' employees so they can be moved within the organization to meet fluctuating demands which maximizes their abilities, streamlines daily operations, and reduces overhead.

The Debtor has re-estimated the monies required to complete the renovations to address the current and projected market conditions and determined that a $1.5m to $3.5M budget is sufficient to complete the renovation and meet market demand. To that end, the Debtor is negotiating with International Hotel Group who issued a Letters of Intent on March 14, 2013 for a ten (10) year licensing agreement to brand the Naniloa Hotel Property as part of the Holiday Inn Resorts International Hotel Group operates the Holiday Inn Beachcomber Resort in Waikiki whose success has peaked their interest in the Naniloa Hotel Property. Ken Fujiyama is negotiating additional terms and conditions to be incorporated into the Letter of Intent as well as the budget to renovate the rooms which will fluctuate between $1.5M and $3M depending on the target average daily rate the Debtor and International Hotel Group settle on. Attached hereto as Exhibit "H" and incorporated herein by reference is a true and correct copy of the March 14, 2013 International Hotel Group Letter of Intent.

The Debtor either intends to operate the Naniloa Hotel Property post confirmation by gradually completing the renovation of the Property through utilization of excess net revenues

and infusion of investor capital. A second alternative the Debtor is exploring is the funding of a $1.5M to $3M renovation on the Effective Date through a convertible super priority loan. The convertible super priority loan would subordinate the Class 1, 2 and 3 Claimants until construction of the renovation is completed and the Naniloa Hotel Property reaches a stabilized occupancy at which time the super priority loan converts to shares of stock in the reorganized debtor. Debtor's financial projections (Exhibit "C") demonstrate the post petition payments under the plan can be met without the renovation. At the point the Debtor finalized its' Letter of Intent with International Hotel Group amended projections will be filed by the Debtor showing the $1.5M to $3M renovation, its impact on revenues.

Ken Fujiyama intends to cause to be deeded from KDC the approximately 1,952 acres of oceanfront land in the Kau district of Hawaii that is free and clear of all liens to the Debtor on the Effective Date as a New Value Contribution and as additional collateral for First Citizens Bank should the court approve a super priority loan. The Debtor estimates the value of the Kau property to be very conservatively $8,000,000. The Debtors estimate of value is based upon the sale of a500 acre property located approximately 8 miles from the Kau site being contributed to the estate that sold for $4M or $7,800 per acre and zoned "conservation: which allows for no economic use. The Debtors property is zoned agriculture which allows for economic uses and based upon a $7,800 per acre value, would have a value of $15M. The Debtor is submitting the 1,952 acre property to the count of Hawaii this summer to meet their timeframe for consideration of acquisitions by the county on its December docket. The county has set aside 2% of its real property tax revenue to fund the acquisition of oceanfront properties in the vicinity of the 1.952 acres site. The 1,952 acres has two and one half miles of oceanfront and is a prime candidate for acquisition.

The Debtor is negotiating a letter of intent to fund the $1.3M to $3M convertible super priority loan. The Debtor intends to attach as Exhibit "G" to the Disclosure Statement, a letter of intent to fund the $3,000,000 Convertible Super Priority Loan upon its receipt.

**Current and Historical Financial Conditions**

The Debtor currently meets its' debt service obligations for the Naniloa Hotel Property and the Hotel's financial performance has improved since the filing of the bankruptcy petition.

To that end, the Debtor's November 28, 2012, December 14, 2012, December 30, 2012, January 15, 2013, January 30, 2012, and February 28, 2013 Manager's Daily Report show increased room sales, and occupancy.

The Debtor's November 28, 2012 Manager's Daily Report shows that November 2012 taxable room sales was $179,199.33.

The Debtor's December 30, 2012 Manager's Daily Report shows: (i) December 2012 monthly taxable room sales of $238,174.03 (a significant increase over last year's December 2011 monthly taxable room sales of $168,120.12); (ii) December 2012 occupancy of 50.43% (an increase over December 2011 occupancy of 36.46%).

The Debtor's January 29, 2013 Manager's Daily Report shows: (i) January 2013 monthly taxable room sales of $239,885.62 (a significant increase over last year's January 2012 monthly taxable room sales of $186,967.71); (ii) January 2013 occupancy of 48.80% (an increase over January 2012 occupancy of 42.47%). January 2013 year to date taxable room sales are 28.30% higher than year to date January 2012 taxable room sales.

The Debtor's February 28, 2013 Manager's Daily Report shows: (i) February 2013 monthly taxable room sales of $370,511.26 (a significant increase over last year's February 2012 monthly taxable room sales of $278,070.70); (ii) February 2013 occupancy of 71.84%

(an increase over February 2012 occupancy of 60.54%). February 2013 year to date taxable room sales are 31.08% higher than year to date February 2012 taxable room sales.

In sum, each month post-petition, the Debtor has increased its monthly taxable room sales: November 2012: $179,199.33; December 2012: $239,174.03; January 2013: $239,885.62; February 2013: $370,511.26.

The Debtor's December 2012 income statement shows actual revenue of $367,389.37 and actual expenses $350,492.82. The actual expenses are inclusive of $55,000 monthly payment to First Citizens.

The Debtor's January 2013 income statement shows actual revenue of $355,648.42 and actual expenses $288,676. The actual expenses are inclusive of $55,000 monthly payment to First Citizens.

The Debtor estimates as of the writing of this disclosure Statement that it will meet its debt service obligations on the Naniloa Hotel Property on the Effective Date and through the term of the plan through cash flow generated by room sales, bar and restaurant revenue, golf course revenue, convention and banquet revenue, and the eventual sale or refinance of the Naniloa Hotel Property.

The identity and fair market value of the estate's assets are listed in Exhibit A.

### ARTICLE III.

### SUMMARY OF THE PLAN OF REORGANIZATION

**3.01    What Creditors and Interest Holders Will Receive Under The Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

### 3.02    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

### 3.02.1    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| James A Wagner | $40,000 | Paid in full on Effective Date |

| | | |
|---|---|---|
| Priority Unsecured Claims[5] | | |
| First Citizens Claim for Land Lease Payment Super Priority Administrative Claim | 262,000 [6] | Paid in full on Effective Date |
| | | |
| Clerk's Office Fees | 500 | Paid in full on Effective Date |
| Office of the U.S. Trustee Fees | $6,500 (3rd qtr '13) | Paid in full on Effective Date |
| | TOTAL $309,000 | |

### 3.02.1.1 Court Approval of Fees Required

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file

---

[5] The "various guest deposits" of $109,328.29 referenced as Creditor 5 under Debtors Schedule E" Priority Unsecured Creditors" are deposits associated with room sales and each guest is credited the deposit amount upon final billing, meaning the guest deposits owed by the Debtor in any given week are credited to the guest upon checking out and paid at that time; therefore the $109,328.29 listed in Schedule E is a fluid amount that is collected by the Debtor and then paid back to the guest by way of room charge credit and is not an amount owing on the Effective Date. The security deposits referenced as Creditors 2, 3 and 4 in Schedule E are payable upon each lease maturing as referenced in Section 3.06.1 and the tenant vacating the premises and are not an amount owing on the Effective Date. Creditor 7 in Schedule E was reclassified in Class 3. Creditors 6 and 8 in Schedule E were listed in error and are not owed monies. Creditors 9 and 10 in Schedule E were listed in error and have been reclassified as Schedule F Unsecured Non-Priority Claims.

[6] On October 5, 2012, the Lender made a payment of $260,015.95 to cure the default on the performance bond. On November 20, 2012, the Debtor filed for bankruptcy. In December 2012, the Lender made a lease payment in the amount of $262,000 which is a superpriority administrative

U.S. Bankruptcy Court - Hawaii   #12-02279   Dkt # 230   Filed 03/20/13   Page 42 of 121

and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay approximately $309,000 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. As indicated elsewhere in this Disclosure Statement, Debtor estimates that it will have $375,000 in cash on hand on the Effective Date of the Plan. The source of this cash will be cash from lease revenue and or if needed, from a new value contribution from Kenneth Fujiyama. The cash will be utilized to pay administrative claims.

### 3.02.2  Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). Except to the extent that the holder of a particular Allowed Priority Tax Claim agrees to a different treatment thereof, the Code requires that each holder of an Allowed Priority Tax Claim receive the present value of such Allowed Priority Tax Claim in deferred Cash payments over a period not exceeding five years from the date of assessment of such tax.

### 3.02.2.1  Treatment of Allowed Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). Except to the extent that the holder of a particular Allowed Priority Tax Claim agrees to a different treatment thereof, the Code requires that each holder of an Allowed Priority Tax Claim receive on account of such Claim regular installment payments -

i. of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim;

Debtor's Disclosure Statement - 43

ii. over a period ending not later than five years after the Petition Date under Section 301, 302 or 303; and

iii. in a manner not less favorable than the most favored nonpriority Unsecured Claim provided for by the Plan (other than Cash payments made to a class of creditors under Section 1122(b)).

The Debtor has Section No 507(a)(8) Priority Tax Claims. [7]

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan: **There are no Section 507(a)(8) priority tax claims**

| Description | Amount Owed | Treatment |
|---|---|---|
|  |  |  |
|  |  |  |

### 3.03 Classified Claims and Interests

#### 3.03.1 Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under the Plan

##### 3.03.1.1 Class 1

---

[7]    In the event any other taxing agencies file Priority Tax Claims, the Debtor reserves the right to file an objection to such Claims on any appropriate grounds.

Debtor's Disclosure Statement - 44

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of:<br>· Name = First Citizens Bank<br>· Collateral description = (see Definitions: First Citizens Bank Note 1 Collateral)<br>· Collateral value = Fully secured<br>Priority of security int. = 1st, subject to General Lease No. S-5844<br>Principal owed = $9,859,655[8]<br>Pre-pet. Arrearage amount = $ (included above)<br>· Post-pet. arrearage amount = $0 (est)<br>· Total claim amount = $9,859,655 | N | Impaired, Claims in this class are entitled to vote on the Plan. | `Pymt interval = Monthly<br>· Est. pymt amt/interval = $41,082 months 1-30 and $53.044 months 31-60<br>· Balloon pymt = $9,488,650<br>Begin date = 10/15/2013· End date = 10/14/2018<br>Interest rate % = 5.0% fixed interest only months 1-30 and amortized over 30 years in months 31-60.<br>· Total payout % = 100% $12,324,569 will be paid over on 100% of a principal balance of $$9,859,655.<br>· Treatment of lien = Lien is retained and in full force and effect. |

Comments:

Class 1 consists of the Allowed Claims of First Citizens Bank or the holder of the First Citizens Bank Note 1. Class 1 is impaired under the Plan. As of the confirmation date, the First Citizens Bank Note 1 shall be deemed satisfied and paid in full. Within five (5) business days after the Confirmation Date (but coterminous with the execution and delivery of the First Citizens Bank First Note 1 as described below), First Citizens Bank or the holder of the First

_____

[8] On October 5, 2012, the Lender made a payment of $260,015.95 to cure the default on the performance bond. On October 5, 2012, the Lender made a payment of $260,015.95 to cure the default on the performance bond. On November 20, 2012, the Debtor filed for bankruptcy. In December 2012, the Lender made a lease payment for the August 2012 rent in the amount of $262,000 which is a superpriority administrative claim under the terms of the Second Cash Collateral Stipulation.

Citizens Bank Note 1 shall return to the Reorganized Debtor the First Citizens Bank Note 1 marked "Paid in Full." First Citizens Bank or the holder of the First Citizens Bank Note 1 Security Documents shall also return to the Reorganized Debtor the First Citizens Bank Note 1 Security Documents marked "Canceled" and "Superseded." In full and complete satisfaction of the Allowed Class 1 Claim, First Citizens Bank or the holder of the Allowed Class 1 Claim shall receive the following:

(1) Within five (5) business days after the Confirmation Date (but coterminous with the cancellation and return of the First Citizens Bank Note 1 as described above), the Reorganized Debtor shall execute the First Citizens Bank First Note 1 and the Amended First Citizens Bank Note 1 Security Documents.

(a) The First Citizens Bank First Note 1. The First Citizens Bank First Note 1 and Amended First Citizens Bank Note 1 Security Documents shall be in the same form as the First Citizens Bank First Note 1 and First Citizens Bank Note 1 Security Documents, respectively.

In the event there is any provision of the First Citizens Bank First Note 1 which is inconsistent with the terms of the Plan, the terms of the Plan shall control.

The Amended First Citizens Bank Note 1 Security Documents shall secure a lien on the First Citizens Bank Note 1 Collateral with the same priority and validity that existed prior to the Debtor's alleged pre-petition default(s). The Amended First Citizens Bank Note 1 Security Documents shall secure repayment of the First Citizens Bank First Note 1. Since the First Citizens Bank Note 1 has been paid in full pursuant to the Plan, any event of default that may have existed pre-petition with respect to the First Citizens Bank Note 1 and/or the First Citizens Bank Note 1 Security Documents shall be deemed cured and any notice of default

U.S. Bankruptcy Court - Hawaii  #12-02279  Dkt # 230  Filed  03/20/13  Page 46 of 121

which may have been recorded pre or post-petition with respect to the First Citizens Bank Note 1 and the First Citizens Bank Note 1 Security Documents shall be deemed null and void and of no further force or effect, and First Citizens Bank or the holder of the First Citizens Bank Note 1 shall execute any documents or instruments necessary to reflect the same, including the execution and recordation of a release of notice of default.

Payments on the First Citizens Bank First Note 1 shall be shall be made in monthly installments of interest only calculated at a fixed interest rate of five percent (5.0%) for the first 30 months, and then amortized over 360 months for the final 30 months, calculated at a fixed interest rate of five percent (5.0%). Interest shall begin to accrue on the First Citizens Bank First Note 1 as of the Effective Date. The first (1st) payment shall be due on the fifteenth (15th) day of the first (1st) full month following the Effective Date, and shall be in an amount equal to a percentage of a full monthly installment payment derived from the number of days remaining in the month in which the Effective Date occurs (the numerator) divided by the number of days in the month in which the Effective Date occurs (the denominator). Thereafter, payments shall be due on the fifteenth (15th) day of each and every month until the sixtieth (60th) month after the Effective Date at which time the entire outstanding balance of the First Citizens Bank First Note 1 shall be all due and payable excepting that should any collateral securing the First Citizens Bank First Note 1 be sold prior to the sixtieth (60th) month after the Effective Date, the Class 1 Claimant shall be paid in full or in part in accordance with its lien position upon the sale of said collateral.

Upon payment in full of the First Citizens Bank First Note 1, the lien evidenced by the Amended First Citizens Bank Note 1 Security Documents shall be deemed satisfied and shall be deemed canceled.

In the event that the Reorganized Debtor defaults in its obligation to pay each payment due and payable under the First Citizens Bank First Note 1 and the Amended First Citizens Bank Note 1 Security Documents , the holder of the First Citizens Bank First Note 1 shall be entitled to record a notice of default and accelerate the entire unpaid indebtedness and/or exercise such other remedies as provided under the guarantee, the First Citizens Bank First Note 1 and the Amended First Citizens Bank Note 1 Security Documents or under applicable Hawaii law. The Reorganized Debtor shall be entitled to cure and reinstate any such default under applicable Hawaii law.

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 1 claim to seek recovery on its claim as against any party other than the Reorganized Debtor.

//

//

//

//

//

//

//

//

//

//

//

//

Debtor's Disclosure Statement - 48

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of:<br><br>· Name = Hawaii State Tax Collector, Department of Taxation<br><br>· Collateral description = General Excise Taxes, Transient Taxes secured by a Property Tax Lien<br><br>· Priority of security int. = 1st<br><br>Principal owed = $471,861.15<br><br>· Post-pet. Arrearage amount = $50,000 (est)<br><br>Total claim amount = $521,861.15 | N | Unimpaired, Claims in this class are not entitled to vote on the Plan. | Scenario 1: Pymt interval = Monthly<br>· Est. pymt amt/interval = $10,892<br>· Balloon pymt = 0<br>Begin date = 10/15/2013<br>End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$653,517 will be paid over 60 months at $10,892 per month on 100% of a principal balance of $521,861.15 unless the Naniloa Hotel Property securing the lien is sold at which time the Class 2 Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect.<br><br>**Scenario 2: Pymt interval = $521,861.15 all Due on Effective Date if the state of Hawaii or its assignee as Lessor under General Lease No. S-5844 determines that Class 2 shall be paid in full on the Effective Date as a cure of monies due to maintain the terms and conditions under General Lease No. S-5844** |
|  |  |  |  |  |

Comments:    Class 2 consists of any and all secured claims for General Excise Taxes and Transient Taxes and or assessments of Hawaii State Tax Collector, Department of Taxation pertaining to the Naniloa Hotel Property.  Class 2 is unimpaired under the Debtor's Plan.

Payment under Scenario 1

In the event that the state of Hawaii or its assignee as Lessor under General Lease No. S-5844 determines the Class 2 Claimants Claim may be paid under scenario 1, then the Debtor proposes to satisfy the Allowed Secured Claim of the Class 2 Claimant by paying the Class 2 Claimant deferred cash payments equal to the value of its Allowed Secured Claim as of the Effective Date as follows:  Commencing on the tenth (10th) day of the first full month after the Effective Date, such deferred cash payments will be made in equal monthly installments of

U.S. Bankruptcy Court - Hawaii  #12-02279  Dkt # 230  Filed  03/20/13  Page 49 of 121

principal and interest in an amount sufficient to amortize the Allowed Secured Claim over a period of five (5) years, all due in five (5) years from the Effective Date. The outstanding and unpaid amount of the Allowed Secured Claim will bear interest, commencing on the Effective Date and continuing until such Allowed Secured Claim is paid in full. Interest on the tax claim will be paid in accordance with applicable non-bankruptcy law at the rate of 8.0% per annum.

<b>Payment under Scenario 2</b>

**The Debtor proposes to satisfy the Allowed Secured Claim of the Class 2 Claimant by paying the Class 2 Claimant one hundred percent (100%) of its allowed Claim on the Effective Date if the state of Hawaii or its assignee as Lessor under General Lease No. S-5844 determines that Class 2 Claimant shall be paid in full on the Effective Date as a cure of monies due the Class 2 Claimant in order to maintain the terms and conditions under General Lease No. S-5844. Debtor will attach as Exhibit "I" the Letter of Intent for the new value contribution to be utilized to pay the Class 2 Claimant in full on the Effective date if the state of Hawaii or its assignee as Lessor under General Lease No. S-5844 determines that Class 2 Claimant shall be paid in full on the Effective Date as a cure of monies due the Class 2 Claimant in order to maintain the terms and conditions under General Lease No. S-5844.**

3.03.1.3 **Class 3**

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|

| | 3 | Secured claim of:<br><br>· Name = Director of Finance, RPT County of Hawaii<br><br>· Collateral description = Real Property Taxes secured by a Property Tax Lien<br><br>· Priority of security int. = 1st<br><br>Principal owed = $411,430.27<br><br>· Post-pet. Arrearage amount = $40,000 (est)<br><br>Total claim amount = $451,420.27 | | N | Unimpaired, Claims in this class are not entitled to vote on the Plan. | **Scenario 1:** Pymt interval = Monthly<br>· Est. pymt amt/interval = $9,422<br>· Balloon pymt = 0<br>Begin date = 10/15/2013<br>End date = 10/14/2018<br>· Interest rate % = 8.0%<br>· Total payout % = 100<br>$565,306 will be paid over 60 months at $9,422 per month on 100% of a principal balance of $451,420.27 unless the Naniloa Hotel Property securing the lien is sold at which time the Class 3 Claimant will be paid in full at close of escrow. Treatment of lien = Lien is retained and in full force and effect.<br><br>**Scenario 2:** Pymt interval = $451,420.27 all Due on Effective Date if the state of Hawaii or its assignee as Lessor under General Lease No. S-5844 determines that Class 3 shall be paid in full on the Effective Date as a cure of monies due to maintain the terms and conditions under General Lease No. S-5844 |
|---|---|---|---|---|---|
| | | | | | |

Comments:      Class 3 consists of any and all secured claims for Real Property Taxes pertaining to the Naniloa Hotel Property.  Class 3 is unimpaired under the Debtor's Plan.

### Payment under Scenario 1

In the event that the state of Hawaii or its assignee as Lessor under General Lease No. S-5844 determines the Class 3 Claimants Claim may be paid under Scenario 1, then the Debtor proposes to satisfy the Allowed Secured Claim of the Class 3 Claimant by paying the Class 3 Claimant deferred cash payments equal to the value of its Allowed Secured Claim as of the Effective Date as follows:  Commencing on the tenth (10th) day of the first full month after the Effective Date, such deferred cash payments will be made in equal monthly installments of principal and interest in an amount sufficient to amortize the Allowed Secured Claim over a period of five (5) years, all due in five (5) years from the Effective Date.  The outstanding and unpaid amount of the Allowed Secured Claim will bear interest, commencing on the Effective Date and continuing until such Allowed Secured Claim is paid in full.  Interest on the tax claim will be paid in accordance with applicable non-bankruptcy law at the rate of 8.0% per annum.

**Payment under Scenario 2**

**The Debtor proposes to satisfy the Allowed Secured Claim of the Class 3 Claimant by paying the Class 3 Claimant one hundred percent (100%) of its allowed Claim on the Effective Date if the state of Hawaii or its assignee as Lessor under General Lease No. S-5844 determines that Class 3 Claimant shall be paid in full on the Effective Date as a cure of monies due the Class 3 Claimant in order to maintain the terms and conditions under General Lease No. S-5844. Debtor will attach as Exhibit "I" the Letter of Intent for the new value contribution to be utilized to pay the Class 3 Claimant in full on the Effective date if the state of Hawaii or its assignee as Lessor under General Lease No. S-5844 determines that Class 3 Claimant shall be paid in full on the Effective Date as a cure of monies due the Class 3 Claimant in order to maintain the terms and conditions under General Lease No. S-5844.**

### 3.03.2    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such Claim. However, a Class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim. The Debtor has no Claims of the type identified in Code Sections 507(a)(3), (4), (5), (6), and (7) [9]

---

[9] The "various guest deposits" of $109,328.29 referenced as Creditor 5 under Debtors Schedule E" Priority Unsecured Creditors" are deposits associated with room sales and each guest is credited the deposit amount upon final billing, meaning the guest deposits owed by the Debtor in any given week are credited to the guest upon checking out and paid at that time; therefore the $109,328.29 listed in Schedule E is a fluid amount

Debtor's Disclosure Statement - 52

| Priority Unsecured Claims Description | Amount Owed | Treatment |
|---|---|---|
| None | None | N/A |
| | | |

### 3.03.3     Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies the Plan's treatment of the classes containing all of Debtor's General Unsecured Claims:[10]

3.03.3.1 **Class 4**

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| | | | |

that is collected by the Debtor and then paid back to the guest by way of room charge credit and is not an amount owing on the Effective Date. The security deposits referenced as Creditors 2, 3 and 4 in Schedule E are payable upon each lease maturing as referenced in Section 3.06.1 and the tenant vacating the premises and are not an amount owing on the Effective Date. Creditor 7 in Schedule E was reclassified in Class 3. Creditors 6 and 8 in Schedule E were listed in error and are not owed monies. Creditors 9 and 10 in Schedule E were listed in error and have been reclassified as Schedule F Unsecured Non-Priority Claims.

---

[10]     The Debtor reserves its right to object to any of the Claims filed by the following Creditors on any reasonable grounds.

| 4 | General unsecured claims<br><br>· Total amt of claims = $405,723.33[11] | y<br><br>Impaired claims in this class are entitled to vote on the plan | Pymt interval = Monthly<br><br>· Est. pymt amt/interval = $1,104.31<br><br>· Balloon pymt = $405,723.33<br><br>· Begin date = 10/15/2013<br><br>· End date = 10/14/2018<br><br>· Interest rate % = 3%<br><br>· Total payout = $466,581,830<br><br>Claim will be paid over sixty months on 100% of a principal balance of $405,723.33<br><br>· Treatment of lien = Amounts owed are converted to promissory notes. |
|---|---|---|---|

Comments:

Class 4 consists of the Allowed Claims of the General Unsecured Creditors. Class 4 is impaired under the Plan. In full and complete satisfaction of the Class 4 Claim, the Class 4 Claimant shall be treated as follows: On or before the Effective Date, the Debtor shall execute a promissory note with each holder of a Class 4 Claim. Interest shall accrue on the promissory Note at an interest rate equal three percent (3%) interest-only beginning on the Effective Date. The first (1st) payment shall be due on the fifteenth (15th) day of the first (1st) full month following the Effective Date, and shall be in an amount equal to a percentage of a full monthly installment payment derived from the number of days remaining in the month in which the Effective Date occurs (the numerator) divided by the number of days in the month in which the Effective Date occurs (the denominator). Commencing on the fifteenth (15th) day of each month thereafter through the sixtieth (60th) month following the Effective Date, the

---

[11] See Exhibit "E". The Debtors Insiders are waiving 100% of their Insider General Unsecured Claims totaling $487,533.02

Reorganized Debtor shall make equal monthly payments of interest to the Class 11Claimant. The Promissory Note shall be due and payable sixty (60) months following the Effective Date.

In the event funds are not sufficient to pay the Class 4 Claimants upon any sale of the Naniloa Hotel Property, the Class 4 Claimants shall receive a pro-rata share of the funds available by dividing the total amount of money each Class 4 and is owed by the sum of the Class 4Claimants claims and multiplying that percentage by the amount of money available to pay the Class 4 Claimants after sale of the Naniloa Hotel Property.

On the 12th month following the Effective Date, individual Class 4 Claimants may elect to receive a one-time lump sum payment equal to twenty five percent (25%) of their claim(s) as payment in full of their Class 4 claim(s)

Nothing in the Plan shall enhance or otherwise increase the rights of the holder of the Class 11claim to seek recovery on its claim as against any party other than the Reorganized Debtor..

### 3.03.4    Classes of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are the interest holders. If the debtor is a partnership, the interest holders include both general and limited partners. If the debtor is an individual, the debtor is the interest holder. The following chart identifies the Plan's treatment of the class of interest holders.

3.03.4.1 **Class 5**

//

//

//

Debtor's Disclosure Statement - 55

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Interest holders<br><br>Ken Direction Corporation 100% | Insider; claims in this class are not entitled to vote on the Plan | Class 5 is unimpaired under the Plan and will receive the pro-rata share of monies available after payment to classes 1 through 3. |

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of any Disputed Claim or Disputed Interest until such Claim or Interest becomes an Allowed Claim or Allowed Interest, and then only to the extent it becomes an Allowed Claim or Allowed Interest. Any Proof of Claim or Proof of Interest filed which differs from the Scheduled amount is deemed to be a Disputed Claim or Disputed Interest.

### 3.03.5    Other of State Court Actions

The Debtor believed the following state court action either will be resolved prior to or shortly after the Effective Date or will not interfere with the plan confirmation:

Foreclosure Action:        Case # 12-1-2105-08: First Citizens Bank vs. Hawaii Outdoor

                                       Tours Inc.

Rosenbaum Litigation:        Deborah Rosenbaum vs. Hawaii Outdoor Tours Inc. A stipulation to modify the automatic stay was entered allowing this personal injury action to proceed against the Debtor's insurance.

Appointment of Receiver:    First Citizens Bank vs. Hawaii Outdoor Tours Inc.

### 3.04    **Means of Effectuating Plan**

### 3.04.1    Funding for the Plan

The Plan will be funded by the following: The Reorganized Debtor shall make all payments due under the Plan out of the funds on hand in the Debtor's Estate as of the Effective Date, and through the Income generated by the Naniloa Hotel Property through room sales, operation of the Hotel Restaurant, club, bar, and or the eventual sale or refinance of the Naniloa Hotel Property.

### Post-Confirmation Management

Kenneth Fujiyama, will be retained as post-confirmation management. His duties will include supervision of the on-site management, contracting with contractors for construction, and maintaining books and records for the Naniloa Hotel Property.

### 3.04.2    Disbursing Agent

Kenneth Fujiyama shall act as the Disbursing Agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no fee for distribution services rendered and expenses incurred pursuant to the Plan. In his capacity as Disbursing Agent, Kenneth Fujiyama shall be responsible for all actions necessary to maintain and maximize the Debtor's business affairs. The Disbursing Agent shall be responsible for the operation of the Debtor's business, preservation of assets, and pursuit of any claims held by the Debtor's bankruptcy estate, including any Avoidance Actions and Post-Confirmation Estate Claims, and for the Distribution of the Debtor's Cash or any recoveries to Creditors pursuant to the provisions of the Bankruptcy Code and the Plan. The duties of the Disbursing Agent shall also include preparing and filing the Post-Confirmation Status Reports with the Office of the United States Trustee and paying all post-

confirmation quarterly fees of the Office of the United States Trustee until the bankruptcy case is dismissed or a final decree has been entered, whichever occurs first.

### 3.05 Risk Factors

The proposed Plan has the following risks which could adversely impact the Debtor's ability to make Plan payments: (1) there is a possibility of default, i.e., possibility of inability to pay Plan payments, (2) the financial projections provided by the Debtor may not be realized, (3) the business environment and real estate sale market may decline from its present level, (4) competition with the Debtor in the real estate market and car wash market may increase, (5) the legal environment in terms of laws and regulations could change and have a negative impact upon the Debtor, (6) the reorganized Debtor could be sued and the costs and expenses of litigation could impact the Debtor's financial circumstances.

### 3.06 Other Provisions of the Plan

#### 3.06.1 Executory Contracts and Unexpired Leases

##### 3.06.1.1 Assumptions

//
//
//
//
//
//
//
//

Debtor's Disclosure Statement - 58

The State of Hawaii has informed the Debtor that it requires the Debtor to file its reorganization plan and disclosure statement in order for the State of Hawaii to consider any proposal to pay any and all arrearages and deficiencies that caused State Lease No S-5844 to be in default. To that end, any payment schedule different than that called for in State Lease No S-5844 is a proposal only and must be approved by the State of Hawaii and or DLNR. As of the writing of this Disclosure Statement, the Debtor is in default under State Lease No S-5844 because of the sums due to the Class 2 and Class 3 Claimants were supposed to have been paid in full and are events of default under Lease No S-5844. In addition, the $500,000 Performance Bond balance to be maintained by the Debtor on deposit at First Citizens Bank in Torrance, California has been reduced to approximately $240,028.97 by way of the State of Hawaii withdrawing approximately $259,971.03 as payment of a scheduled lease payment plus late fees due under Lease No S-5844 that the Debtor failed to make. This also is an event of default under Lease No S-5844. In addition to proposing the payment schedules to the Class 2 and 3 Claimants as detailed in the Classes of Secured Claims" section (Section 3.03) of this Disclosure Statement, the Debtor proposes in this Disclosure Statement and the accompanying plan to replenish the Performance Bond such that its balance is brought back to $500,000, by making $10,000 per month deposits into the Performance Bond account at the First Citizens Bank in Torrance to be credited toward the $259,971.03 performance bond deficiency as it relates to Lease No S-5844. The proposed monthly payments to pay the performance bond deficiency are hereinafter referred to as "bond deficiency payments." Although the debtor proposes the bond deficiency payments commence on the Effective Date of the Plan, the DLNR and or the state of Hawaii will determine whether the proposed bond deficiency payment schedule is acceptable, if another as yet undetermined payment schedule is

1  acceptable, or if the Debtor must fully reimburse the $259,971.03 on or before the Effective

2  Date.

3      The following are the unexpired leases to be assumed as obligations of the reorganized

4  Debtor under this Plan:

| LEASES | ARREARS/DMGS | METHODS OF CURE |
|---|---|---|
| Lessor: State of Hawaii Lease # No. S-5844 ·Description = Land Lease | ·Default amt = up to $973,383 in taxes owed Class 2 and Class 3. Claimants plus $259,971.03 To replenish performance bond (See Executory Contracts to be assumed) | ·Method of curing default & loss = See treatment of Class 2 and Class 3 Claimants for schedule of payments on the 973,383 in taxes owed Class 2 and Class 3 Claimants. See Executory Contracts to be assumed for treatment of $259,971.03 due under performance bond which is part of the lease. |
| Lessor: State of Hawaii Lease # No. S-5372 ·Description = Land Lease/ | Default amt ·None | N/A |
| Lessee: Dawn Patterson Lessor: Benda Trust Lessee: Traditional Chinese Medicine Lessee Sprint PCS Lessee: T-Mobile Lessee: Total Health of Hawaii | Default amt ··None Default amt ··None Default amt ··None Default amt ··None Default amt ··None Default amt ··None Default amt ··None Default amt ··None | N/A. deposit to be returned per lease N/A N/A deposit to be returned per lease N/A deposit to be returned per lease N/A deposit to be returned per lease N/A deposit to be returned per lease |
|  |  |  |
|  |  |  |

17      On the Effective Date, the unexpired leases listed above if any shall be assumed as

18  obligations of the reorganized Debtor.  The Order of the Court confirming the Plan shall

19  constitute an Order approving the assumption of the lease listed above.  If you are a party to a

20  lease or contract to be assumed and you object to the assumption of your lease or contract, you

21  must file and serve your objection to the Plan within the deadline for objecting to the

22  confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

Debtor's Disclosure Statement - 60

The following are the executory contracts to be assumed as obligations of the reorganized Debtor under this Plan:

| Executory Contract | ARREARS/DMGS | METHODS OF CURE |
|---|---|---|
| Beneficiary: DLNR<br>Description = Performance Bond posted as part of DLNR Lease<br><br>Contract: Hawaiian Telcom dated 4/11/07<br>Contract: Hawaiian Telcom dated 5/15/07<br>Contract: KONE<br>Contract: Ohana Control System Control | ·Default amt = $259,971.03 | At the discretion of the DLNR and the state of Hawaii, either $259,971.03<br>to be paid on the Effective Date or Monthly Payments of $10,000 per month commencing on The Effective Date to pay $259,971.03<br>arrearage due under performance bond. |
| | | |

### 3.06.1.2 **Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected: None

The Order Confirming the Plan shall constitute an Order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS not applicable. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

Debtor's Disclosure Statement - 61

### 3.06.2 Changes in Rates Subject to Regulatory Commission

This Debtor is not subject to governmental regulatory commission approval of its rates.

### 3.06.3 Retention of Jurisdiction

The Court will retain jurisdiction to the extent provided by law.

### 3.07 Tax Consequences of Plan

The following are the anticipated tax consequences of the Plan:

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor. The Debtor CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action on Debtors' tax liability.

The following are the tax consequences which the Plan will have on the Debtors' tax liability:

DUE TO THE UNSETTLED AND COMPLEX NATURE OF SOME OF THE TAX ISSUES, AS WELL AS THE POSSIBILITY THAT DEVELOPMENTS SUBSEQUENT TO THE DATE HEREOF COULD AFFECT THE TAX CONSEQUENCES OF THE PLAN, THE FOLLOWING DISCUSSION SHOULD NOT BE REGARDED AS DEFINITIVE OR AS COVERING ALL POSSIBLE TAX CONSEQUENCES. ADDITIONALLY, THIS SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR CREDITOR OR HOLDER OF AN EQUITY INTEREST IN LIGHT OF ITS INDIVIDUAL CIRCUMSTANCES OR TO CERTAIN CREDITORS AND HOLDERS OF EQUITY INTERESTS SUBJECT TO

SPECIAL TREATMENT UNDER THE FEDERAL INCOME TAX LAWS (FOR EXAMPLE, LIFE INSURANCE COMPANIES, TAX-EXEMPT ORGANIZATIONS, FOREIGN CORPORATIONS AND INDIVIDUALS WHO ARE NOT CITIZENS OR RESIDENTS OF THE UNITED STATES). THIS SUMMARY DOES NOT DISCUSS ANY ASPECT OF STATE, LOCAL OR FOREIGN TAXATION. HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FEDERAL, STATE, LOCAL, AND FOREIGN) TO THEM OF THE PLAN.

This summary is based upon the laws, regulations, rulings, and decisions in effect on the date hereof and upon certain proposed and temporary regulations, all of which are subject to change (possibly with retroactive effect) by legislation, administrative action or judicial decision. Moreover, due to a lack of definitive judicial or administrative authority and interpretation, substantial uncertainties exist with respect to various tax consequences of the Plan as discussed herein. No rulings have been or are expected to be requested from the IRS or any state tax agency concerning any of the tax matters described herein. There can be no assurance that the IRS or any state tax agency will not challenge the positions taken by the Debtor with respect to any of the issues addressed herein or that a court of competent jurisdiction would not sustain such a challenge. The amount of tax liabilities, if any, will be affected by any deductions the Debtor will be entitled to during the year. Thus, at this time, the Debtor cannot estimate the amount of tax liabilities that will be incurred.

General tax consequences on creditors of any discharge, and the general tax consequences of receipt of plan consideration after confirmation cannot be quantified by the Debtor and

creditors and interest holders are advised to consult with their own tax advisors respecting the tax consequences, if any, of the Plan, including state and local tax consequences.

## ARTICLE IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The Proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

**4.01** **Who May Vote or Object**

**4.01.1** **Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**4.01.2** **Who May Vote to Accept/Reject the Plan**

Debtor's Disclosure Statement - 64

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### 4.01.2.1 What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE HAS NOT BEEN DETERMINED AS OF THE WRITING OF THIS DISCLOSURE STATEEMNT.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

**What Is an Impaired Claim/Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that Class 90% of what they are owed.

Debtor's Disclosure Statement - 65

In this case, the Proponent believes that classes 1 and 4, are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that classes 2 and 3 are unimpaired. Holders of claims in unimpaired classes do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 4.01.3    Who Is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.01.4    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 4.01.5    Votes Necessary to Confirm the Plan

Debtor's Disclosure Statement - 66

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

### 4.01.6    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have "accepted" the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 4.01.7    Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of a Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 4.01.8    Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired classes 1 through 9 and 3 through 11B if any of these classes do not vote to accept the Plan.

**4.02     Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any. For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Debtor maintains that this requirement is met here for the following reasons: The Debtor's primary asset is the Naniloa Hotel Property and the equipment located at the Naniloa Hotel Property. The Naniloa Hotel Property is encumbered by a deed of trust in favor of First

Debtor's Disclosure Statement - 68

Citizens Bank. The balance of the notes securing the Naniloa Hotel Property as of the Petition Date was approximately $9,860,000.

Based upon the Debtor's estimate, the liquidated value of the Naniloa Hotel Property is $7,500,000. Assuming that in a Chapter 7 proceeding, the liquidation value could be obtained, and further assuming that there would be normal costs of sale and other costs of administration attendant to the Chapter 7 proceeding, there would not be sufficient proceeds generated by a sale of the Naniloa Hotel Property to pay all of the secured creditors. The conclusion that necessarily follows is that Unsecured Creditors of the Debtor's Estate would not receive any distribution were this Chapter 11 proceeding converted to one under Chapter 7 of the Code. The plan, which provides for a distribution to Unsecured Creditors, clearly provides a greater return to Unsecured Creditors than that which would be achieved in a Chapter 7. Consequently, the Debtor believe that the Plan, as proposed, provides to Unsecured Creditors more than they would receive were the Debtor's Case converted to one under chapter 7 of the Code. The Plan proposes to pay general unsecured creditors approximately 100% of their total claims while a liquidation of the Debtor's estate would result in a 0% dividend. In a Chapter 7 case, a trustee is appointed and entitled to compensation from the Bankruptcy estate in an amount not to exceed 25% on the first $5,000 of moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million and 3% on all amounts over $1 million. In this case, the trustee's compensation is estimated to equal $259,500based upon a liquidated value of the Naniloa Hotel Property of $7,500,000 which is equal to 50% of the fair market value of Naniloa Hotel Property. Through the Plan however, no trustee's compensation will be incurred.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation. (See Exhibit A for a detailed explanation of how the following assets are valued. This information is provided by the Debtor.)

## ASSETS VALUED AT LIQUIDATION VALUES

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE | DEBTOR'S BASIS FOR LIQUIDATION VALUE |
|---|---|---|
| Cash on hand | 275,000 | Not applicable |
| Naniloa Hotel Property | $7,500,000 | The liquidation value is based on a 50% reduction of the approximated fair market value of the Naniloa Hotel Property. |
| Recovery From Avoidance Actions | $.00 | The Debtor does not anticipate that there will be any Avoidance Actions filed. |
| **Total Assets At Liquidation Value** | $7,500,000 | |
| **LESS LIABILITIES IN CHAPTER 7 CASE** | | |
| Less: Secured Creditor Recovery 1[12] | $10,349,684 | |

----

[1]

| Classes 1 through 3 | 10.349.694 |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

Debtor's Disclosure Statement - 70

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE | DEBTOR'S BASIS FOR LIQUIDATION VALUE |
|---|---|---|
| Less: Chapter 7 trustee's fees and expenses | $259,500 | |
| Less: Chapter 11 administrative expenses<br>WAGNER, CHOI & VERBRUGGE,<br>PC Clerk of Court Fees $250.00<br>UST Fees $6,500.00<br>Administrative Claim due First Citizens Bank | $40,000<br><br>$6,750<br>$262,000 | |
| Less: Priority Claims | $0 | |
| **Balance for unsecured Claims** | $.00 | |
| | | |
| **Total amount of Unsecured Claims** | $405,723.33 Class 4 | |
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS** [13] **WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION:**[14] | 0.00% | |

---

5

| Proceeds From Liquidation of the Naniloa Hotel Property | $7,500,000 |
|---|---|
| | |
| | |

Debtor's Disclosure Statement - 71

| ASSETS AT LIQUIDATION VALUE | LIQUIDATION VALUE | DEBTOR'S BASIS FOR LIQUIDATION VALUE |
|---|---|---|
| **% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN: 100% 3** | | |

Below is a demonstration, in tabular format, that all Creditors and interest holders will receive at least as much under the Plan as such Creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS AND CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| | | |

| | |
|---|---|
| Balance Available for Chapter 7 Administrative Fees and Costs ($259,500), Chapter 11 Administrative Fees and Costs ($10,750.00) | $0 |
| | |
| Balance for Unsecured Claims | $.00 |
| | |
| | |
| | |
| | |

[14]    Note: If this percentage is greater than the amount to be paid to the unsecured Creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains acceptance by every Creditors in an impaired class.

Debtor's Disclosure Statement - 72

| CLAIMS AND CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100.00% | Estimated funds available for Administrative Claims would be $0 (Chapter 7 Administrative Fees and Costs are estimated at $259,500 and Chapter 11 Administrative Fees and Costs are estimated at $10,750.00) |
| Classes 1 – 3 | 100.00% | 100.00% |
| Class 4 General Unsecured Creditors | 100.00% | 0% |

Debtor's Disclosure Statement - 73

| CLAIMS AND CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Class 5– Interest Holders | To receive pro-rata distribution of remaining Net Sale Proceeds after payment of all Allowed Administrative Claims, all Allowed Secured Claims, all Allowed Priority Claims and all Allowed Unsecured Claims | 00% |

### 4.03    Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Debtor maintains that this aspect of feasibility is satisfied as illustrated here:

Estimated Cash Debtor will have on hand
by Effective Date                                                          $375,000
**To Pay:** Administrative claims                                  $309,000*
**To Pay:** Statutory costs & charges                          00.00

Debtor's Disclosure Statement - 74

Balance after paying these amounts............                    $66,000

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

$375,000    Cash in DIP Account (estimated) and if needed from a new value contribution by Kenneth Fujiyama and KDC.

$375,000    **Total[15]**

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent has provided financial projections. Please refer to Exhibit C for the relevant financial projections. YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL PROJECTIONS.

In summary, the Plan proposes to pay the Class 1 through 3 creditors through revenue generated by the lease income and or sale or refinance of the Naniloa Hotel Property if needed through payments from Kenneth Fujiyama.

---

[15] As detailed in Sections 3.03 and 3.06 of this Disclosure Statement, the Debtor intends to negotiate with DLNR and the state of Hawaii for payments schedules to cure deficiencies and events of default under Lease No S-5844 has been informed by the state of Hawaii that they will only consider proposals by the Debtor after the Disclosure Statement and plan have been filed. The Debtor intends to commence negotiations timely once the Disclosure Statement and plan have been filed. In the event the state of Hawaii and or the DLNR require full payment to the Class 2 and Class 3 creditors on the Effective Date and full replenishment of the Performance Bond, the Debtor will raise the approximately $522,000 due the Class 2 Creditor, $451,420 due the Class 3 Creditor, and $259,971.03 to replenish the Performance Bond prior to the Effective Date.

Debtor's Disclosure Statement - 75

As Debtor's financial projections demonstrate, Debtor projects the Naniloa Hotel Property will generate sufficient income to service all of the creditor's debts under the plan. The final payment under the Plan is expected to be paid on or before September 14, 2018. The Debtor contends that Debtor's financial projections are feasible.

## ARTICLE V.

## EFFECT OF CONFIRMATION OF PLAN

### 5.01    Discharge

This Plan provides that upon confirmation of the plan, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan to the extent specified in 11 U.S.C. § 1141.  However, the discharge will not discharge any liability imposed by the Plan.

### 5.02    Revesting of Property in the Debtor

Except as provided herein and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

### 5.03    Modification of Plan

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

### 5.04    Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**5.05    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**5.06    Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

1       Respectfully submitted,

2   DATED: March 20, 2013

3

4   HAWAII OUTDOOR TOURS INC.,

5   
     Kenneth Fujiyama, C.E.O.

6

7   **WAGNER, CHOI & VERBRUGGE**

8     BY: /s/ James A Wagner
     James A Wagner

9     Attorneys for Debtor and
     Debtor in Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Debtor's Disclosure Statement - 78

# EXHIBIT A – LIST OF ASSETS AND VALUES

Naniloa Hotel Property Value:          Debtor Estimate                    $15,000,000

The Hawaii County Real Property Tax Division's market value and assessed values for the entire hotel property, including the Benda Trust property, totals $12,341,400.00, plus the FF&E OF $1,929,395.00 for a total of $14,270,795.00

| TMK | Land | Building | Total |
|---|---|---|---|
| 2-1-001-012 | 688,300.00 | 146,900.00 | 835,200.00 |
| 2-1-005 -0 13 | 479,900.00 | | 479,900.00 |
| 2-1-005-016 | 1,966,100.00 | 6,800,500.00 | 8,766,600.00 |
| 2-1-005-017 | 555,400.00 | 295,000.00 | 850,000.00 |
| 2-1-005-027 | 26,900.00 | | 26,900.00 |
| 2-1-005-032 | 554,600.00 | 554,600.00 | |
| 2-1-005 -046 | 234,200.00 | 234,200.00 | |
| Naniloa Volcanoes Resort Total Value | | | $11,747,800.00 |
| 2-1-005-018 | 466,300.00 | 127,300.00 | 593,600.00 |
| | FF&E | | 1,929,395.00 |
| Naniloa Volcanoes Resort, Benda Trust & FF&E Total Value | | | $14,270,795.00 |

Tax Assessor Valuations are notoriously low and the Debtor estimates the value to be in excess of $15,000,000.

Debtor's Disclosure Statement - 79

**EXHIBIT B – List of Litigation**

Foreclosure Action:          Case # 12-1-2105-08: First Citizens Bank vs. Hawaii Outdoor

                             Tours Inc.

Rosenbaum Litigation:        Deborah Rosenbaum vs. Hawaii Outdoor Tours Inc.

Appointment of Receiver:     First Citizens Bank vs. Hawaii Outdoor Tours Inc.

1

**EXHIBIT C - FINANCIAL PROJECTIONS**

2

3

   This information is supplied by <u>the Debtor</u> and is based on Debtors development

experience.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## NANILOA VOLCANOES RESORT
### INCOME AND EXPENSE PROJECTIONS 2013

| | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | | | |
| Room | 288676 | 419371.3 | 430000 | 440000 | 370000 | 370000 | 412000 | 340000 | 285000 | 304000 | 330000 | 380000 | 4369047 | |
| Food | 29408.8 | 36632.35 | 39000 | 56000 | 42000 | 62000 | 65000 | 62000 | 41000 | 42000 | 45000 | 63000 | 583041.2 | |
| Liquor | 12610 | 5129.5 | 12000 | 14500 | 15500 | 27500 | 28500 | 17500 | 12600 | 12800 | 13500 | 25500 | 197639.5 | |
| Sundry | 1386.07 | 1794.34 | 1500 | 1760 | 1480 | 1648 | 1500 | 1300 | 1450 | 1380 | 1450 | 1520 | 18198.41 | |
| Golf | 12675 | 9290.25 | 11500 | 12000 | 13000 | 14000 | 14000 | 14000 | 12000 | 12000 | 12000 | 12000 | 148465.3 | |
| Rental | 10902.54 | 9462.53 | 9352 | 9352 | 11000 | 11000 | 11000 | 14000 | 14000 | 15000 | 15000 | 15000 | 143421.1 | |
| GiftShop | | | | 20000 | 15000 | 20000 | 20000 | 20000 | 15000 | 15000 | 15000 | 20000 | 160000 | 0 |
| | | | | | | | | | | | | | | 0 |
| **TOTAL REVENUES** | 355658.4 | 481680.2 | 503352 | 533612 | 466332 | 505980 | 552148 | 469000 | 380900 | 402180 | 431950 | 517020 | 5619813 | 5619813 |
| | | | | | | | | | | | | | | |
| **COST OF SALES** | | | | | | | | | | | | | | |
| Food | 12327.6 | 16420.82 | 12870 | 18480 | 13860 | 20460 | 21450 | 20460 | 13530 | 13860 | 14850 | 20790 | 199358.4 | |
| Liquor | 4444.99 | 1615.08 | 3000 | 3625 | 3875 | 6875 | 7125 | 4375 | 3150 | 3200 | 3375 | 6375 | 51035.07 | |
| Sundry | 543.24 | 1090.06 | 750 | 880 | 740 | 740 | 824 | 750 | 650 | 690 | 725 | 760 | 9142.3 | |
| Golf | 243.17 | 164.12 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2407.29 | |
| GiftShop | 0 | 0 | 0 | 10000 | 7500 | 10000 | 10000 | 10000 | 7500 | 7500 | 7500 | 10000 | 80000 | |
| **TOTAL COST OF SALES** | 17559 | 19290.08 | 16820 | 33185 | 26175 | 38275 | 39599 | 35785 | 25030 | 25450 | 26650 | 38125 | 341943.1 | 341943.1 |
| | | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | | |
| Advertising | 31.77 | 997.79 | 750 | 1750 | 1750 | 2200 | 2200 | 2200 | 1750 | 1750 | 2200 | 1750 | 19329.56 | |
| Amortization | 16.32 | 22.64 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 4428.96 | |
| Supplies | 4295.14 | 10181.5 | 5536.872 | 6089.732 | 5129.652 | 5565.78 | 6073.628 | 5159 | 4189.9 | 4423.98 | 4751.45 | 5687.22 | 67083.85 | |
| Credit Card | 9863.62 | 7588.84 | 7550.28 | 8304.18 | 6994.98 | 7589.7 | 8282.22 | 7035 | 5713.5 | 6032.7 | 6479.25 | 7755.3 | 89189.57 | |
| Payroll Processing | 300.44 | 247.28 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3547.72 | |
| Emp Benefit Dental | 744.62 | 721.64 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 718 | 8646.26 | |
| Emp Benefit Medical | 14668.32 | 13625.7 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 174954 | |
| Emp FICA, FUTA, SUC | 10833.41 | 11812.49 | 11288 | 11288 | 11288 | 11288 | 11288 | 10608 | 10608 | 10608 | 10608 | 11288 | 132125.9 | |
| TDI | 0 | | | 993.7717 | | | 976 | | | 956 | | | 2925.772 | |

Page 83 of 121

| 2013 | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Worker Comp | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 47004 | 47004 |
| Software Fee | 1413.45 | 1265.57 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 16979.02 | |
| Gas Diesel | 907.81 | 730.92 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 13638.73 | |
| Insurance Flood | 3820.92 | 3820.92 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 45841.84 | |
| Insurance Fire Liability | 14205.33 | 14205.33 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 172310.7 | |
| Interest Bank | 55155.79 | 55055.34 | 55000 | 55000 | 55000 | 55000 | 55000 | 55000 | 55000 | 41082 | 41082 | 41082 | 618457.1 | |
| Lease State | 41666.67 | 41666.67 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 499993.3 | |
| Lease Benda | 2666.67 | 2666.67 | 2666.67 | 2666.67 | 2666.67 | 2666.67 | 2666.67 | 2666.67 | 2666.67 | 2666.67 | 2666.67 | 2666.67 | 32000.04 | |
| Lease Ka'u  o | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 4929.96 | |
| Misc | 1641.93 | 416.49 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 17058.42 | |
| Music Entertainment | 750 | 1575 | 2800 | 2800 | 3500 | 3500 | 2800 | 3500 | 2800 | 2800 | 3500 | 2800 | 33125 | |
| Repair Maintenance | 2880 | 5265.54 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 58145.54 | |
| Room Commission  o | 5933.06 | 5098.31 | 5590 | 5720 | 4810 | 4810 | 5356 | 4420 | 3705 | 3952 | 4290 | 4940 | 58624.37 | |
| Salaries Wages | 79442.17 | 86000.76 | 83000 | 83000 | 78000 | 83000 | 83000 | 78000 | 78000 | 78000 | 78000 | 83000 | 970442.9 | |
| GE Tax  o | 12845.78 | 17912.63 | 20969.64 | 23063.48 | 19427.39 | 21079.13 | 23002.49 | 19538.54 | 15868.29 | 16754.82 | 17995.04 | 21539.05 | 229996.3 | |
| TAT Tax  o | 23357.87 | 33630.2 | 36990.75 | 37851 | 31829.25 | 31829.25 | 35442.3 | 29248.5 | 24517.13 | 26151.6 | 28388.25 | 32689.5 | 371925.6 | |
| Real Property Tax | 10179.02 | 10179.02 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 121528 | |
| Telephone | 580.87 | 4990.98 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 30571.85 | |
| Utility Electric | 47993.66 | 46183.1 | 52000 | 52000 | 49000 | 50000 | 50000 | 50000 | 48000 | 48000 | 49000 | 51000 | 593176.8 | |
| Utility Propane | 10104.18 | 9253.09 | 10500 | 10500 | 9252 | 9252 | 10000 | 9252 | 8000 | 8000 | 9252 | 10500 | 113865.3 | |
| Utility Waste Removal | 2471.22 | 6231.24 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 68702.46 | |
| Utility Water | 6392.83 | 8490 | 6500 | 6500 | 6500 | 6500 | 6500 | 6500 | 6500 | 6500 | 6500 | 6500 | 79882.83 | |
| Utility - Cable TV | 1994.15 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 23928.15 | |
| Prof services (budget) | 40000 | 40000 | 40000 | 40000 | 40000 | 40000 | 40000 | 2000 | 2000 | 2000 | 2000 | 2000 | 290000 | |
| US Trustee Fee | 1400 | | | 6500 | | | 6500 | | | 6500 | | | 20000 | |
| Class 4 Unsecured | | | | | | | | | | | | | | |
| TOTAL EXPENSES  o | 412853.1 | 445159.7 | 450460 | 462344.7 | 432785.8 | 442148.4 | 456955.1 | 392995.5 | 377636.3 | 375599.6 | 375684.5 | 394619.6 | 5019242 | 5019242 |
| NET INCOME  o | -74753.7 | 17230.46 | 36071.95 | 58082.34 | 7371.227 | 25556.64 | 55593.87 | 40219.46 | -21766.3 | 1130.401 | 29615.51 | 84275.43 | 258627.3 | 258627.3 |
| Beginning Balance  o | 408455.6 | 333701.9 | 350932.3 | 387004.3 | 445086.6 | 452457.9 | 478014.5 | 533608.4 | 573827.8 | 769780.5 | 770910.9 | 800526.4 | | |
| Ending Cash Balance  o | 333701.9 | 350932.3 | 387004.3 | 445086.6 | 452457.9 | 478014.5 | 533608.4 | 573827.8 | 552061.5 | 770910.9 | 800526.4 | 884801.8 | | |
| New Value | | | | | | | | | 1500000 | | | | | |
| Administrative Claims | | | | | | | | | 309000 | | | | | |
| Class 1 | | | | | | | | | 521861 | 41082 | 41082 | 41082 | 123246 | 123246 |
| Class 2 | | | | | | | | | 451420 | | | | | |
| Class 3 | | | | | | | | | | | | | | |
| Class 4 | | | | | | | | | 0 | 1104 | 1104 | 1104 | 3312 | 3312 |

## NANILOA VOLCANOES RESORT
### INCOME AND EXPENSE PROJECTIONS 2014

| | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | | | |
| Room | 337000 | 420000 | 510000 | 520000 | 380000 | 396000 | 450000 | 420000 | 290000 | 320000 | 380000 | 450000 | 4873000 | |
| Food | 65000 | 66000 | 75000 | 75000 | 60000 | 70000 | 80000 | 75000 | 50000 | 50000 | 55000 | 73000 | 793000 | |
| Liquor | 15000 | 15000 | 15000 | 13000 | 12000 | 14000 | 15000 | 15000 | 13000 | 13000 | 14000 | 18000 | 172000 | |
| Sundry | 1348 | 1680 | 2040 | 2080 | 1520 | 1584 | 1800 | 1680 | 1160 | 1280 | 1520 | 1800 | 19492 | |
| Golf | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 156000 | |
| Rental | 13500 | 13500 | 13500 | 13500 | 13500 | 13500 | 13500 | 13500 | 13500 | 13500 | 13500 | 13500 | 162000 | |
| Gift Shop | 15000 | 15000 | 15000 | 25000 | 15000 | 18000 | 21000 | 20000 | 15000 | 15000 | 17000 | 20000 | 211000 | |
| | | | | | | | | | | | | | 0 | 0 |
| **TOTAL REVENUES** | 459848 | 543180 | 643540 | 661580 | 495020 | 526084 | 594300 | 558180 | 395660 | 425780 | 494020 | 589300 | 6386492 | 12006305 |
| **COST OF SALES** | | | | | | | | | | | | | | |
| Food | 21450 | 21450 | 24750 | 24750 | 19800 | 23100 | 26400 | 24750 | 16500 | 16500 | 18150 | 24090 | 261690 | |
| Liquor | 3750 | 3750 | 3750 | 3250 | 3000 | 3500 | 3750 | 3750 | 3250 | 3250 | 3500 | 4500 | 43000 | |
| Sundry | 674 | 840 | 1020 | 1040 | 760 | 792 | 900 | 840 | 580 | 640 | 760 | 900 | 9746 | |
| Golf | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2400 | |
| Gift Shop | 7500 | 7500 | 7500 | 12500 | 7500 | 9000 | 10500 | 10000 | 7500 | 7500 | 8500 | 10000 | 105500 | |
| **TOTAL COST OF SALES** | 26074 | 26240 | 29720 | 29240 | 23760 | 27592 | 31250 | 29540 | 20530 | 20590 | 22610 | 29690 | 316836 | 658779.1 |
| | | | | | | | | | | | | | 0 | |
| **EXPENSES** | | | | | | | | | | | | | | |
| Advertising | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 26400 | |
| Amortization | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 5268 | |
| | | | | | | | | | | | | | 0 | |
| Supplies | 5058.328 | 5974.98 | 7078.94 | 7277.38 | 5445.22 | 5786.924 | 6537.3 | 6139.98 | 4352.26 | 4683.58 | 5434.22 | 6482.3 | 70251.41 | |
| Credit Card | 6897.72 | 8147.7 | 9653.1 | 9923.7 | 7425.3 | 7891.26 | 8914.5 | 8372.7 | 5934.9 | 6386.7 | 7410.3 | 8839.5 | 95797.38 | |
| Payroll Processing | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3600 | |
| Emp. Benefit Dental | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 6276 | |
| Emp. Benefit Medical | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 175992 | |
| Emp. FICA, FUTA, SUC | 10608 | 11288 | 11288 | 12648 | 10608 | 11288 | 11288 | 11288 | 10608 | 10608 | 11288 | 11288 | 134096 | |
| TDI | 957 | 976 | 976 | 976 | 976 | 1016 | 1016 | | | | | | 3925 | |

| 2014 | | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Worker Comp | | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 47004 | 47004 |
| Software Fee | | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 17160 | 17160 |
| Gas Diesel | | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 14400 | 14400 |
| Insurance Flood | | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 45840 | 45840 |
| Insurance Fire Liability | | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 172680 | 172680 |
| Interest Bank | | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 492984 | 492984 |
| Lease State | | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 499992 | 499992 |
| Lease Benda | | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 31992 | 31992 |
| Lease Ka'u | | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 4929.96 | 4929.96 |
| Misc. | | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 36000 | 36000 |
| Music Entertainment | | 2800 | 2800 | 3500 | 2800 | 3500 | 3500 | 2800 | 3500 | 2800 | 2800 | 3500 | 2800 | 37100 | 37100 |
| Repair Maintenance | | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 60000 | 60000 |
| Room Commission | o | 4381 | 5460 | 6630 | 6760 | 4940 | 5148 | 5850 | 5460 | 3770 | 4160 | 4940 | 5850 | 63349 | 63349 |
| Salaries Wages | | 78000 | 83000 | 83000 | 93000 | 78000 | 83000 | 83000 | 83000 | 78000 | 78000 | 83000 | 83000 | 986000 | 986000 |
| GE Tax | o | 19157.27 | 22628.88 | 26809.88 | 27561.42 | 20622.53 | 21916.66 | 24758.54 | 23253.78 | 16483.2 | 17737.99 | 20580.87 | 24550.24 | 266061.3 | 266061.3 |
| AT Tax | o | 28990.43 | 36130.5 | 43872.75 | 44733 | 32689.5 | 34065.9 | 38771.25 | 36130.5 | 24947.25 | 27528 | 32689.5 | 38711.25 | 419199.8 | 419199.8 |
| Real Property Tax | | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 121404 | 121404 |
| Telephone | | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 30000 | 30000 |
| Utility Electric | | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 600000 | 600000 |
| Utility Propane | | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 99600 | 99600 |
| Utility Waste Removal | | 6000 | 6000 | 6000 | 6500 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 72500 | 72500 |
| Utility Water | | 5400 | 5400 | 5400 | 6200 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 65600 | 65600 |
| Utility - Cable TV | | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 23928 | 23928 |
| Professional Service | | 40000 | 40000 | 40000 | 40000 | 40000 | 40000 | 40000 | 2000 | 2000 | 2000 | 2000 | 2000 | 290000 | 290000 |
| US Trustee Fee | | 6500 | | | 6500 | | | 6500 | | | 6500 | | | 26000 | 26000 |
| Class 4 Unsecured | | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 13248 | 13248 |
| TOTAL EXPENSES | o | 423274.6 | 435354.9 | 451757.5 | 473404.3 | 423155.4 | 432521.6 | 449300.4 | 399069.8 | 388820.4 | 381305.1 | 390767.7 | 403446.1 | 5032178 | 10051420 |
| | | | | | | | | | | | | | | | |
| NET INCOME | o | 10499.43 | 81585.11 | 162062.5 | 158935.7 | 48104.62 | 65970.43 | 113749.6 | 129570.2 | 6309.564 | 23884.9 | 80642.28 | 156163.9 | 1037478 | 1296106 |
| Beginning Balance | | 884801.8 | 895301.2 | 976886.3 | 1138949 | 1297885 | 1345989 | 1411960 | 1525709 | 1655279 | 1661589 | 1685474 | 1766116 | | |
| Ending Cash Balance | | 895301.2 | 976886.3 | 1138949 | 1297885 | 1345989 | 1411960 | 1525709 | 1655279 | 1661589 | 1685474 | 1766116 | 1922280 | | |
| New Value | | | | | | | | | | | | | | | |
| Plan Payments | | | | | | | | | | | | | | | |
| Administrative Claims | | | | | | | | | | | | | | | |
| Class 1 | | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 492984 | 616230 |
| Class 2 | | | | | | | | | | | | | | | |
| Class 3 | | | | | | | | | | | | | | | |
| Class 4 | | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 13248 | 16560 |

# NANILOA VOLCANOES RESORT
## INCOME AND EXPENSE PROJECTIONS 2015

| | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | | | |
| Room | 350000 | 430000 | 520000 | 463035 | 315000 | 396000 | 430000 | 420000 | 290000 | 325000 | 390000 | 460000 | 4789035 | |
| Food | 65000 | 65000 | 75000 | 75000 | 60000 | 70000 | 80000 | 75000 | 50000 | 50000 | 55000 | 73000 | 793000 | |
| Liquor | 16000 | 16000 | 16000 | 14000 | 13000 | 15000 | 16000 | 16000 | 14000 | 13000 | 14000 | 18000 | 181000 | |
| Sundry o | 1400 | 1720 | 2080 | 1852.14 | 1260 | 1584 | 1720 | 1680 | 1160 | 1300 | 1560 | 1840 | 19156.14 | |
| Golf | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 13000 | 156000 | |
| Rental | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 180000 | | |
| Gift Shop | 15000 | 15000 | 15000 | 25000 | 15000 | 18000 | 21000 | 20000 | 15000 | 15000 | 17000 | 20000 | 211000 | |
| | | | | | | | | | | | | | 0 | 0 |
| TOTAL REVENUES o | 475400 | 555720 | 656080 | 606887.1 | 432260 | 528584 | 576720 | 560680 | 398160 | 432300 | 505560 | 600840 | 6329191 | 18335496 |
| **COST OF SALES** | | | | | | | | | | | | | | |
| Food o | 21450 | 21450 | 24750 | 24750 | 19800 | 23100 | 26400 | 24750 | 16500 | 16500 | 18150 | 24090 | 261690 | |
| Liquor | 4000 | 4000 | 4000 | 3500 | 3250 | 3750 | 4000 | 4000 | 3500 | 3250 | 3500 | 4500 | 45250 | |
| Sundry o | 700 | 860 | 1040 | 926.07 | 630 | 792 | 860 | 840 | 580 | 650 | 780 | 920 | 9578.07 | |
| Golf | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2400 | |
| Gift Shop o | 7500 | 7500 | 7500 | 12500 | 7500 | 9000 | 10500 | 10000 | 7500 | 7500 | 8500 | 10000 | 105500 | |
| TOTAL COST OF SALES o | 26350 | 26510 | 29990 | 29376.07 | 23880 | 27842 | 31460 | 29790 | 20780 | 20600 | 22630 | 29710 | 318918.1 | 977697.2 |
| **EXPENSES** | | | | | | | | | | | | | | |
| Advertising o | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 2200 | 26400 | |
| Amortization | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 5268 | |
| | | | | | | | | | | | | | 0 | |
| Supplies o | 5229.4 | 6112.92 | 7216.88 | 6675.759 | 4754.86 | 5814.424 | 6343.92 | 6167.48 | 4379.76 | 4755.3 | 5561.16 | 6609.24 | 69621.1 | |
| Credit Card o | 7131 | 8335.8 | 9841.2 | 9103.307 | 6483.9 | 7928.76 | 8650.8 | 8410.2 | 5972.4 | 6484.5 | 7583.4 | 9012.6 | 94937.87 | |
| Payroll Processing | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3600 | |
| Emp Benefit Dental | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 6276 | |
| Emp Benefit Medical | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 175992 | |
| FICA, FUTA, SUC o | 10608 | 11288 | 11288 | 12648 | 11288 | 12648 | 11288 | 11288 | 10608 | 10608 | 11288 | 12648 | 137496 | |
| TDI o | | 976 | 976 | 976 | | 1076 | 1076 | | | 976 | | | 3028 | |

U.S. Bankruptcy Court - Hawaii #02-02704 DKT #80 03/20/13 Page 86 of 121

| 2015 | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Worker Comp | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 47004 | 47004 |
| Software Fee | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 17160 | 17160 |
| Gas Diesel | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 1200 | 14400 | 14400 |
| Insurance Flood | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 45840 | 45840 |
| Insurance Fire Liability | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 172680 | 172680 |
| Interest Bank | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 492984 | 492984 |
| Lease State | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 499992 | 499992 |
| Lease Benda | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 31992 | 31992 |
| Lease Ka'u | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 4929.96 | 4929.96 |
| Misc. | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 36000 | 36000 |
| Music Entertainment | 2800 | 2800 | 3500 | 2800 | 3500 | 3500 | 2800 | 3500 | 2800 | 2800 | 3500 | 2800 | 37100 | 37100 |
| Repair Maintenance | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 60000 | 60000 |
| Room Commission o | 4550 | 5590 | 6760 | 6019.455 | 4095 | 5148 | 5590 | 5460 | 3770 | 4225 | 5070 | 5980 | 62257.46 | 62257.46 |
| Salaries Wages | 78000 | 83000 | 83000 | 93000 | 83000 | 93000 | 83000 | 83000 | 78000 | 78000 | 83000 | 93000 | 1011000 | 1011000 |
| GE Tax o | 19805.16 | 23151.3 | 27332.29 | 25282.92 | 18007.95 | 22020.81 | 24026.16 | 23357.93 | 16587.35 | 18009.62 | 21061.63 | 25030.99 | 263674.1 | 263674.1 |
| TAT Tax o | 30108.75 | 36990.75 | 44733 | 39832.59 | 27097.88 | 34065.9 | 36990.75 | 36130.5 | 24947.25 | 27958.13 | 33549.75 | 39571.5 | 411976.7 | 411976.7 |
| Real Property Tax | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 121404 | 121404 |
| Telephone | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 30000 | 30000 |
| Utility Electric | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 600000 | 600000 |
| Utility Propane | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 99600 | 99600 |
| Utility Waste Removal | 6000 | 6000 | 6000 | 6500 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 72000 | 72000 |
| Utility Water | 5400 | 5400 | 5400 | 6200 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 5420 | 5420 | 65620 | 65620 |
| Utility - Cable TV | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 23928 | 23928 |
| Professional Service | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 24000 | 24000 |
| US Trustee Fee | 6500 | | | 6500 | | | 6500 | | | 6500 | | | 26000 | 26000 |
| Class 4 Unsecured | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 13248 | 13248 |
| TOTAL EXPENSES o | 386657.1 | 399193.6 | 415596.2 | 426062.9 | 380152.4 | 406050.7 | 408190.5 | 399238.9 | 368989.6 | 382241.4 | 392538.8 | 416597.2 | 4781509 | 14832929 |
| NET INCOME o | 62392.86 | 130016.4 | 210493.8 | 151448.2 | 28227.58 | 94691.28 | 137069.5 | 131651.1 | 8390.414 | 29458.63 | 90391.23 | 154532.8 | 1228764 | 2524870 |
| Beginning Balance | 1922280 | 1984673 | 2114689 | 2325183 | 2476631 | 2504859 | 2599550 | 2736620 | 2868271 | 2876661 | 2906120 | 2996511 | | |
| Ending Cash Balance | 1984673 | 2114689 | 2325183 | 2476631 | 2504859 | 2599550 | 2736620 | 2868271 | 2876661 | 2906120 | 2996511 | 3151044 | | |
| New Value | | | | | | | | | | | | | | |
| Plan Payments | | | | | | | | | | | | | | |
| Administrative Claims | | | | | | | | | | | | | | |
| Class 1 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 41082 | 492984 | 1109214 |
| Class 2 | | | | | | | | | | | | | | |
| Class 3 | | | | | | | | | | | | | | |
| Class 4 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 13248 | 29808 |

NANILOA VOLCANOES RESORT
INCOME AND EXPENSE PROJECTIONS 2016

| | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | | | |
| Room | 360000 | 440000 | 530000 | 470000 | 320000 | 396000 | 460000 | 430000 | 300000 | 330000 | 390000 | 470000 | 4896000 | |
| Food | 65000 | 65000 | 75000 | 75000 | 60000 | 70000 | 80000 | 75000 | 50000 | 50000 | 55000 | 73000 | 793000 | |
| Liquor | 18000 | 18000 | 18000 | 15000 | 14000 | 16000 | 17000 | 16000 | 14000 | 13000 | 14000 | 20000 | 193000 | |
| Sundry  o | 1440 | 1760 | 2120 | 1880 | 1280 | 1584 | 1840 | 1720 | 1200 | 1320 | 1560 | 1880 | 19584 | |
| Golf  o | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 168000 | |
| Rental | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 15000 | 180000 | |
| GiftShop | 18000 | 18000 | 18000 | 26000 | 15000 | 18000 | 18000 | 16000 | 15000 | 15000 | 16000 | 20000 | 213000 | |
| | | | | | | | | | | | | | 0 | 0 |
| TOTAL REVENUES  o | 491440 | 571760 | 672120 | 616880 | 439280 | 530584 | 605840 | 567720 | 409200 | 438320 | 505560 | 613880 | 6462584 | 24798080 |
| | | | | | | | | | | | | | | |
| **COST OF SALES** | | | | | | | | | | | | | | |
| Food  o | 21450 | 21450 | 24750 | 24750 | 19800 | 23100 | 26400 | 24750 | 16500 | 16500 | 18150 | 24090 | 261690 | |
| Liquor  o | 4500 | 4500 | 4500 | 3750 | 3500 | 4000 | 4250 | 4000 | 3500 | 3250 | 3500 | 3500 | 48250 | |
| Sundry  o | 720 | 880 | 1060 | 940 | 640 | 792 | 920 | 860 | 600 | 660 | 780 | 940 | 9792 | |
| Golf  o | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2400 | |
| GiftShop  o | 9000 | 9000 | 9000 | 13000 | 7500 | 9000 | 9000 | 8000 | 7500 | 7500 | 8000 | 10000 | 106500 | |
| TOTAL COST OF SALES  o | 26870 | 27030 | 30510 | 29640 | 24140 | 28092 | 31770 | 29810 | 20800 | 20610 | 22630 | 30230 | 322132 | 1299829 |
| | | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | | |
| Advertising | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 19200 | |
| Amortization | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 5268 | |
| | | | | | | | | | | | | | 0 | |
| Supplies  o | 5405.84 | 6289.36 | 7393.32 | 6785.68 | 4832.08 | 5836.424 | 6664.24 | 6244.92 | 4501.2 | 4821.52 | 5561.16 | 6752.68 | 71088.42 | |
| Credit Card  o | 7371.6 | 8576.4 | 10081.8 | 9253.2 | 6589.2 | 7958.76 | 9087.6 | 8515.8 | 6138 | 6574.8 | 7583.4 | 9208.2 | 96938.76 | |
| Payroll Processing | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 650 | 7800 | |
| Emp Benefit Dental | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 6276 | |
| Emp Benefit Medical | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 175992 | |
| Emp FICA, FUTA, SUC  o | 10608 | 11288 | 12648 | 11288 | 10608 | 11288 | 11288 | 11288 | 10608 | 10608 | 10608 | 11288 | 133416 | |
| TDI  o | | | | 1016 | | | 976 | 976 | | 976 | | | 2968 | |

| 2016 | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Worker Comp | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 47004 | 47004 |
| Software Fee | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 17160 | |
| Gas Diesel | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 18000 | |
| Insurance Flood | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 45840 | |
| Insurance Fire Liability | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 172680 | |
| Interest Bank | 41082 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 624566 | |
| Lease State | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 499992 | |
| Lease Benda | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 31992 | |
| Lease Ka'u | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 4929.96 | |
| Misc | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 36000 | |
| Music Entertainment | 2800 | 2800 | 3500 | 2800 | 3500 | 3500 | 2800 | 3500 | 2800 | 2800 | 3500 | 2800 | 37100 | |
| Repair Maintenance | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 60000 | |
| Room Commission (o) | 4680 | 5720 | 6890 | 6110 | 4160 | 5148 | 5980 | 5590 | 3900 | 4290 | 5070 | 6110 | 63648 | |
| Salaries Wages | 78000 | 83000 | 93000 | 83000 | 78000 | 83000 | 83000 | 83000 | 78000 | 78000 | 78000 | 83000 | 981000 | |
| GE Tax (o) | 20473.39 | 23819.52 | 28000.52 | 25699.22 | 18300.4 | 22104.13 | 25239.29 | 23651.22 | 17047.27 | 18260.41 | 21061.63 | 25574.24 | 269231.2 | |
| TAT Tax (o) | 30969 | 37851 | 45593.25 | 40431.75 | 27528 | 34065.9 | 39571.5 | 36990.75 | 25807.5 | 28388.25 | 33549.75 | 40431.75 | 421178.4 | |
| Real Property Tax | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 121404 | |
| Telephone | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 30000 | |
| Utility Electric | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 600000 | |
| Utility Propane | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 99600 | |
| Utility Waste Removal | 6000 | 6000 | 6000 | 6500 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 72500 | |
| Utility Water | 5400 | 5400 | 5400 | 6200 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 65600 | |
| Utility - Cable TV | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 23928 | |
| Professional Service | | | | | | | | | | | | | 0 | |
| US Trustee Fee | 6500 | | | 6500 | | | 6500 | | | 6500 | | | 26000 | |
| Class 4 Unsecured | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 13248 | |
| TOTAL EXPENSES (o) | 387382.7 | 411881.1 | 439643.7 | 426720.7 | 386054.5 | 405438 | 423643.5 | 411317.5 | 381338.8 | 393755.8 | 397470.8 | 417701.7 | 4882349 | 19715278 |
| NET INCOME (o) | 77187.34 | 132848.9 | 201966.3 | 160519.3 | 29085.49 | 97053.96 | 150426.5 | 126592.5 | 7061.198 | 23954.19 | 85459.23 | 165948.3 | 1258103 | 3782973 |
| Beginning Balance | 3151044 | 3228231 | 3361080 | 3563047 | 3723566 | 3752651 | 3849705 | 4000132 | 4126724 | 4133785 | 4157740 | 4243199 | | |
| Endg Cash Balance | 3228231 | 3361080 | 3563047 | 3723566 | 3752651 | 3849705 | 4000132 | 4126724 | 4133785 | 4157740 | 4243199 | 4409147 | | |
| New Value | | | | | | | | | | | | | | |
| Plan Payments | | | | | | | | | | | | | | |
| Administrative Claims | | | | | | | | | | | | | | |
| Class 1 | 41082 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 624566 | 1733780 |
| Class 2 | | | | | | | | | | | | | | |
| Class 3 | | | | | | | | | | | | | | |
| Class 4 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 13248 | 43056 |

## NANILOA VOLCANOES RESORT
## INCOME AND EXPENSE PROJECTIONS 2017

| | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | | | |
| Room | 370000 | 450000 | 540000 | 475000 | 325000 | 396000 | 470000 | 435000 | 320000 | 330000 | 390000 | 480000 | 4981000 | |
| Food | 70000 | 70000 | 85000 | 80000 | 65000 | 80000 | 85000 | 80000 | 60000 | 60000 | 60000 | 75000 | 870000 | |
| Liquor | 18000 | 18000 | 18000 | 15000 | 15000 | 18000 | 21000 | 16000 | 16000 | 16000 | 16000 | 20000 | 207000 | |
| Sundry | 1480 | 1800 | 1900 | 1900 | 1300 | 1584 | 1880 | 1740 | 1280 | 1320 | 1560 | 1920 | 19924 | |
| Golf | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 168000 | |
| Rental | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 216000 | |
| Gift Shop | 20000 | 20000 | 20000 | 28000 | 15000 | 20000 | 20000 | 20000 | 15000 | 15000 | 18000 | 25000 | 236000 | |
| | | | | | | | | | | | | | 0 | 0 |
| TOTAL REVENUES | 511480 | 591800 | 697160 | 631900 | 453300 | 547584 | 629880 | 584740 | 444280 | 454320 | 517560 | 633920 | 6697924 | 31496004 |
| | | | | | | | | | | | | | | |
| **COST OF SALES** | | | | | | | | | | | | | | |
| Food | 23100 | 23100 | 28050 | 26400 | 21450 | 26400 | 28050 | 26400 | 19800 | 19800 | 19800 | 24750 | 287100 | |
| Liquor | 4500 | 4500 | 4500 | 3750 | 3750 | 4500 | 5250 | 4000 | 4000 | 4000 | 4000 | 5000 | 51750 | |
| Sundry | 740 | 900 | 1080 | 950 | 650 | 792 | 940 | 870 | 640 | 660 | 780 | 960 | 9962 | |
| Golf | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2400 | |
| Gift Shop | 10000 | 10000 | 10000 | 14000 | 7500 | 10000 | 10000 | 10000 | 7500 | 7500 | 9000 | 12500 | 118000 | |
| TOTAL COST OF SALES | 28540 | 28700 | 33830 | 31300 | 26050 | 31892 | 34440 | 31470 | 24640 | 24660 | 24780 | 30910 | 351212 | 1651041 |
| | | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | | |
| Advertising | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 19200 | |
| Amortization | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 5268 | |
| | | | | | | | | | | | | | 0 | |
| Supplies | 5626.28 | 6509.8 | 7668.76 | 6950.9 | 4986.3 | 6023.424 | 6928.68 | 6432.14 | 4887.08 | 4997.52 | 5693.16 | 6973.12 | 73677.16 | |
| Credit Card | 7672.2 | 8877 | 10457.4 | 9478.5 | 6799.5 | 8213.76 | 9448.2 | 8771.1 | 6664.2 | 6814.8 | 7763.4 | 9508.8 | 100468.9 | |
| Payroll Processing | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3600 | |
| Emp Benefit Dental | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 6276 | |
| Emp Benefit Medical | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 175992 | |
| EMP FICA, FUTA, SUC | 11288 | 11288 | 12648 | 12648 | 10608 | 11288 | 12648 | 11288 | 10608 | 10608 | 11288 | 12648 | 138856 | |
| TDI | 1016 | | | 1036 | | | 1016 | | | 1016 | | | 3068 | |

| 2017 | | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Worker Comp | | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 47004 | 47004 |
| Software Fee | | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 17160 | 17160 |
| Gas Diesel | | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 18000 | 18000 |
| Insurance Flood | | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 45840 | 45840 |
| Insurance Fire Liability | | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 172680 | 172680 |
| Interest Bank | | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 636528 | 636528 |
| Lease State | | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 499992 | 499992 |
| Lease Benda | | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 31992 | 31992 |
| Lease Ka'u | | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 4929.96 | 4929.96 |
| Misc | | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 36000 | 36000 |
| Music Entertainment | | 2800 | 2800 | 3500 | 2800 | 3500 | 3500 | 2800 | 3500 | 2800 | 2800 | 3500 | 2800 | 37100 | 37100 |
| Repair Maintenance | | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 60000 | 60000 |
| Room Commission | o | 4810 | 5850 | 7020 | 6175 | 4225 | 5148 | 6110 | 5655 | 4160 | 4290 | 5070 | 6240 | 64753 | 64753 |
| Salaries Wages | | 83000 | 83000 | 93000 | 93000 | 78000 | 83000 | 93000 | 83000 | 78000 | 78000 | 83000 | 93000 | 1021000 | 1021000 |
| GE Tax | o | 21308.26 | 24654.39 | 29043.69 | 26324.95 | 18884.48 | 22812.35 | 26240.8 | 24360.27 | 18508.7 | 18926.97 | 21561.55 | 26409.11 | 279035.5 | |
| TAT Tax | o | 31829.25 | 38711.25 | 46453.5 | 40861.88 | 27958.13 | 34065.9 | 40431.75 | 37420.88 | 27528 | 28388.25 | 33549.75 | 41292 | 428490.5 | |
| Real Property Tax | | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 121404 | |
| Telephone | | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 30000 | |
| Utility Electric | | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 600000 | |
| Utility Propane | | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 99600 | |
| Utility Waste Removal | | 6000 | 6000 | 6000 | 6500 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 72500 | |
| Utility Water | | 5400 | 5400 | 5400 | 6200 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 65600 | |
| Utility - Cable TV | | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 23928 | |
| Professional Service | | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 2000 | 24000 | |
| US Trustee Fee | | 6500 | | | 6500 | | | 6500 | | | 6500 | | | 26000 | |
| Class 4 Unsecured | | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 13248 | 13248 |
| TOTAL EXPENSES | o | 409020.8 | 415877.3 | 443978.2 | 441262.1 | 389148.2 | 408238.3 | 439310.3 | 414614.2 | 387342.8 | 396528.4 | 405612.7 | 433057.9 | 4983991 | 24699269 |
| | | | | | | | | | | | | | | | |
| NET INCOME | o | 73919.18 | 147222.7 | 219351.8 | 159337.9 | 38101.77 | 107453.7 | 156129.7 | 138655.8 | 32297.19 | 33131.63 | 87167.31 | 169952.1 | 1362721 | 5145694 |
| Beginning Balance | | 4409147 | 4483066 | 4630289 | 4849641 | 5008979 | 5047080 | 5154534 | 5310664 | 5449320 | 5481617 | 5514749 | 5601916 | | |
| Ending Cash Balance | | 4483066 | 4630289 | 4849641 | 5008979 | 5047080 | 5154534 | 5310664 | 5449320 | 5481617 | 5514749 | 5601916 | 5771868 | | |
| New Value | | | | | | | | | | | | | | | |
| Plan Payments | | | | | | | | | | | | | | | |
| Administrative Claims | | | | | | | | | | | | | | | |
| Class 1 | | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 636528 | 2370308 |
| Class 2 | | | | | | | | | | | | | | | |
| Class 3 | | | | | | | | | | | | | | | |
| Class 4 | | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 13248 | 56304 |

## NANILOA VOLCANOES RESORT
## INCOME AND EXPENSE PROJECTIONS 2018

| | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES | | | | | | | | | | | | | | |
| Room | 370000 | 460000 | 540000 | 480000 | 315000 | 396000 | 480000 | 440000 | 340000 | 340000 | 395000 | 485000 | 5041000 | |
| Food | 70000 | 70000 | 85000 | 80000 | 65000 | 80000 | 85000 | 80000 | 60000 | 60000 | 60000 | 75000 | 870000 | |
| Liquor | 18000 | 18000 | 18000 | 15000 | 15000 | 18000 | 21000 | 16000 | 16000 | 16000 | 16000 | 20000 | 207000 | |
| Sundry | 1480 | 1840 | 2160 | 1920 | 1260 | 1584 | 1920 | 1760 | 1360 | 1360 | 1580 | 1940 | 20164 | |
| Golf | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 14000 | 168000 | |
| Rental | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 18000 | 216000 | |
| Gift Shop | 20000 | 20000 | 20000 | 28000 | 15000 | 20000 | 20000 | 20000 | 15000 | 15000 | 18000 | 25000 | 236000 | |
| | | | | | | | | | | | | | 0 | 0 |
| TOTAL REVENUES | 511480 | 601840 | 697160 | 636920 | 443260 | 547584 | 639920 | 589760 | 464360 | 464360 | 522580 | 638940 | 6758164 | 38254168 |
| COST OF SALES | | | | | | | | | | | | | | |
| Food | 23100 | 23100 | 28050 | 26400 | 21450 | 26400 | 28050 | 26400 | 19800 | 19800 | 19800 | 24750 | 287100 | |
| Liquor | 4500 | 4500 | 4500 | 3750 | 3750 | 4500 | 5250 | 4000 | 4000 | 4000 | 4000 | 5000 | 51750 | |
| Sundry | 740 | 920 | 1080 | 960 | 630 | 792 | 960 | 880 | 680 | 680 | 790 | 970 | 10082 | |
| Golf | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2400 | |
| Gift Shop | 10000 | 10000 | 10000 | 14000 | 7500 | 10000 | 10000 | 10000 | 7500 | 7500 | 9000 | 12500 | 118000 | |
| TOTAL COST OF SALES | 28540 | 28720 | 33830 | 31310 | 26030 | 31892 | 34460 | 31480 | 24680 | 24680 | 24790 | 30920 | 351332 | 2002373.2 |
| EXPENSES | | | | | | | | | | | | | | |
| Advertising | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 1600 | 19200 | |
| Amortization | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 439 | 5268 | |
| | | | | | | | | | | | | | 0 | |
| Supplies | 5626.28 | 6620.24 | 7668.76 | 7006.12 | 4875.86 | 6023.424 | 7039.12 | 6487.36 | 5107.96 | 5107.96 | 5748.38 | 7028.34 | 74339.804 | |
| Credit Card | 7672.2 | 9027.6 | 10457.4 | 9553.8 | 6648.9 | 8213.76 | 9598.8 | 8846.4 | 6965.4 | 6965.4 | 7838.7 | 9584.1 | 101372.46 | |
| Payroll Processing | 300 | 300 | 300 | 300 | 300 | 650 | 300 | 300 | 300 | 300 | 300 | 300 | 3950 | |
| Emp Benefit Dental | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 523 | 6276 | |
| Emp Benefit Medical | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 14666 | 175992 | |
| Emp FICA, FUTA, SUC | 11288 | 11288 | 12648 | 12648 | 10608 | 11288 | 12648 | 11288 | 10608 | 10608 | 11288 | 12648 | 140216 | |
| TDI | | | | 1076 | | | 1016 | | | 1016 | | | 3108 | |

U.S. Bankruptcy Court Hawaii #12-02279 Filed 07/22/13 Page 92 of 121

| 2018 | January | February | March | April | May | June | July | August | September | October | November | December | Total | Cum Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Worker Comp | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 3917 | 47004 | |
| Software Fee | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 1430 | 17160 | |
| Gas Diesel | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 18000 | |
| Insurance Flood | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 3820 | 45840 | |
| Insurance Fire Liability | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 14390 | 172680 | |
| Interest Bank | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | | | | | 424352 | |
| Lease State | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 41666 | 499992 | |
| Lease Benda | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 2666 | 31992 | |
| Lease Ka'u | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 410.83 | 4929.96 | |
| Misc | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 36000 | |
| Music Entertainment | 2800 | 2800 | 3500 | 3000 | 3500 | 3000 | 2800 | 3500 | 2800 | 2800 | 3500 | 2800 | 37100 | |
| Repair Maintenance | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 60000 | |
| Room Commission | 4810 | 5980 | 7020 | 6240 | 4095 | 5148 | 6240 | 5720 | 4420 | 4420 | 5135 | 6305 | 65533 | |
| Salaries Wages | 83000 | 83000 | 93000 | 93000 | 78000 | 83000 | 93000 | 83000 | 78000 | 78000 | 83000 | 93000 | 1031000 | |
| GE Tax | 21308.257 | 25072.654 | 29043.686 | 26534.087 | 18466.212 | 22812.349 | 26659.067 | 24569.402 | 19345.2376 | 19345.238 | 21770.683 | 26618.24 | 281545.112 | |
| TAT Tax | 31829.25 | 39571.5 | 46453.5 | 41292 | 27097.875 | 34065.9 | 41292 | 37851 | 29248.5 | 29248.5 | 33979.875 | 41722.125 | 433652.025 | |
| Real Property Tax | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 10117 | 121404 | |
| Telephone | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 30000 | |
| Utility Electric | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 50000 | 600000 | |
| Utility Propane | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 8300 | 99600 | |
| Utility Waste Removal | 6000 | 6000 | 6000 | 6500 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 6000 | 72500 | |
| Utility Water | 5400 | 5400 | 5400 | 6200 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 5400 | 65600 | |
| Utility Cable TV | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 1994 | 23928 | |
| Professional Service | | | | | | | | | | | | | 0 | |
| US Trustee Fee | 1400 | | | 6500 | | | 6500 | | | 4875 | | | 19275 | |
| Class 1 Unsecured | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | | | | | 8832 | |
| TOTAL EXPENSES | 401920.8 | 426906.9 | 441978.2 | 440136.8 | 385478.7 | 406588.3 | 438979.8 | 413449 | 334533.93 | 340424.9 | 350299.5 | 377744.6 | 4758441.4 | 29457710 |
| | | | | | | | | | | | | | | |
| NET INCOME | 81019.18 | 146213.2 | 221351.8 | 165473.2 | 31751.32 | 109103.7 | 166480.2 | 144831 | 105146.07 | 99255.07 | 147490.5 | 230275.4 | 1648390.6 | 6794084.4 |
| Begining Balance | 5771868 | 5852887 | 5999100 | 6220452 | 6385925 | 6417677 | 6526780 | 6693261 | 6838091.6 | 7048864 | 7148119 | 7295610 | | |
| Ending Cash Balance | 5852887 | 5999100 | 6220452 | 6385925 | 6417677 | 6526780 | 6693261 | 6838092 | 6943237.7 | 7148119 | 7295610 | 7525885 | | |
| New Value | | | | | | | | | 10000000 | | | | | |
| Plan Payments | | | | | | | | | | | | | | |
| Administrative Claims | | | | | | | | | | | | | | |
| Class 1 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 53044 | 9488650 | | | | 9913002 | 12283310 |
| Class 2 | | | | | | | | | | | | | | |
| Class 3 | | | | | | | | | | | | | | |
| Class 4 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 1104 | 405723.33 | | | | 414555.33 | 470859.33 |

1          **EXHIBIT D – RESERVED**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT E– LIST OF GENERAL UNSECURED CREDITORS

See Schedule F on file with the Bankruptcy Court Clerk.

TOTAL: $405,723.33

**EXHIBIT "F"**
**DOCKET THROUGH MARCH 18, 2013**

Debtor's Disclosure Statement - 83

PlnDue

**United States Bankruptcy Court**
**District of Hawaii (Honolulu)**
**Bankruptcy Petition #: 12-02279**

*Date filed:* 11/20/2012

*Assigned to:* Bankruptcy Judge Robert J. Faris
Chapter 11
Voluntary
Asset

<table>
<tr><td>

*Debtor*
**Hawaii Outdoor Tours, Incorporated**
P.O. Box 1417
Hilo, HI 96721
HAWAII-HI
Tax ID / EIN: 99-0292353

</td><td>

represented by **James A. Wagner**
Wagner Choi & Verbrugge
745 Fort Street, Suite 1900
Honolulu, HI 96813
808.533.1877
Fax : 808.566.6900
Email: jwagner@hibklaw.com

**Neil J. Verbrugge**
Wagner Choi & Verbrugge
745 Fort Street, Suite 1900
Honolulu, HI 96813
808.533.1877
Fax : 808.566.6900
Email: nverbrugge@hibklaw.com

</td></tr>
<tr><td>

*U.S. Trustee*
**Office of the U.S. Trustee**
1132 Bishop Street, Suite 602
Honolulu, HI 96813-2830
808-522-8150

</td><td>

represented by **Curtis B. Ching**
Office of The United States Trustee
1132 Bishop Street, Suite 602
Honolulu, HI 96813
808.522.8150
Email: USTPRegion15.HI.ECF@usdoj.gov

</td></tr>
<tr><td>

*Creditor Committee*
**The Official Committee of Unsecured Creditors (Hawaii Outdoor Tours, Inc.)**

</td><td>

represented by **Christopher J. Muzzi**
Tsugawa Biehl Lau & Muzzi, LLLC
1132 Bishop Street, Ste. 2400
Honolulu, HI 96813
808.531.0490
Fax : 808.534.0202
Email: cmuzzi@hilaw.us

</td></tr>
</table>

| Filing Date | # | Docket Text |
|---|---|---|
| 11/20/2012 | 2 docs (14 pgs) | 1   Chapter 11 Voluntary Petition, Without All Required Schedules/Statements. Deadlines: Government Proofs of Claim generally due by 5/20/2013. Schedule A-J due 12/4/2012. Statement of Financial Affairs due 12/4/2012. Summary of Schedules due 12/4/2012. Incomplete Filings due by 12/4/2012. Fee Amount $1046 (Verbrugge, Neil) **Modified on 11/20/2012 to remove deficiencies (Ch.11 Income Stmt, Corporate Resolution, Statistical Summary)**(JN). (Entered: 11/20/2012) |
| 11/20/2012 | | Receipt of filing fee for Voluntary Petition (Chapter 11)(12-02279) [misc,volp11a] (1046.00). Receipt No. 1416199. Fee amount $1046.00. (U.S. Treasury) (Entered: 11/20/2012) |
| 11/20/2012 | 2 (5 pgs) | Corporate Resolution *of Hawaii Outdoor Tours, Inc.; Exhibit A.* Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 3 (2 pgs) | Corporate Ownership Statement. Corporate parents added to case: Ken Direction Corportaion. Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 4 (2 pgs) | Designation of Responsible Individual: Kenneth Fujiyama . Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| | 5 | Motion to Authorize Payment of Pre-Petition Utility Claim(s) *[Motion for Order Under 11 USC* |

| | | |
|---|---|---|
| 11/20/2012 | (19 pgs) | *Sections 105(a) and 366(c) (I) Prohibiting Utilities from altering or Discontinuing Services on Account of Prepetition Invoices, and (II) Establishing Procedures to Determine Requests for Additional Assurance of Payment; Memorandum in Support; Proposed Order; Declaration of Kenneth Fujiyama; Exhibit A].* Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 6 (12 pgs) | Motion to Limit Notice *[Motion for Order Establishing Limited Notice Procedures; Memorandum in Support; Proposed Order; Declaration of Kenneth Fujiyama].* Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 7 (33 pgs) | First Day Motion in Chapter 11 Case: *Motion for Order Authorizing Debtor to Honor Pre-Petition Customer Deposits and Refunds and to Honor Prepetition Appreciation Certificates, Gift Certificates, Promotions and Complimentary Coupons to Customers; Memorandum in Support; Proposed Order; Declaration of Kenneth Fujiyama; Exhibit A.* Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 8 (33 pgs) | Motion to Approve Use of Cash Collateral *Pursuant to 11 USC Section 363(c)(2) on an Interim and Final Basis; Memorandum in Support; Exhibit 1 (Proposed Interim Order); Declaration of Kenneth Fujiyama; Exhibit A.* Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 9 (16 pgs) | First Day Motion in Chapter 11 Case: *Motion for Order Authorizing Debtor to Honor Travel Agency Agreements; Memorandum in Support; Proposed Order; Declaration of Kenneth Fujiyama.* Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 10 (23 pgs) | First Day Motion in Chapter 11 Case: *Motion for Order Establishing Interim Fee Applicatin and Expense Reimbursement Procedures; Memorandum in Support; Proposed Order (Exhibit A); Declaration of Kenneth Fujiyama; Declaration of James A. Wagner.* Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 11 (13 pgs) | Application to Employ Wagner Choi & Verbrugge as Counsel to Debtor *on an Interim and Final Basis; Memorandum in Support; Proposed Order; Declaration of James A. Wagner.* Filed by Debtor Hawaii Outdoor Tours, Incorporated. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 12 (22 pgs) | First Day Motion in Chapter 11 Case: *[Motion for Order Authorizing the Debtor to Honor the Existing Merchant Service Agreement and Authorizing the Continued Use of Existing Cash Management System and Bank Accounts]; Memorandum in Support of Motion ; Proposed Order; Declaration of Kenneth Fujiyama; Exhibit "A".* Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) (Entered: 11/20/2012) |
| 11/20/2012 | 13 (44 pgs) | Motion to Authorize Payment of Pre-Petition Wages or Benefits *[Motion for Order Authorizing Debtor to Pay Pre-Petition Wages and Other Employment-Related Costs and Expenses and to Honor Pre-Petition Employee Benefits]; Memorandum in Support of Motion ; Proposed Order; Declaration of Kenneth Fujiyama; Exhibits "A" - "F"; Declaration of Lee Harlow.* Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) (Entered: 11/20/2012) |
| 11/20/2012 | 14 (20 pgs) | Omnibus Declaration *of Kenneth Fujiyama in Support of First Day Motions; Exhibit "A".* Filed by Neil J. Verbrugge. (Related document(s): 5, 6, 7, 8, 9, 10, 11, 12, 13). (Verbrugge, Neil) (Entered: 11/20/2012) |
| 11/20/2012 | 15 (3 pgs) | Notice of Appearance by Theodore D.C. Young and Request for Notice, . Filed by Theodore D.C. Young on behalf of First Hawaiian Bank. (Young, Theodore) (Entered: 11/20/2012) |
| 11/20/2012 | 16 (18 pgs) | Ex Parte Motion to Shorten Time for 5 Motion to Pay Utility Claim(s) Under Sec. 366, 6 Motion to Limit Notice, 7 First Day Motion, 8 Motion to Approve Use of Cash Collateral, 9 First Day Motion, 10 First Day Motion, 11 Application to Employ, 12 First Day Motion, 13 Motion to Authorize Payment of Pre-Petition Wages or Benefits *Memorandum in Support; Proposed Order; Declaration of James A. Wagner; Declaration of Neil J. Verbrugge; Exhibit A.* Filed by James A. Wagner on behalf of Hawaii Outdoor Tours, Incorporated. (Wagner, James) **Modified on 11/20/2012 to remove relation to document no. 14**(JN). (Entered: 11/20/2012) |
| | 17 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]* <br><br> **Order Granting Motion to Shorten Time** (related document(s): 16). The court will hear the Chapter 11 First Day Motions on an expedited basis at the United States Bankruptcy Court, 1132 Bishop |

| | | |
|---|---|---|
| 11/20/2012 | | Street, Suite 250L, Honolulu, Hawaii on **11/21/2012 at 9:30 a.m.**. Responsive memoranda due: up to hearing. Reply memoranda due: No response. <u>Movant shall immediately give notice of the hearing and the briefing deadlines to all parties in interest entitled to notice and not receiving electronic notice.</u> SO ORDERED. /s/Robert J. Faris, United States Bankruptcy Judge. (Entered: 11/20/2012) |
| 11/20/2012 | 18<br>(6 pgs) | Notice of Hearing . Filed by James A. Wagner. Hearing for: <u>5</u> Motion to Pay Utility Claim(s) Under Sec. 366, <u>6</u> Motion to Limit Notice, <u>7</u> First Day Motion, <u>8</u> Motion to Approve Use of Cash Collateral, <u>9</u> First Day Motion, <u>10</u> First Day Motion, <u>11</u> Application to Employ, <u>12</u> First Day Motion, <u>13</u> Motion to Authorize Payment of Pre-Petition Wages or Benefits. Hearing scheduled for 11/21/2012 at 09:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 19<br>(4 pgs) | Amended Declaration of James A. Wagner *in Support of Application for Order Authorizing Debtor to Employ Wagner Choi & Verbrugge as Bankruptcy Counsel on an Interim and Final Basis*. Filed by James A. Wagner. (Related document(s): <u>11</u>). (Wagner, James) (Entered: 11/20/2012) |
| 11/20/2012 | 20<br>(1 pg) | Declaration re: Electronic Filing of Initial Case Opening Documents. (DM) (Entered: 11/20/2012) |
| 11/21/2012 | 21<br>(3 pgs) | Notice of Appearance by Ryan M. Hamaguchi and Request for Notice, . Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company(Hamaguchi, Ryan) **Modified on 11/21/2012 to edit text**(JN). (Entered: 11/21/2012) |
| 11/21/2012 | 22 | Minutes of Hearing held on: 11/21/2012. (RF). Disposition: Chapter 11 First Day Motions: 1)M/Honor Travel Agency Agreements and 2)M/Authorize Payment of Pre-Petition Wages and Other Employment, Related Cost and Expenses and Benefts are granted. 3)M/Authorize Payment of Pre-Petition Utility Claims, 4)M/Honor Pre-Petition Customer Deposits and Refunds, 5)Application to Employ Wagner Choi Verbrugge as Debtor Counsel, and 6)M/Honor the Existing Merchant Service Agreement and Continued Use of Existing Cash Management System and Bank Accounts are all approved on an interim bases and final approval will be held on 12/17/12. 7)Cash Collateral is approved on an interim bases. The debtor is allowed to pay ordinary and necssary post-petition expenses. No payments to insiders, no carve-out for professional fees, and must provide information requested. A final hearing on continued use of cash collateral will be held on 12/17/12. 8)M/Establish Limited Notice Procedures and 9)M/Establish Interim Fee Application and Expense Reimbursement Procedures are continued for further discussion to 12/17/12. Mr. Wagner will submit the appropriate orders and notice of the final hearing. Appearances: James Wagner/Neil Verbrugge (debtor); Kenneth Fujiyama (debtor rep); Ted Pettit/Ryan Hamaguchi (Citizens Bank); Nicholas Dreher (FHB); Terri Didion (USTR); Cynthia Johiro (State Tax, Dept. of Labor, Dept. Land and Natural Resources). Final Hearing scheduled for 12/17/2012 at 10:30 AM at USBC Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813.(related document(s):<u>5</u> Motion to Pay Utility Claim(s) Under Sec. 366, <u>6</u> Motion to Limit Notice, <u>7</u> First Day Motion, <u>8</u> Motion to Approve Use of Cash Collateral, <u>9</u> First Day Motion, <u>10</u> First Day Motion, <u>11</u> Application to Employ, <u>12</u> First Day Motion, <u>13</u> Motion to Authorize Payment of Pre-Petition Wages or Benefits) (courtrm,ov) (Entered: 11/21/2012) |
| 11/21/2012 | 23 | Notice of Appearance of Nicholas C. Dreher as Counsel representing Creditor First Hawaiian Bank. Counsel consents to service of notices, pleadings, and papers by court transmission facilities. This entry for record purposes only. (Dreher, Nicholas) (Entered: 11/21/2012) |
| 11/21/2012 | 24<br>(1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 11/21/2012 9:41:43 AM ]. File Size [ 13412 KB ]. Run Time [ 00:55:53 ]. (admin). (Entered: 11/21/2012) |
| 11/22/2012 | 25<br>(6 pgs) | BNC Certificate of Service - Order in a Chapter 11 Case (related document(s):<u>1</u>) Notice Date 11/22/2012. (Admin.) (Entered: 11/22/2012) |
| 11/28/2012 | 26<br>2 docs<br>(14 pgs) | Interim Order Authorizing Debtor to Use Cash Collateral on an Interim Basis and Scheduling a Final Hearing on Debtor's Motion to Use Cash Collateral on a Permanent Basis (final hearing date: 12/17/2012 at 10:30am); Exhibits "A" and "B" (related document(s)<u>8</u> Motion to Approve Use of Cash Collateral). Date of Entry: 11/28/2012. (LL) **Modified on 11/28/2012 to add final hearing date** (LL). (Entered: 11/28/2012) |
| 11/28/2012 | 27<br>(5 pgs) | Notice of Hearing *[Notice of Final Hearing on Certain of Debtor's First Day Motions]*. Filed by Neil J. Verbrugge. Hearing for: <u>5</u> Motion to Pay Utility Claim(s) Under Sec. 366, <u>6</u> Motion to Limit Notice, <u>7</u> First Day Motion, <u>8</u> Motion to Approve Use of Cash Collateral, <u>9</u> First Day Motion, <u>10</u> First Day Motion, <u>11</u> Application to Employ, <u>12</u> First Day Motion, <u>13</u> Motion to Authorize Payment of Pre-Petition Wages or Benefits. Hearing scheduled for 12/17/2012 at 10:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) (Entered: 11/28/2012) |

| 11/28/2012 | (5 pgs) | 28 | Certificate of Service ; *Exhibits "A" - "C"*. Filed by Neil J. Verbrugge. (Related document(s): 27). (Verbrugge, Neil) (Entered: 11/28/2012) |
|---|---|---|---|
| 11/28/2012 | (16 pgs) | 29 | Errata *[Errata to Omnibus Declaration of Kenneth Fujiyama in Support of First Day Motions]; Exhibits "A" and "B"*. Filed by Neil J. Verbrugge. (Related document(s): 14). (Verbrugge, Neil) **Modified on 11/28/2012 to add relation to document nos. 5,6,7,8,9,10,11,12,13**(JN). (Entered: 11/28/2012) |
| 11/29/2012 | 2 docs (4 pgs) | 30 | Interim Order Granting Motion for Order Authorizing Debtor to Honor Pre-Petition Customer Deposits and Refunds and to Honor Prepetition Appreciation Certificates, Gift Certificates, Promotions and Complimentary Coupons to Customers on an Interim Basis and Scheduling Final Hearing (h/d: 12/17/12 at 10:30 a.m.) (related document(s)7 First Day Motion). Date of Entry: 11/29/2012. (DM) (Entered: 11/29/2012) |
| 11/29/2012 | 2 docs (4 pgs) | 31 | Order Granting Application for Order Authorizing Debtor to Employ Wagner Choi & Verbrugge as Bankruptcy Counsel on an Interim Basis and Scheduling Final Hearing (h/d: 12/17/12 at 10:30 a.m.) (related document(s)11 Application to Employ). Date of Entry: 11/29/2012. (DM) (Entered: 11/29/2012) |
| 11/29/2012 | 2 docs (5 pgs) | 32 | Order Authorizing the Debtor to Honor the Existing Merchant Service Agreement and Authorizing the Continued Use of Existing Cash Management System and Bank Accounts on an Interim Basis and Scheduling Final Hearing (h/d: 12/17/12 at 10:30 a.m.) (related document(s)12 First Day Motion). Date of Entry: 11/29/2012. (DM) (Entered: 11/29/2012) |
| 11/29/2012 | 2 docs (4 pgs) | 33 | Order Granting Motion for Order Authorizing Debtor to Honor Travel Agency Agreements (Related Doc # 9) . Date of Entry: 11/29/2012. (DM) (Entered: 11/29/2012) |
| 11/29/2012 | 2 docs (6 pgs) | 34 | Order Granting Debtor's Motion for Order Under 11 USC Sections 105(a) and 366(c) (I) Prohibiting Utilities from Altering or Discontinuing Services on Account of Prepetition Invoices, and (II) Establishing Procedures to Determine Requests for Additional Assurance of Payment (h/d: 12/17/12 at 10:30 a.m.) (related document(s)5 Motion to Pay Utility Claim(s) Under Sec. 366). Date of Entry: 11/29/2012. (DM) (Entered: 11/29/2012) |
| 11/29/2012 | 2 docs (4 pgs) | 35 | Order Authorizing Debtor to Pay Pre-Petition Wages and Other Employment-Related Costs and Expenses and to Honor Pre-Petition Employee Benefits on an Interim Basis and Scheduling Hearing (h/d: 12/17/12 at 10:30 a.m.) (related document(s)13 Motion to Authorize Payment of Pre-Petition Wages or Benefits). Date of Entry: 11/29/2012. (DM) (Entered: 11/29/2012) |
| 11/30/2012 | (2 pgs) | 36 | United States Trustee's Opposition To Debtor's Motion For Order Establishing LImited Notice Procedures . Filed by U.S. Trustee Office of the U.S. Trustee. (Related document(s):6 Motion to Limit Notice filed by Hawaii Outdoor Tours, Incorporated). (Ching, Curtis) (Entered: 11/30/2012) |
| 11/30/2012 | (3 pgs) | 37 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):26) Notice Date 11/30/2012. (Admin.) (Entered: 11/30/2012) |
| 12/01/2012 | (3 pgs) | 38 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):30) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/01/2012 | (3 pgs) | 39 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):31) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/01/2012 | (3 pgs) | 40 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):32) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/01/2012 | (3 pgs) | 41 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):33) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/01/2012 | (3 pgs) | 42 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):34) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/01/2012 | (3 pgs) | 43 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):35) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| | | 44 | BNC Certificate of Service (related document(s):30) Notice Date 12/01/2012. (Admin.) (Entered: |

https://ecf.hib.uscourts.gov/cgi-bin/DktRpt.pl?459362929788766-L_1_0-1                                  3/20/2013

| 12/01/2012 | (5 pgs) | | 12/01/2012 |
|---|---|---|---|
| 12/01/2012 | (5 pgs) | 45 | BNC Certificate of Service (related document(s):31) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/01/2012 | (6 pgs) | 46 | BNC Certificate of Service (related document(s):32) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/01/2012 | (5 pgs) | 47 | BNC Certificate of Service (related document(s):33) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/01/2012 | (7 pgs) | 48 | BNC Certificate of Service (related document(s):34) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/01/2012 | (5 pgs) | 49 | BNC Certificate of Service (related document(s):35) Notice Date 12/01/2012. (Admin.) (Entered: 12/01/2012) |
| 12/03/2012 | (3 pgs) | 50 | Certificate of Service ; *Exhibits "A" and "B"*. Filed by Neil J. Verbrugge. (Related document(s): 29). (Verbrugge, Neil) (Entered: 12/03/2012) |
| 12/03/2012 | (1 pg) | 51 | Certificate of Service . Filed by Neil J. Verbrugge. (Related document(s): 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 27, 29). (Verbrugge, Neil) (Entered: 12/03/2012) |
| 12/04/2012 | (3 pgs) | 52 | Voluntary Petition - AMENDED *Petition*. Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) (Entered: 12/04/2012) |
| 12/04/2012 | (5 pgs) | 53 | Amended List of Creditors Holding 20 Largest Unsecured Claims . Filed by Neil J. Verbrugge. (Verbrugge, Neil) (Entered: 12/04/2012) |
| 12/04/2012 | (5 pgs) | 54 | Creditor Matrix is being amended (w/o submission of amended schedules) . Filed by Neil J. Verbrugge. (Verbrugge, Neil) (Entered: 12/04/2012) |
| 12/04/2012 | (189 pgs) | 55 | Schedule(s): A,B, D, E, F, G, H, Summary of Schedules, Statement of Financial Affairs, *List of Equity Security Holder, Statement Pursuant to Rule 2016(B)*.. (Verbrugge, Neil) (Entered: 12/04/2012) |
| 12/05/2012 | (2 pgs) | 56 | Meeting of Creditors. 341(a) meeting to be held on 1/8/2013 at 10:00 AM at Hilo State Office Building, 75 Aupuni Street, 1st Floor, Hilo, Hawaii. Proofs of Claim due by 4/8/2013 (Ching, Curtis) (Entered: 12/05/2012) |
| 12/06/2012 | (2 pgs) | 57 | Certificate of Service ; *Exhibit "A"*. Filed by Neil J. Verbrugge. (Related document(s): 52, 53, 54). (Verbrugge, Neil) (Entered: 12/06/2012) |
| 12/07/2012 | (5 pgs) | 58 | BNC Certificate of Service - Notice of Bankruptcy Case, Meeting of Creditors and Deadlines (related document(s):56) Notice Date 12/07/2012. (Admin.) (Entered: 12/07/2012) |
| 12/07/2012 | (1 pg) | 59 | Declaration re: Electronic Filing of Creditor Matrix (related document(s):54) (LL) (Entered: 12/10/2012) |
| 12/07/2012 | (1 pg) | 60 | Declaration re: Electronic Filing of Amended List of Creditors Holding 20 Largest Unsecured Claims (related document(s):53) (LL) (Entered: 12/10/2012) |
| 12/07/2012 | (1 pg) | 61 | Declaration re: Electronic Filing of Amended Voluntary Petition (related document(s):52) (LL) (Entered: 12/10/2012) |
| 12/07/2012 | (1 pg) | 62 | Declaration re: Electronic Filing of Schedules A,B, D, E, F, G, H, Summary of Schedules, Statement of Financial Affairs, List of Equity Security Holder, Statement Pursuant to Rule 2016(B). (related document(s):55) (LL) **Modified on 12/10/2012 to correct filing date to 12/7/2012** (LL). (Entered: 12/10/2012) |
| | 2 docs | 63 | Obejection to (1) Motion for Order Authorizing Use of Cash Collateral; (2) Motion for Establishing Interim Fee Application; (3) Motion Authorizing Payment of Pre-Petition Wages; and (4)Joinder to the Opposition to Motion for Limited Notice . Filed by Creditor First-Citizens Bank & Trust Company. (Related document(s):6 Motion to Limit Notice filed by Hawaii Outdoor Tours, Incorporated, 8 Motion to Approve Use of Cash Collateral filed by Hawaii Outdoor Tours, Incorporated, 10 First Day |

| | | | |
|---|---|---|---|
| 12/10/2012 | (51 pgs) | | Motion filed by Hawaii Outdoor Tours, Incorporated, 13 Motion to Authorize Payment of Pre-Petition Wages or Benefits filed by Hawaii Outdoor Tours, Incorporated, 36 Response filed by Office of the U.S. Trustee). (Attachments: # 1 Declaration of Ryan M. Hamaguchi; Exhibits "A" - "F") (Hamaguchi, Ryan) **Modified on 12/11/2012 to add text (Joinder)** (DM). (Entered: 12/10/2012) |
| 12/13/2012 | (1 pg) | 64 | Notice of Change of Address for Yellow Book . Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated (Verbrugge, Neil) (Entered: 12/13/2012) |
| 12/13/2012 | (2 pgs) | 65 | Certificate of Service ; Exhibit "A". Filed by Neil J. Verbrugge. (Related document(s): 64). (Verbrugge, Neil) (Entered: 12/13/2012) |
| 12/13/2012 | (1 pg) | 66 | Certificate of Service . Filed by Neil J. Verbrugge. (Related document(s): 56). (Verbrugge, Neil) (Entered: 12/13/2012) |
| 12/14/2012 | (61 pgs) | 67 | Debtor's Omnibus Reply to (A) Secured Creditor First-Citizens Bank and Trust Company's Objections to Debtor's (1) Motion for Order Authorizing Debtor to Use Cash Collateral Pursuant to 11U.S.C. §363 (c)(2) on an Interim Basis; (2) Motion for Order Establishing Interim Fee Application and Expense Reimbursement Procedures; (3) Motion for Order Authorizing Debtor to Pay Pre-Petition Wages and Other Employment Related Costs and Expenses and to Honor Pre-Petition Employee Benefits; and Joinder to the United States's Trustee's Opposition to Debtor's Motion for Order Establishing Limited Notice Procedures; and (B) United States Trustee's Opposition to Debtor's Motion for Order Establishing Limited Notice Procedures ; Declaration of Kenneth Fujiyama; Declaration of Counsel; Exhibits "1" -"4". Filed by Debtor Hawaii Outdoor Tours, Incorporated. (Related document(s):6 Motion to Limit Notice filed by Hawaii Outdoor Tours, Incorporated, 8 Motion to Approve Use of Cash Collateral filed by Hawaii Outdoor Tours, Incorporated, 10 First Day Motion filed by Hawaii Outdoor Tours, Incorporated, 13 Motion to Authorize Payment of Pre-Petition Wages or Benefits filed by Hawaii Outdoor Tours, Incorporated, 36 Response filed by Office of the U.S. Trustee, 63 Response filed by First-Citizens Bank & Trust Company). (Verbrugge, Neil) (Entered: 12/14/2012) |
| 12/17/2012 | | 68 | Minutes of Hearing held on: 12/17/2012 Proceedings: (RF) 1)M/Establish Limited Notice Procedures is withdrawn. 2)Application/Retain Employment of Wagner Choi Verbrugge is approved. 3)FH/Use of Cash Collateral, 4)M/Establish Interim Fee Application and Expense Reimbursement Procedures and 5)balance of M/Pay Pre-Petition Wages and other Employment Related Costs and Expenses are continued for further hearing to 12/20/2012 @ 9:30 a.m. 6)M/Authorize Payment of Pre-Petition Utility Claims, 7)M/Honor Pre-Petition Customer Deposits and Refunds and 8) M/Honor Existing Merchant Service Agreement and Continued Use of Existing Cash Management System and Bank Accounts are all granted on a final basis. Mr. Wagner will submit the orders. (related dkts 5, 6, 7, 8, 10, 11, 12, 13). (OV). HEARING EXHIBITS ADMITTED into EVIDENCE. Creditor:2,3, and 4. Exhibit 1 is for demonstrative only. Appearances: James Wagner/Neil Verbrugge (debtor). Ken Fujiyama (CEO). Ted Pettit/Gary Hamaguchi (First Citizen Bank). Cynthia Johiro (,State of Hawaii). Mr. Fuji State Tax representative. Curtis Ching (USTR). (vCal Hearing ID (91653)). (courtrm) (Entered: 12/17/2012) |
| 12/17/2012 | (1 pg) | 69 | PDF with attached Audio File. Court Date & Time [ 12/17/2012 10:38:48 AM ]. File Size [ 17252 KB ]. Run Time [ 01:11:53 ]. (admin). (Entered: 12/17/2012) |
| 12/17/2012 | (3 pgs) | 70 | Docket Error: Incorrect hearing time on pdf. Notice of Hearing [Notice of Continued Final Hearing on Certain of Debtor's First Day Motions]. Filed by Neil J. Verbrugge. Hearing for: 8 Motion to Approve Use of Cash Collateral, 10 First Day Motion, 13 Motion to Authorize Payment of Pre-Petition Wages or Benefits. Hearing scheduled for 12/20/2012 at 09:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) **Modified on 12/18/2012 - amended by docket entry no. 74 to correct time on pdf** (DM). (Entered: 12/17/2012) |
| 12/17/2012 | (5 pgs) | 71 | Certificate of Service ; Exhibits "A" and "B". Filed by Neil J. Verbrugge. (Related document(s): 67). (Verbrugge, Neil) (Entered: 12/17/2012) |
| 12/17/2012 | (7 pgs) | 72 | Certificate of Service : Exhibits "A" - "C". Filed by Neil J. Verbrugge. (Related document(s): 70). (Verbrugge, Neil) (Entered: 12/17/2012) |
| 12/18/2012 | | 73 | Notice of Appearance of Dana R.C. Lyons as Counsel representing First-Citizens Bank & Trust Company, Creditor. Counsel consents to service of notices, pleadings, and papers by court transmission facilities. This entry for record purposes only. (Lyons, Dana) (Entered: 12/18/2012) |
| | | 74 | Amended Notice of Hearing [Amended to correct the hearing time on the pdf for docket entry no. 70]. Filed by Neil J. Verbrugge. Hearing for: 8 Motion to Approve Use of Cash Collateral, 10 First Day |

| | | |
|---|---|---|
| 12/18/2012 | (3 pgs) | Motion, 13 Motion to Authorize Payment of Pre-Petition Wages or Benefits. Hearing scheduled for 12/20/2012 at 09:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) Modified on 12/18/2012 (DM). (Entered: 12/18/2012) |
| 12/18/2012 | 75<br>(3 pgs) | Notice of Appearance by Teri-Ann E.S. Nagata and Request for Notice, . Filed by Teri-Ann E.S. Nagata on behalf of Developers Surety and Indemnity Company. (Nagata, Teri-Ann) (Entered: 12/18/2012) |
| 12/18/2012 | 76<br>(6 pgs) | Certificate of Service ; Exhibits "A"- "C". Filed by Neil J. Verbrugge. (Related document(s): 74). (Verbrugge, Neil) (Entered: 12/18/2012) |
| 12/20/2012 | 77 | Minutes of Hearing held on December 20, 2012 - Disposition: The debtor & the secured lender have reached a stipulation regarding the continued use of cash collateral. A final hearing will be held on January 22, 2013 at 9:30 a.m. The motion to establish interim fee procedures is continued to January 22, 2013 at 9:30 a.m. An order re: motion to pay pre-petition wages is being circulated. Appearances: James Wagner / Neil Verbrugge for debtor; Ted Pettit / Ryan Hamaguchi for First-Citizen Bank; Cynthia Johiro for the State Department of Taxation & DLNR; Curtis Ching for the Office of the U.S. Trustee. (related document(s):8 Motion to Approve Use of Cash Collateral, 10 First Day Motion, 13 Motion to Authorize Payment of Pre-Petition Wages or Benefits) (courtrm, nm) (Entered: 12/20/2012) |
| 12/20/2012 | 78<br>(3 pgs) | Notice of Hearing [Notice of Continued Final Hearing on Certain First Day Motions]. Filed by Neil J. Verbrugge. Hearing for: 8 Motion to Approve Use of Cash Collateral, 10 First Day Motion. Hearing scheduled for 1/22/2013 at 09:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) (Entered: 12/20/2012) |
| 12/20/2012 | 79<br>(1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 12/20/2012 9:47:43 AM ]. File Size [ 1824 KB ]. Run Time [ 00:07:36 ]. (admin). (Entered: 12/20/2012) |
| 12/20/2012 | 80<br>2 docs<br>(5 pgs) | Order Authorizing the Debtor to Honor the Existing Merchant Service Agreement and Authorizing the Continued Use of Existing Cash Management System and Bank Accounts (Related Doc # 12). Date of Entry: 12/20/2012. (JN) (Entered: 12/20/2012) |
| 12/20/2012 | 81<br>2 docs<br>(6 pgs) | Order Granting Motion for Order Under 11 U.S.C. Sections 105(a) and 366(c)(1) (I) Prohibiting Utilities from Altering or Discontinuing Services on Account of Pre-Petition Invoices and (II) Establishing Procedures to Determine Requests for Additional Assurance of Payment; Exhibit A (Related Doc # 5). Date of Entry: 12/20/2012. (JN) (Entered: 12/20/2012) |
| 12/20/2012 | 82<br>2 docs<br>(4 pgs) | Order Granting Application to Employ Wagner Chooi & Verbrugge as Debtor's Bankruptcy Counsel (Related Doc # 11). Date of Entry: 12/20/2012. (JN) (Entered: 12/20/2012) |
| 12/20/2012 | 83<br>2 docs<br>(5 pgs) | Order Authorizing Debtor To Pay Pre-Petition Wages and Other Employment-Related Costs and Expenses and to Honor Pre-Petition Employee Benefits (Related Doc # 13). Date of Entry: 12/20/2012. (JN) (Entered: 12/20/2012) |
| 12/20/2012 | 84<br>2 docs<br>(4 pgs) | Order Granting Motion for Order Authorizing Debtor to Honor Pre-Petition Customer Deposits and Refunds, and to Honor Pre-Petition Appreciation Certificates, Gift Certificates, Promotions, and Complimentary Coupons to Customers (Related Doc # 7). Date of Entry: 12/20/2012. (JN) (Entered: 12/20/2012) |
| 12/20/2012 | 85<br>(2 pgs) | Notice of Appointment of Committee of Creditors . (Ching, Curtis) (Entered: 12/20/2012) |
| 12/20/2012 | 86<br>(3 pgs) | Certificate of Service . Filed by. (related document(s): 85 Notice of Appointment of Creditors Committee). (Okimoto, Anson) (Entered: 12/20/2012) |
| 12/20/2012 | 87<br>(7 pgs) | Certificate of Service ; Exhibits A - C. Filed by Neil J. Verbrugge. (Related document(s): 78). (Verbrugge, Neil) (Entered: 12/20/2012) |
| 12/21/2012 | 88<br>(104 pgs) | Monthly Operating Report for Filing Period 11/20/12 to 11/30/12. Filed by Debtor Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) (Entered: 12/21/2012) |
| | 89 | Second Stipulated Interim Order (i) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. Sec. 363 (c)(2), (ii) Granting Adequate Protection Pursuant to 11 U.S.C. Sec. 363 and 364 (iii) Scheduling of Final Hearing, and (iv) Granting Related Relief; Exhibits "A"-"B"(Final Hearing: 1/22/2013 at 9:30 |

| | | | |
|---|---|---|---|
| 12/21/2012 | (46 pgs) | | a.m.) (related document(s)8 Motion to Approve Use of Cash Collateral). Date of Entry: 12/21/2012. (LL) (Entered: 12/21/2012) |
| 12/22/2012 | (3 pgs) | 90 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):80) Notice Date 12/22/2012. (Admin.) (Entered: 12/22/2012) |
| 12/22/2012 | (3 pgs) | 91 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):81) Notice Date 12/22/2012. (Admin.) (Entered: 12/22/2012) |
| 12/22/2012 | (3 pgs) | 92 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):82) Notice Date 12/22/2012. (Admin.) (Entered: 12/22/2012) |
| 12/22/2012 | (3 pgs) | 93 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):83) Notice Date 12/22/2012. (Admin.) (Entered: 12/22/2012) |
| 12/22/2012 | (3 pgs) | 94 | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):84) Notice Date 12/22/2012. (Admin.) (Entered: 12/22/2012) |
| 12/24/2012 | 2 docs (26 pgs) | 95 | Motion for Relief from Automatic Stay re: State Court Action Against Non-Debtor Defendant Guarantors; Cover Sheet; Memorandum in Support of Motion . Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. Fee Amount $176 (Attachments: # 1 Declaration of Ryan M. Hamaguchi, Exhibits A and B) (Hamaguchi, Ryan) **Modified on 12/24/2012 to add text (Cover Sheet, Memo)**(JN). (Entered: 12/24/2012) |
| 12/24/2012 | | | Receipt of filing fee for Motion for Relief From Automatic Stay(12-02279) [motion,mot600] ( 176.00). Receipt No. 1439034. Fee amount $ 176.00. (U.S. Treasury) (Entered: 12/24/2012) |
| 12/24/2012 | (2 pgs) | 96 | Notice of Hearing . Filed by Ryan M. Hamaguchi. Hearing for: 95 Motion for Relief From Automatic Stay. Hearing scheduled for 1/23/2013 at 01:30 PM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Hamaguchi, Ryan) (Entered: 12/24/2012) |
| 12/24/2012 | (4 pgs) | 97 | Certificate of Service . Filed by Ryan M. Hamaguchi. (Related document(s): 95, 96). (Hamaguchi, Ryan) (Entered: 12/24/2012) |
| 12/24/2012 | (1 pg) | 98 | Transcript for Trial/Hearing on December 17, 2012. Transcriber Jessica Cahill, Phone Number 808-244-0776. *Remote electronic access to the transcript is restricted for 90 days after the date the transcript is filed.* Redaction Request due 01/14/2013. Redacted Transcript due 01/22/2013. Transcript Access Restriction Period ends 03/25/2013. (RE: related document(s) 68 Virtual Minute Entry). (Cahill, Jessica) (Entered: 12/24/2012) |
| 12/27/2012 | (2 pgs) | 99 | Certificate of Service ; *Exhibit "A"*. Filed by Neil J. Verbrugge. (Related document(s): 88). (Verbrugge, Neil) (Entered: 12/27/2012) |
| 12/27/2012 | (7 pgs) | 100 | Certificate of Service ; *Exhibits "A" and "B"*. Filed by Neil J. Verbrugge. (Related document(s): 88). (Verbrugge, Neil) (Entered: 12/27/2012) |
| 12/28/2012 | (3 pgs) | 101 | BNC Certificate of Service - Notice of Filing of Transcript (related document(s):98) Notice Date 12/28/2012. (Admin.) (Entered: 12/28/2012) |
| 01/03/2013 | (1 pg) | 102 | Notice of Change of Address for Textron Financial Corporation . Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated (Verbrugge, Neil) (Entered: 01/03/2013) |
| 01/03/2013 | (2 pgs) | 103 | Notice of Change of Address for Kenneth Fujiyama and Ken Direction Corporation . Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated (Verbrugge, Neil) (Entered: 01/03/2013) |
| 01/03/2013 | (1 pg) | 104 | Certificate of Service . Filed by Neil J. Verbrugge. (Related document(s): 56). (Verbrugge, Neil) (Entered: 01/03/2013) |
| 01/03/2013 | (6 pgs) | 105 | Certificate of Service ; *Exhibits "A" through "C"*. Filed by Neil J. Verbrugge. (Related document(s): 102, 103). (Verbrugge, Neil) (Entered: 01/03/2013) |
| 01/04/2013 | (2 pgs) | 106 | Application to Employ Tsugawa Biehl Lau & Muzzi LLLC as Counsel for The Official Committee of Unsecured Creditors . Filed by Creditor Committee The Official Committee of Unsecured Creditors (Hawaii Outdoor Tours, Inc.). (Muzzi, Christopher) (Entered: 01/04/2013) |

| 01/04/2013 | (3 pgs) | [107](#) | Notice of Appearance by Miranda Tsai and Request for Notice, . Filed by Miranda Tsai on behalf of Hawaii Medical Service Association. (Tsai, Miranda) (Entered: 01/04/2013) |
|---|---|---|---|
| 01/07/2013 | (5 pgs) | [108](#) | Certificate of Service ; *Exhibits A - B*. Filed by Christopher J. Muzzi. (Related document(s): [106](#)). (Muzzi, Christopher) (Entered: 01/07/2013) |
| 01/08/2013 | | 109 | **Minutes of Meeting of Creditors.** The United States Trustee reports that the meeting of creditors pursuant to Section 341(a) of the Bankruptcy Code convened on January 8, 2013. The United States Trustee reports that the meeting of creditors has concluded. . (Ching, Curtis) (Entered: 01/08/2013) |
| 01/09/2013 | | 110 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]*<br><br>**Order Granting Application to Employ Professional under 11 U.S.C. sec. 1103** (related document: [106](#)). Tsugawa Biehl Lau & Muzzi, LLLC is authorized to act as attorney for the Committee of Unsecured Creditors in this case effective 01/04/2013. Compensation and reimbursement for expenses are subject to further court approval under 11 U.S.C. sec. 330 and applicable local rules and guidelines.<br>SO ORDERED. /s/ Robert J. Faris, United States Bankruptcy Judge. (Entered: 01/09/2013) |
| 01/09/2013 | (3 pgs) | [111](#) | Objection to Secured Creditor First-Citizens Bank & Trust Company's Motion for Relief from Automatic Stay Against Non-Debtor Guarantors Kenneth Fujiyama and Ken Direction Corporation . Filed by Debtor Hawaii Outdoor Tours, Incorporated. (Related document(s):[95](#) Motion for Relief From Automatic Stay filed by First-Citizens Bank & Trust Company). (Verbrugge, Neil) (Entered: 01/09/2013) |
| 01/10/2013 | (2 pgs) | [112](#) | Certificate of Service : *Exhibit "A"*. Filed by Neil J. Verbrugge. (Related document(s): [111](#)). (Verbrugge, Neil) (Entered: 01/10/2013) |
| 01/10/2013 | (5 pgs) | [113](#) | Certificate of Service ; *Exhibits "A" and "B"*. Filed by Neil J. Verbrugge. (Related document(s): [111](#)). (Verbrugge, Neil) (Entered: 01/10/2013) |
| 01/11/2013 | 5 docs (30 pgs) | [114](#) | Motion to Approve *[Motion for Interim Order Authorizing Debtor to Enter into Insurance Premium Financing Agreement and Scheduling Final Hearing]; Memorandum in Support of Motion; Proposed Order; Declaration of Kenneth Fujiyama (Exhibit "A"); Declaration of Counsel (Exhibit "B")*. Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated. (Attachments: # [1](#) Memorandum In Support# [2](#) Proposed Order Proposed Order# [3](#) Declaration of Kenneth Fujiyama; Exhibit "A"# [4](#) Declaration Of Counsel; Exhibit "B") (Verbrugge, Neil) (Entered: 01/11/2013) |
| 01/11/2013 | (1 pg) | [115](#) | Motion to Shorten Time for [114](#) Motion to Approve, *Interim Order Authorizing Debtor to Enter Into Insurance Premium Financing Agreement and Scheduling Final Hearing*. Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) (Entered: 01/11/2013) |
| 01/11/2013 | | 116 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]*<br><br>**Order Granting Motion to Shorten Time** (related document(s): [114](#), [115](#)). The court will hear the Motion to Approve Insurance Premium Financing on an expedited basis at the United States Bankruptcy Court, 1132 Bishop Street, Suite 250L, Honolulu, Hawaii on **1/16/2013 at 9:30 a.m.**. Responsive memoranda due: up to hearing. Reply memoranda due: No Reply. Movant shall immediately give notice of the hearing and the briefing deadlines to all parties in interest entitled to notice and not receiving electronic notice.<br>SO ORDERED. /s/Robert J. Faris, United States Bankruptcy Judge. (Entered: 01/11/2013) |
| 01/11/2013 | (2 pgs) | [117](#) | Notice of Hearing . Filed by Neil J. Verbrugge. Hearing for: [114](#) Motion to Approve. Hearing scheduled for 1/16/2013 at 09:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) (Entered: 01/11/2013) |
| 01/14/2013 | (6 pgs) | [118](#) | Certificate of Service ; *Exhibits "A" - "C"*. Filed by Neil J. Verbrugge. (Related document(s): [114](#), [115](#), [117](#)). (Verbrugge, Neil) (Entered: 01/14/2013) |
| 01/14/2013 | (3 pgs) | [119](#) | Notice of Appearance by Kimo C. Leong and Request for Notice; Certificate of Service. Filed by Kimo C. Leong on behalf of Hawaii Electric Light Company, Inc. (JN) (Entered: 01/14/2013) |
| | | 120 | Minutes of Hearing held on: 01/16/2013 Proceedings: (RF). M/Approve Insurance Premium Financing. The motion is granted with added provisions as stated which are: debtor will withdraw any request for coverage of addition vehicles and equipment; will add default provision as stated by |

| | | | |
|---|---|---|---|
| 01/16/2013 | | | creditors committee; and will notify the committee of any cancellation of coverage. Mr. Verbrugge will submit the order. (related dkt 114). (OV). Appearances: Christopher Muzzi (Unsec. Creds. Committee). Neil Verbrugge (debtor).. (vCal Hearing ID (92740)). (courtrm) (Entered: 01/16/2013) |
| 01/16/2013 | (1 pg) | 121 | 🔊 PDF with attached Audio File. Court Date & Time [ 1/16/2013 9:46:49 AM ]. File Size [ 784 KB ]. Run Time [ 00:03:16 ]. (admin). (Entered: 01/16/2013) |
| 01/16/2013 | (5 pgs) | 122 | Reply Memorandum to Debtor's Objection to First-Citizens' Motion for Relief from Stay Again Non-Debtor Guarantors . Filed by Creditor First-Citizens Bank & Trust Company. (Related document(s):95 Motion for Relief From Automatic Stay filed by First-Citizens Bank & Trust Company, 96 Notice of Hearing filed by First-Citizens Bank & Trust Company, 111 Response filed by Hawaii Outdoor Tours, Incorporated). (Hamaguchi, Ryan) (Entered: 01/16/2013) |
| 01/16/2013 | (1 pg) | 123 | Certificate of Service . Filed by Ryan M. Hamaguchi. (Related document(s): 122). (Hamaguchi, Ryan) (Entered: 01/16/2013) |
| 01/16/2013 | (2 pgs) | 124 | Amended Certificate of Service . Filed by Ryan M. Hamaguchi. (Related document(s): 122, 123). (Hamaguchi, Ryan) (Entered: 01/16/2013) |
| 01/17/2013 | 2 docs (11 pgs) | 125 | Interim Order Authorizing Debtor to Enter into Insurance Premium Financing Agreement and Scheduling Final Hearing; Exhibit A (final hearing: 2/4/2013 at 9:30am) (related document(s)114 Motion to Approve). Date of Entry: 1/17/2013. (LL) (Entered: 01/17/2013) |
| 01/17/2013 | (2 pgs) | 126 | Notice of Hearing *[Notice of Final Hearing]*. Filed by Neil J. Verbrugge. Hearing for: 114 Motion to Approve. Hearing scheduled for 2/4/2013 at 09:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) (Entered: 01/17/2013) |
| 01/17/2013 | (11 pgs) | 127 | Motion for 2004 Examination *(Edna Palacol on behalf of Debtor Hawaii Outdoor Tours, Inc.)*. Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. (Hamaguchi, Ryan) (Entered: 01/17/2013) |
| 01/17/2013 | (11 pgs) | 128 | Motion for 2004 Examination *(Frances Hamabata on behalf of Debtor Hawaii Outdoor Tours, Inc.)*. Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. (Hamaguchi, Ryan) (Entered: 01/17/2013) |
| 01/17/2013 | (11 pgs) | 129 | Motion for 2004 Examination *(Kenneth Fujiyama on behalf of Nani Mau, Inc.)*. Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. (Hamaguchi, Ryan) (Entered: 01/17/2013) |
| 01/17/2013 | (11 pgs) | 130 | Motion for 2004 Examination *(Kenneth Fujiyama on behalf of Ken Direction Corporation)*. Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. (Hamaguchi, Ryan) (Entered: 01/17/2013) |
| 01/17/2013 | (11 pgs) | 131 | Motion for 2004 Examination *(Lee Harlow on behalf of Nani Mau, Inc.)*. Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. (Hamaguchi, Ryan) (Entered: 01/17/2013) |
| 01/17/2013 | (11 pgs) | 132 | Motion for 2004 Examination *(Lee Harlow on behalf of Ken Direction Corporation)*. Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. (Hamaguchi, Ryan) (Entered: 01/17/2013) |
| 01/17/2013 | | 133 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]*<br><br>**Order Granting Motion for Rule 2004 Examination of Edna Palacol** (related document: 127). Having satisfied the requirements of LBR 2004-1, the motion to conduct a Rule 2004 examination is GRANTED. The moving party may compel the attendance of and/or production of documents as provided in the motion, in accordance with Fed. R. Bankr. P. 9016. SO ORDERED. /s/ Michael B Dowling, Clerk of the United States Bankruptcy Court, District of Hawaii. (Entered: 01/17/2013) |
| 01/17/2013 | | 134 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]*<br><br>**Order Granting Motion for Rule 2004 Examination of Frances Hamabata** (related document: 128). Having satisfied the requirements of LBR 2004-1, the motion to conduct a Rule 2004 examination is GRANTED. The moving party may compel the attendance of and/or production of documents as provided in the motion, in accordance with Fed. R. Bankr. P. 9016. SO ORDERED. /s/ |

| | | |
|---|---|---|
| 01/17/2013 | | Michael B Dowling, Clerk of the United States Bankruptcy Court, District of Hawaii. (Entered: 01/17/2013) |
| 01/17/2013 | 135 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]*<br><br>**Order Granting Motion for Rule 2004 Examination of Kenneth Fujiyama on behalf of Nani Mau, Inc.** (related document: <u>129</u>). Having satisfied the requirements of LBR 2004-1, the motion to conduct a Rule 2004 examination is GRANTED. The moving party may compel the attendance of and/or production of documents as provided in the motion, in accordance with Fed. R. Bankr. P. 9016. SO ORDERED. /s/ Michael B Dowling, Clerk of the United States Bankruptcy Court, District of Hawaii. (Entered: 01/17/2013) |
| 01/17/2013 | 136 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]*<br><br>**Order Granting Motion for Rule 2004 Examination of Kenneth Fujiyama on behalf of Ken Direction Corporation** (related document: <u>130</u>). Having satisfied the requirements of LBR 2004-1, the motion to conduct a Rule 2004 examination is GRANTED. The moving party may compel the attendance of and/or production of documents as provided in the motion, in accordance with Fed. R. Bankr. P. 9016. SO ORDERED. /s/ Michael B Dowling, Clerk of the United States Bankruptcy Court, District of Hawaii. (Entered: 01/17/2013) |
| 01/17/2013 | 137 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]*<br><br>**Order Granting Motion for Rule 2004 Examination of Lee Harlow on behalf of Nani Mau, Inc.** (related document: <u>131</u>). Having satisfied the requirements of LBR 2004-1, the motion to conduct a Rule 2004 examination is GRANTED. The moving party may compel the attendance of and/or production of documents as provided in the motion, in accordance with Fed. R. Bankr. P. 9016. SO ORDERED. /s/ Michael B Dowling, Clerk of the United States Bankruptcy Court, District of Hawaii. (Entered: 01/17/2013) |
| 01/17/2013 | 138 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]*<br><br>**Order Granting Motion for Rule 2004 Examination of Lee Harlow on behalf of Ken Direction Corporation** (related document: <u>132</u>). Having satisfied the requirements of LBR 2004-1, the motion to conduct a Rule 2004 examination is GRANTED. The moving party may compel the attendance of and/or production of documents as provided in the motion, in accordance with Fed. R. Bankr. P. 9016. SO ORDERED. /s/ Michael B Dowling, Clerk of the United States Bankruptcy Court, District of Hawaii. (Entered: 01/17/2013) |
| 01/18/2013 | <u>139</u><br>(11 pgs) | Motion for 2004 Examination *(Neil T. Fujiyama on behalf of Fujiyama Construction, Inc.)*. Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. (Hamaguchi, Ryan) (Entered: 01/18/2013) |
| 01/18/2013 | 140 | *[The entire order in this matter is set forth in this docket entry. No document is attached.]*<br><br>**Order Granting Motion for Rule 2004 Examination of Neil T. Fujiyama on behalf of Fujiyama Construction, Inc.** (related document: <u>139</u>). Having satisfied the requirements of LBR 2004-1, the motion to conduct a Rule 2004 examination is GRANTED. The moving party may compel the attendance of and/or production of documents as provided in the motion, in accordance with Fed. R. Bankr. P. 9016. SO ORDERED. /s/ Michael B Dowling, Clerk of the United States Bankruptcy Court, District of Hawaii. (Entered: 01/18/2013) |
| 01/18/2013 | <u>141</u><br>(11 pgs) | Supplemental Declaration of Kenneth Fujiyama *in Support of Motion for Order Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2); Exhibits "A"-"C"*. Filed by Neil J. Verbrugge. (Related document(s): <u>8</u>). (Verbrugge, Neil) (Entered: 01/18/2013) |
| 01/19/2013 | <u>142</u><br>(3 pgs) | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):<u>125</u>) Notice Date 01/19/2013. (Admin.) (Entered: 01/19/2013) |
| 01/21/2013 | <u>143</u><br>(21 pgs) | Second Supplemental Declaration of Kenneth Fujiyama *in Support of Cash Collateral Motion; Exhibits A–F*. Filed by Neil J. Verbrugge. (Related document(s): <u>8</u>). (Verbrugge, Neil) \*\*Modified on 1/21/2013 to add relation document no. <u>141</u> and add docket text (second supplemental) and exhibits\*\* (LL). (Entered: 01/21/2013) |
| | 144 | Minutes of Hearing held on: 1/22/2013. Disposition: 1)Final Use of Cash Collateral and 2)M/Establish Interim Fee Application and Expense Reimbursement Procedures are continued, by agreement, to |

| | | |
|---|---|---|
| 01/22/2013 | | allow lender and debtor to work out procedures so as to improve debtor's performance as is required by the lender. Appearances: James Wagner/Neil Verbrugge (debtor); Ken Fujiyama-debtor rep.; Christopher Muzzi (creditors committee); Ted Pettit (First Citizens Bank); Curtis Ching (USTR); Cynthia Johiro (State of Hawaii); Jeffery Flores (HMSA). Further Hearing scheduled for 2/25/2013 at 09:30 AM at USBC Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813.(related document (s):10 First Day Motion) (courtrm,ov) (Entered: 01/22/2013) |
| 01/22/2013 | 145<br>(1 pg) | PDF with attached Audio File. Court Date & Time [ 1/22/2013 9:39:15 AM ]. File Size [ 2628 KB ]. Run Time [ 00:10:57 ]. (admin). (Entered: 01/22/2013) |
| 01/22/2013 | 146<br>(2 pgs) | Notice of Hearing *[Notice of Continued Hearing]*. Filed by Neil J. Verbrugge. Hearing for: 8 Motion to Approve Use of Cash Collateral, 10 First Day Motion. Hearing scheduled for 2/25/2013 at 09:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) (Entered: 01/22/2013) |
| 01/23/2013 | 147<br>(156 pgs) | Monthly Operating Report for Filing Period December 1, 2012 through December 31, 2012. Filed by Debtor Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) (Entered: 01/23/2013) |
| 01/23/2013 | 148 | Minutes of Hearing held on: 01/23/2013 Proceedings: (RF). PH/Motion for Relief from the Automatic Stay (First-Citizens Bank. The motion is granted. Mr. Pettit will submit the order. (related dkt # 95). (OV). Appearances: Ted Pettit (movant). Neil Verbrugge (debtor). (vCal Hearing ID (92379)). (courtrm) (Entered: 01/23/2013) |
| 01/23/2013 | 149<br>(1 pg) | PDF with attached Audio File. Court Date & Time [ 1/23/2013 1:37:32 PM ]. File Size [ 220 KB ]. Run Time [ 00:00:55 ]. (admin). (Entered: 01/23/2013) |
| 01/23/2013 | 150<br>(2 pgs) | Certificate of Service *(Proof of Service for Subpoena - Lee Harlow, Nani Mau, Inc.)*. Filed by Ryan M. Hamaguchi. (Related document(s): 131). (Hamaguchi, Ryan) (Entered: 01/23/2013) |
| 01/23/2013 | 151<br>(2 pgs) | Certificate of Service *(Proof of Service for Subpoena - Lee Harlow, Ken Direction Corporation)*. Filed by Ryan M. Hamaguchi. (Related document(s): 132). (Hamaguchi, Ryan) (Entered: 01/23/2013) |
| 01/23/2013 | 152<br>(2 pgs) | Service of Subpoena *(Kenneth Fujiyama - Nani Mau, Inc.)*. Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. (Hamaguchi, Ryan) (Entered: 01/23/2013) |
| 01/23/2013 | 153<br>(2 pgs) | Service of Subpoena *(Kenneth Fujiyama - Ken Direction Corporation)*. Filed by Ryan M. Hamaguchi on behalf of First-Citizens Bank & Trust Company. (Hamaguchi, Ryan) (Entered: 01/23/2013) |
| 01/23/2013 | 154<br>(7 pgs) | Certificate of Service *; Exhibits "A" - "C"*. Filed by Neil J. Verbrugge. (Related document(s): 141). (Verbrugge, Neil) (Entered: 01/23/2013) |
| 01/23/2013 | 155<br>(3 pgs) | Certificate of Service *; Exhibit "A"*. Filed by Neil J. Verbrugge. (Related document(s): 143). (Verbrugge, Neil) (Entered: 01/23/2013) |
| 01/23/2013 | 156<br>(5 pgs) | Certificate of Service *; Exhibits "A" and "B"*. Filed by Neil J. Verbrugge. (Related document(s): 143). (Verbrugge, Neil) (Entered: 01/23/2013) |
| 01/23/2013 | 157<br>(5 pgs) | Certificate of Service *; Exhibits "A" and "B"*. Filed by Neil J. Verbrugge. (Related document(s): 146). (Verbrugge, Neil) (Entered: 01/23/2013) |
| 01/23/2013 | 158<br>(2 pgs) | Certificate of Service *; Exhibit "A"*. Filed by Neil J. Verbrugge. (Related document(s): 146). (Verbrugge, Neil) (Entered: 01/23/2013) |
| 01/23/2013 | 159<br>(7 pgs) | Certificate of Service *; Exhibits "A" - "C"*. Filed by Neil J. Verbrugge. (Related document(s): 147). (Verbrugge, Neil) (Entered: 01/23/2013) |
| 01/30/2013 | 160<br>(6 pgs) | Monthly Operating Report for Filing Period December 1, 2012 through December 31, 2012 [AMENDED]. Filed by Debtor Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) (Entered: 01/30/2013) |
| 01/30/2013 | 161<br>2 docs<br>(4 pgs) | Order Granting Motion For Relief From Automatic Stay (Re: First-Citizens Bank & Trust Company) (Related Doc # 95). Date of Entry: 1/30/2013. (JN) (Entered: 01/30/2013) |

| 02/01/2013 | (7 pgs) | [162] | Certificate of Service ; *Exhibits "A" - "C"*. Filed by Neil J. Verbrugge. (Related document(s): [160]). (Verbrugge, Neil) (Entered: 02/01/2013) |
|---|---|---|---|
| 02/01/2013 | (3 pgs) | [163] | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):[161]) Notice Date 02/01/2013. (Admin.) (Entered: 02/01/2013) |
| 02/04/2013 | | 164 | Minutes of Hearing held on: 02/04/2013 Proceedings: (RF). Final Hearing on Insurance Premium Financing. The motion is granted on final bases. Mr. Verbrugge will submit the order. (related dkt # [114]). Addition issues were discussed regarding further use of cash collateral on operations, professional fees and challenge deadlines. One clear point was made that the information the lender is requesting is not unreasonable. Counsel asked and were given comments as a guiding tool. (ov).. Appearances: Neil Verbrugge (debtor). Ted Pettit (First Citizens Bank). Christopher Muzzi (cred. comm.). Cynthia Johiro (State Tax). (vCal Hearing ID (92828)). (courtrm) (Entered: 02/04/2013) |
| 02/04/2013 | (1 pg) | [165] | PDF with attached Audio File. Court Date & Time [ 2/4/2013 9:42:37 AM ]. File Size [ 15024 KB ]. Run Time [ 01:02:36 ]. (admin). (Entered: 02/04/2013) |
| 02/07/2013 | 2 docs (8 pgs) | [166] | Order Authorizing Debtor to Enter into Insurance Premium Financing Agreement (Related Doc # [114] . Date of Entry: 2/7/2013. (LL) (Entered: 02/07/2013) |
| 02/09/2013 | (3 pgs) | [167] | BNC Certificate of Service - Notice of Entry of Order or Judgment (related document(s):[166]) Notice Date 02/09/2013. (Admin.) (Entered: 02/09/2013) |
| 02/15/2013 | 2 docs (69 pgs) | [168] | Supplement *to (1) Motion for Order authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2) on an Interim and Final Basis, and (2) Motion for Order Establishing Interim Fee Application and Expense reimbursement Procedures; Declaration of Kenneth fujiyama; Exhibits "A" - "I"*. Filed by Neil J. Verbrugge. (Related document(s): [8], [10]). (Attachments: # [1] Declaration of Kenneth Fujiyama) (Verbrugge, Neil) (Entered: 02/15/2013) |
| 02/19/2013 | (7 pgs) | [169] | Certificate of Service ; *Exhibits "A" - "C"*. Filed by Neil J. Verbrugge. (Related document(s): [168]). (Verbrugge, Neil) (Entered: 02/19/2013) |
| 02/19/2013 | (43 pgs) | [170] | Amended Declaration of Kenneth Fujiyama *in Support of Supplement; Exhibits "A" - "J"*. Filed by Neil J. Verbrugge. (Related document(s): [168]). (Verbrugge, Neil) **Modified on 2/19/2013 to add relation to document no. [8] and [10]**(LL). (Entered: 02/19/2013) |
| 02/19/2013 | (7 pgs) | [171] | Certificate of Service ; *Exhibits "A" - "C"*. Filed by Neil J. Verbrugge. (Related document(s): [170]). (Verbrugge, Neil) (Entered: 02/19/2013) |
| 02/19/2013 | 3 docs (551 pgs) | [172] | Motion to Appoint Trustee ; Memorandum in Support of Motion; Certificate of Word Count. Filed by Dana R.C. Lyons on behalf of First-Citizens Bank & Trust Company. (Attachments: # [1] Declaration of Ryan Hamaguchi, Exhibits 1 and 2# [2] Declaration of Ted N. Pettit, Exs. 3-14) (Lyons, Dana) **Modified on 2/20/2013 to add docket text** (LL). (Entered: 02/19/2013) |
| 02/19/2013 | (2 pgs) | [173] | Notice of Hearing *on Motion for Appointment of Trustee*. Filed by Dana R.C. Lyons. Hearing for: [172] Motion to Appoint Trustee. Hearing scheduled for 3/25/2013 at 10:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Lyons, Dana) (Entered: 02/19/2013) |
| 02/20/2013 | (38 pgs) | [174] | Declaration of Thomas T. Ueno ; *Exhibit 1*. Filed by Ryan M. Hamaguchi. (Related document(s): [172], [173]). (Hamaguchi, Ryan) (Entered: 02/20/2013) |
| 02/21/2013 | (2 pgs) | [175] | Motion to Quash *Subpoena for Rule 2004 Examination*. Filed by Johnathan Christiaan Bolton on behalf of Neil T. Fujiyama. (Bolton, Johnathan) (Entered: 02/21/2013) |
| 02/21/2013 | 3 docs (26 pgs) | [176] | Memorandum *in Support of Motion to Quash*. Filed by Johnathan Christiaan Bolton. (Related document(s): [175]). (Attachments: # [1] Exhibit(s) A# [2] Exhibit(s) B) (Bolton, Johnathan) (Entered: 02/21/2013) |
| 02/21/2013 | (2 pgs) | [177] | Declaration of Neil T. Fujiyama *in Support of Motion to Quash*. Filed by Johnathan Christiaan Bolton. (Related document(s): [175]). (Bolton, Johnathan) (Entered: 02/21/2013) |
| 02/21/2013 | (3 pgs) | [178] | Certificate of Service . Filed by Johnathan Christiaan Bolton. (Related document(s): [175], [176], [177]). (Bolton, Johnathan) (Entered: 02/21/2013) |

| | | | |
|---|---|---|---|
| 02/21/2013 | (2 pgs) | [179](#) | Notice of Hearing *of Motion to Quash Subpoena for Rule 2004 Examination*. Filed by Johnathan Christiaan Bolton. Hearing for: [175](#) Motion to Quash. Hearing scheduled for 2/25/2013 at 09:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Bolton, Johnathan) (Entered: 02/21/2013) |
| 02/21/2013 | (3 pgs) | [180](#) | Certificate of Service *(Re: Notice of Hearing)*. Filed by Johnathan Christiaan Bolton. (Related document(s): [179](#)). (Bolton, Johnathan) (Entered: 02/21/2013) |
| 02/22/2013 | (4 pgs) | [181](#) | Motion for Relief from Automatic Stay re: Stipulation for Relief . Filed by Christopher J. Muzzi, Neil J. Verbrugge, Samuel MacRoberts on behalf of Deborah Rosenbaum. Fee Amount $176 (MacRoberts, Samuel) (Entered: 02/22/2013) |
| 02/22/2013 | | | Receipt of filing fee for Motion for Relief From Automatic Stay(12-02279) [motion,mot600] ( 176.00). Receipt No. 1474094. Fee amount $ 176.00. (U.S. Treasury) (Entered: 02/22/2013) |
| 02/22/2013 | (2 pgs) | [182](#) | Notice of Hearing . Filed by Samuel MacRoberts. Hearing for: [181](#) Motion for Relief From Automatic Stay. Hearing scheduled for 3/25/2013 at 10:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (MacRoberts, Samuel) (Entered: 02/22/2013) |
| 02/22/2013 | | 183 | **Withdrawal of Motion for Relief from Automatic Stay re: Stipulation for Relief.** The aforementioned document is hereby withdrawn by Deborah Rosenbaum. Notice will be provided to any parties in interest not receiving electronic notice of the withdrawal. /s/ Samuel MacRoberts *This withdrawal is set forth in its entirety on the docket and in the Notice of Electronic Filing created by this entry. No document is attached.* (Related document(s): [181](#), [182](#)). (MacRoberts, Samuel) (Entered: 02/22/2013) |
| 02/22/2013 | (10 pgs) | [184](#) | Second Amended Monthly Operating Report for Filing Period December 1, 2012 through December 31, 2012. Filed by Debtor Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) **Modified on 2/22/2013 to add relation to document no. [160](#) and to add text (Second Amended)**(JN). (Entered: 02/22/2013) |
| 02/22/2013 | (194 pgs) | [185](#) | Monthly Operating Report for Filing Period January 1, 2013 through January 31, 2013. Filed by Debtor Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) (Entered: 02/22/2013) |
| 02/22/2013 | 2 docs (74 pgs) | [186](#) | Supplemental Memorandum in Support of First-Citizens Objection to Motion for Order Authorizing Debtor to Use Cash Collateral and (2) Motion for Order Establishing Interim Fee Application and Expense Reimbursement Procedures . Filed by Creditor First-Citizens Bank & Trust Company. (Related document(s):[8](#) Motion to Approve Use of Cash Collateral filed by Hawaii Outdoor Tours, Incorporated, [10](#) First Day Motion filed by Hawaii Outdoor Tours, Incorporated, [63](#) Response filed by First-Citizens Bank & Trust Company). (Attachments: # [1](#) Declaration of Ryan M Hamaguchi; Exhibits "A" - "D") (Hamaguchi, Ryan) **Modified on 2/23/2013 to add Second Motion** (DM). (Entered: 02/22/2013) |
| 02/25/2013 | (4 pgs) | [187](#) | Stipulated Order Granting Relief from Automatic Stay to Permit Deborah Rosenbaum to Proceed with her Civil Suit in State Court (related document(s)[181](#) Motion for Relief From Automatic Stay). Date of Entry: 2/25/2013. (JN) (Entered: 02/25/2013) |
| 02/25/2013 | (49 pgs) | [188](#) | Third Stipulated Interim Order (i) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. Sections 363(c)(2), (ii) Granting Adequate Protection Pursuant to 11 U.S.C. Sections 363 and 364, (iii) Scheduling of Final Hearing, and (iv) Granting Related Relief; Exhibits A-B (Final Hearing: 2/25/13 at 9:30 a.m.) (related document(s)[8](#) Motion to Approve Use of Cash Collateral, [89](#) Second Stipulated Interim Order). Date of Entry: 2/25/2013. (JN) **Modified on 2/25/2013 to add hearing date** (DM). (Entered: 02/25/2013) |
| 02/25/2013 | | 189 | Minutes of Continued Hearing held on: 2/25/2013. (RF). Disposition: 1)Use of Cash Collateral and 2) Interim Fee and Cost Application Procedures are both continued by agreement to 3/25/13 @ 9:30 a.m. (hearing time changed to 10:30 a.m.) 3)M/Quash Subpoena for Rule 2004 Examination - parties are attempting to resolve issues therefore this hearing is continued to 3/11/13 @ 9:30 a.m. Appearances: Curtis Ching (USTR); Ted Pettit/Ryan Hamaguchi (First-Citizens Bank); Damien Elefante (State Tax); Walter Davison/Jonathan Bolten (Neil Fugiyama); Miranda Tsai (HMSA); Neil Verbrugge (debtor); debtor representative; Christopher Muzzi (creditors committee). Further Hearing on motion to quash is scheduled for 3/11/2013 at 09:30 AM at USBC Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813.(related document(s):[10](#) First Day Motion, [89](#) Stipulated Order, [175](#) Motion to Quash) (OV) (Entered: 02/25/2013) |
| | | [190](#) | Notice of Hearing *(Continued)*. Filed by Neil J. Verbrugge. Hearing for: [8](#) Motion to Approve Use of |

| | | |
|---|---|---|
| 02/25/2013 | (2 pgs) | Cash Collateral, 10 First Day Motion, 146 Notice of Hearing. Hearing scheduled for 3/25/2013 at 10:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) (Entered: 02/25/2013) |
| 02/25/2013 | 191 (1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 2/25/2013 9:40:38 AM ]. File Size [ 812 KB ]. Run Time [ 00:03:23 ]. (admin). (Entered: 02/25/2013) |
| 02/25/2013 | 192 (4 pgs) | Certificate of Service ; Exhibits "A" and "B". Filed by Neil J. Verbrugge. (Related document(s): 184, 185). (Verbrugge, Neil) (Entered: 02/25/2013) |
| 02/25/2013 | 193 (4 pgs) | Certificate of Service ; Exhibits "A" and "B". Filed by Neil J. Verbrugge. (Related document(s): 190). (Verbrugge, Neil) (Entered: 02/25/2013) |
| 02/25/2013 | 194 (2 pgs) | Notice of Hearing (Continued). Filed by Johnathan Christiaan Bolton. Hearing for: 175 Motion to Quash, 179 Notice of Hearing, 189 Minutes - Virtual. Hearing scheduled for 3/11/2013 at 09:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Bolton, Johnathan) (Entered: 02/25/2013) |
| 02/25/2013 | 195 (3 pgs) | Certificate of Service . Filed by Johnathan Christiaan Bolton. (Related document(s): 175, 194). (Bolton, Johnathan) (Entered: 02/25/2013) |
| 03/04/2013 | 196 (4 pgs) | Certificate of Service ; Exhibit "A". Filed by Neil J. Verbrugge. (Related document(s): 184, 185, 190). (Verbrugge, Neil) (Entered: 03/04/2013) |
| 03/04/2013 | 197 2 docs (11 pgs) | Motion for Order Extending Time for Debtor to Assume or Reject Non-Residential Leases. Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated. (Attachments: # 1 Declaration of Kenneth Fujiyama) (Verbrugge, Neil) (Entered: 03/04/2013) |
| 03/04/2013 | 198 (1 pg) | Ex Parte Motion to Shorten Time for 197 Motion, . Filed by Neil J. Verbrugge on behalf of Hawaii Outdoor Tours, Incorporated. (Verbrugge, Neil) (Entered: 03/04/2013) |
| 03/04/2013 | 199 | [The entire order in this matter is set forth in this docket entry. No document is attached ]<br><br>**Order Granting Motion to Shorten Time** (related document(s): 197, 198). The court will hear the Motion to Extend Time to Assume or Reject Nonresidential Leases on an expedited basis at the United States Bankruptcy Court, 1132 Bishop Street, Suite 250L, Honolulu, Hawaii on **3/15/2013 at 10:00 a.m.** Responsive memoranda due: 3/12/2013. Reply memoranda due: 3/14/2013 by 12:00 noon. <u>Movant shall immediately give notice of the hearing and the briefing deadlines to all parties in interest entitled to notice and not receiving electronic notice.</u><br>SO ORDERED. /s/Robert J. Faris, United States Bankruptcy Judge. (Entered: 03/04/2013) |
| 03/05/2013 | 200 (4 pgs) | Certificate of Service ; Exhibits "A" and "B". Filed by Neil J. Verbrugge. (Related document(s): 197, 198). (Verbrugge, Neil) (Entered: 03/05/2013) |
| 03/05/2013 | 201 (6 pgs) | Notice of Appearance by Tom E. Roesser and Request for Notice, Certificate of Service; Exhibit A. Filed by Tom E. Roesser on behalf of Marian Rose Benda Thornton, Trustee of the Eleanor Rose Benda Trust. (Roesser, Tom) (Entered: 03/05/2013) |
| 03/05/2013 | 202 (2 pgs) | Notice of Hearing . Filed by Neil J. Verbrugge. Hearing for: 197 Motion. Hearing scheduled for 3/15/2013 at 10:00 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) (Entered: 03/05/2013) |
| 03/05/2013 | 203 (4 pgs) | Certificate of Service ; Exhibits "A" and "B". Filed by Neil J. Verbrugge. (Related document(s): 202). (Verbrugge, Neil) (Entered: 03/05/2013) |
| 03/06/2013 | 204 (4 pgs) | Certificate of Service : Exhibit "A". Filed by Neil J. Verbrugge. (Related document(s): 197, 198, 202). (Verbrugge, Neil) (Entered: 03/06/2013) |
| 03/06/2013 | 205 (2 pgs) | Amended Notice of Hearing . Filed by Neil J. Verbrugge. Hearing for: 197 Motion, 202 Notice of Hearing. Hearing scheduled for 3/15/2013 at 10:00 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) (Entered: 03/06/2013) |
| | 206 | Amended Notice of Hearing [Notice of Further Continued Hearing]. Filed by Neil J. Verbrugge. Hearing for: 8 Motion to Approve Use of Cash Collateral, 10 First Day Motion, 146 Notice of |

| 03/06/2013 | (2 pgs) | | Hearing, 190 Notice of Hearing. Hearing scheduled for 3/25/2013 at 10:30 AM at Courtroom, 1132 Bishop Street, Suite 250, Honolulu, HI 96813. (Verbrugge, Neil) **Modified on 3/6/2013 to correct location to courtroom**(LL). (Entered: 03/06/2013) |
|---|---|---|---|
| 03/06/2013 | 207 (52 pgs) | | Fourth Stipulated Interim Order (i) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. Sections 363(c)(2), (ii) Granting Adequate Protection Pursuant to 11 U.S.C. Sections 363 and 364, (iii) Scheduling of Final Hearing, and (iv) Granting Related Relief; Exhibits A-B (Final Hearing: 3/25/2013 at 10:30 AM) (related document(s)8 Motion to Approve Use of Cash Collateral, 188 Third Stipulated Order). Date of Entry: 3/6/2013. (JN) (Entered: 03/06/2013) |
| 03/07/2013 | 208 (4 pgs) | | Stipulated Order to Extend Time for Debtor to Assume or Reject Benda Trust Lease (extended to 6/18/2013). Date of Entry: 3/7/2013. (LL) (Entered: 03/07/2013) |
| 03/07/2013 | 209 (5 pgs) | | Supplement *to Monthly Operating Report for January 1, 2013 through January 31, 2013*. Filed by Neil J. Verbrugge. (Related document(s): 185). (Verbrugge, Neil) (Entered: 03/07/2013) |
| 03/08/2013 | 210 (4 pgs) | | Stipulation By and Between First-Citizens Bank & Trust Company and Neil T. Fujiyama *for Withdrawal of (1) Subpoena for Rule 2004 Examination of Neil T. Fujiyama and (2) Neil T. Fujiyama's Motion to Quash Subpoena for Rule 2004 Examination*. Filed by Ryan M. Hamaguchi. (Related document(s): 175, 176, 177). (Hamaguchi, Ryan) (Entered: 03/08/2013) |
| 03/11/2013 | 211 (6 pgs) | | Order Approving Stipulation for Withdrawal of (I) Subpoena for Rule 2004 Examination of Neil T. Fujiyama and (2) Neil T. Fujiyama's Motion to Quash Subpoena for Rule 2004 Examination; Exhibit "A" (related document(s)175 Motion to Quash, 210 Stipulation). Date of Entry: 3/11/2013. (LL) (Entered: 03/11/2013) |
| 03/11/2013 | 212 (7 pgs) | | Certificate of Service ; *Exhibits "A" - "C"*. Filed by Neil J. Verbrugge. (Related document(s): 205). (Verbrugge, Neil) (Entered: 03/11/2013) |
| 03/11/2013 | 213 (7 pgs) | | Certificate of Service ; *Exhibits "A" - "C"*. Filed by Neil J. Verbrugge. (Related document(s): 209). (Verbrugge, Neil) (Entered: 03/11/2013) |
| 03/11/2013 | 214 (6 pgs) | | Certificate of Service ; *Exhibits "A" and "B"*. Filed by Neil J. Verbrugge. (Related document(s): 206). (Verbrugge, Neil) (Entered: 03/11/2013) |
| 03/11/2013 | 215 (2 pgs) | | Certificate of Service ; *Exhibit "A"*. Filed by Neil J. Verbrugge. (Related document(s): 206). (Verbrugge, Neil) (Entered: 03/11/2013) |
| 03/11/2013 | 216 4 docs (146 pgs) | | Debtor's Memorandum in Opposition to Secured Creditor First-Citizens Bank & Trust Company's Motion for Appoinment of Trustee . Filed by Debtor Hawaii Outdoor Tours, Incorporated. (Related document(s):172 Motion to Appoint Trustee filed by First-Citizens Bank & Trust Company). (Attachments: # 1 Declaration of Kenneth Fujiyama# 2 Exhibit(s) "A" - "L"# 3 Declaration of Lee Harlow) (Verbrugge, Neil) (Entered: 03/11/2013) |
| 03/12/2013 | 217 (4 pgs) | | Certificate of Service ; *Exhibits "A" and "B"*. Filed by Neil J. Verbrugge. (Related document(s): 216). (Verbrugge, Neil) (Entered: 03/12/2013) |
| 03/12/2013 | 218 (4 pgs) | | Certificate of Service ; *Exhibit "A"*. Filed by Neil J. Verbrugge. (Related document(s): 216). (Verbrugge, Neil) (Entered: 03/12/2013) |
| 03/12/2013 | 219 (67 pgs) | | Supplemental Declaration of Kenneth Fujiyama *in Support of Debtor's Memorandum in Opposition to Secured Creditor First-Citizens Bank & Trust Company's Motion for Appointment of Trustee; Exhibits "M" - "S"*. Filed by Neil J. Verbrugge. (Related document(s): 172, 216). (Verbrugge, Neil) (Entered: 03/12/2013) |
| 03/13/2013 | 220 (4 pgs) | | Certificate of Service ; *Exhibits "A" and "B"*. Filed by Neil J. Verbrugge. (Related document(s): 219). (Verbrugge, Neil) (Entered: 03/13/2013) |
| 03/13/2013 | 221 (2 pgs) | | Joinder in Debtor's Memorandum in Opposition to Secured Creditor First-Citizens Bank & Trust Company's Motion for Appointment of Trustee . Filed by Creditor Committee The Official Committee of Unsecured Creditors (Hawaii Outdoor Tours, Inc.). (Related document(s):172 Motion to Appoint Trustee filed by First-Citizens Bank & Trust Company, 216 Response filed by Hawaii Outdoor Tours, Incorporated). (Muzzi, Christopher) (Entered: 03/13/2013) |
| | 222 | | Certificate of Service ; *Exhibits A - B*. Filed by Christopher J. Muzzi. (Related document(s): 221). |

| 03/13/2013 | (6 pgs) | | (Muzzi, Christopher) (Entered: 03/13/2013) |
|---|---|---|---|
| 03/13/2013 | (4 pgs) | 223 | Certificate of Service ; *Exhibit "A"*. Filed by Neil J. Verbrugge. (Related document(s): 219). (Verbrugge, Neil) (Entered: 03/13/2013) |
| 03/14/2013 | (3 pgs) | 224 | State of Hawaii's Joinder in Motion for the Appointment of Trustee . Filed by Creditor Department of Taxation, State of Hawaii. (Related document(s):172 Motion to Appoint Trustee filed by First-Citizens Bank & Trust Company). (Johiro, Cynthia) (Entered: 03/14/2013) |
| 03/14/2013 | (3 pgs) | 225 | Certificate of Service . Filed by Cynthia M. Johiro. (Related document(s): 224). (Johiro, Cynthia) (Entered: 03/14/2013) |
| 03/15/2013 | | 226 | Minutes of Hearing held on: 3/15/2013. (RF). Disposition: M/Extend Time to Assume or Reject Nonresidential Leases - there being no opposition, the motion is granted. Mr. Verbrugge will submit the order. Appearances: Neil Verbrugge (debtor); Christopher Muzzi (committee); Ted Pettit (First Citizens Bank). (related document(s):197 Motion) (OV) (Entered: 03/15/2013) |
| 03/15/2013 | (1 pg) | 227 | PDF with attached Audio File. Court Date & Time [ 3/15/2013 9:10:10 AM ]. File Size [ 336 KB ]. Run Time [ 00:01:24 ]. (admin). (Entered: 03/15/2013) |
| 03/18/2013 | 3 docs (108 pgs) | 228 | Reply Memorandum in Support of Motion for Appointment of Trustee . Filed by Creditor First-Citizens Bank & Trust Company. (Related document(s):172 Motion to Appoint Trustee filed by First-Citizens Bank & Trust Company). (Attachments: # 1 Declaration of Thomas T. Ueno, Exhibit "1"# 2 Declaration of Ryan M. Hamaguchi, Exhibits "A"--"I") (Lyons, Dana) (Entered: 03/18/2013) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/20/2013 09:50:04 | | | |
| PACER Login: | we0153 | Client Code: | admin |
| Description: | Docket Report | Search Criteria: | 12-02279 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html |
| Billable Pages: | 22 | Cost: | 2.20 |

**EXHIBIT "G"**
**LETTER OF INTENT FOR CONVERTIBLE SUPER PRIORITY LOAN**
(To be provided no later than 14 days before disclosure statement hearing)

Debtor's Disclosure Statement - 84

**EXHIBIT "H"**
**INTERNATIONAL HOTEL GROUP LETTER OF INTENT**

Debtor's Disclosure Statement - 85



InterContinental Hotels Group

March 14, 2013

Mr. Ken Fujiyama
CEO & Chairman
Naniloa Volcanoes Resort
93 Banyan Dr.
Hilo, Hawaii 96720

Three Ravinia Drive
Suite 100
Atlanta, GA 30346-2149
www.ihg.com

Aloha Ken:

Thank you again for your continued consideration and interest in converting the Naniloa Volcanoes Resort to the Holiday Inn Hilo Resort. I think we have a pretty good understanding of your needs and the situation and plan to make it work for all involved. With the enterprise values of IHG coupled with the re-launch of Holiday Inn and the global roll-out of Holiday Inn Resorts, the timing is perfect. We feel your property fits in well with the direction of the brand. Plus, the opening of the Holiday Inn Beachcomber Resort in Waikiki has worked very well.

When we met this summer, I outlined the many strengths of IHG and Holiday Inn …our powerful reservation systems, IHG's growing global sales team, the now 53 million member Priority Club Rewards loyalty program (the largest in the industry), the connection with Holiday Inn Club Vacations and ultimately…our ability to step in and work with you and your team to create a solid resort option for our guests throughout the world.

1. <u>Description of Hotel</u>. You own the Naniloa Volcanoes Resort located at 93 Banyan Dr., Hilo, Hawaii proposed to be licensed as a Holiday Inn Resort.

2. <u>Branding.</u> We are proposing Holiday Inn Resort branding. IHG has produced a Property Improvement Plan (really a deficiency list recently sent to you by Paul Hilton) which is the basis for discussion on what would need to be accomplished prior to entering the system. The Hotel will be required to meet the applicable Holiday Inn Resort brand standards as well as certain operational brand standards to allow for some consistency throughout the portfolio.

3. <u>Hotel Naming.</u> The exact hotel naming convention will be mutually agreed upon by both parties prior to execution of the license. We propose the name Holiday Inn Resort Hilo.

       

Six Continents Hotels, Inc.
A Member of the InterContinental Hotels Group

4. <u>Priority Club Rewards Redemption Rates.</u>  Priority Club Rewards ("PCR") will modify its standard reimbursement policy.  For High Occupancy nights of 95% or higher, IHG will reimburse the hotel the Average Daily Rate for that night.  For occupancy night of less than 95%, IHG will pay the hotel according to the schedule below which is ***double*** our normal IHG reimbursement program:

| Tier | ADR Between | Reimbursement to Hotel |
|------|-------------|------------------------|
| 1    | $150 +      | $100                   |
| 2    | $126 - $149 | $70                    |
| 3    | $76 - $125  | $50                    |
| 4    | $0 -$75     | $40                    |

These rates could be subject to future revision to the PCR programs, but in adopting any such future revisions, reimbursements to the Hotel would reflect consideration given to the annual average daily rate and redemption volumes of the Hotel as compared to those of other hotels participating in the PCR program.  The Hotel may need to agree to make a higher percentage of guest room inventory available for PCR redemptions at the Hotel than the minimum required by PCR.

*Once an application has been processed, I will go to work internally to see if we can provide a flat amount which would more in keeping with your current ADR.*

5. <u>License.</u>  A summary of the primary business terms we would present to our Franchise Approval Committee ("FAC") follow.  Please refer to the FDD for a complete listing of fees and terms.

Term:  The initial term of the License would be ten (10) years after the Hotel opens as a Holiday Inn Resort.  IHG would provide one mutual window within the license agreement...at the end of the fifth year.  All liquidated damages would be linked to these potential termination dates.  Please see the liquidated damages section of our license agreement in the FDD provided.

Room Count:  We understand that there are currently 325 rooms considered guest room inventory.  We also understand that 175 of those rooms have been renovated and these are the rooms that would be included in the inventory of the Holiday Inn Resort.  The other rooms would not be rented until they were renovated to Holiday Inn standards

2

Application Fee: Our normal application fee is $500 per room or $87,500 for the Holiday Inn Resort brand based on 175 rooms. We are prepared to offer a flat amount of $50,000, of which $10,000 is due with the application and the remaining fee due prior to license execution. If you do not sign a license agreement with IHG, any application fees will be refunded.

Royalty Fee: The standard Royalty Fee is equal to five percent (5%) of the Gross Rooms Revenue. We are willing to offer advertising assistance in the first year to help with the ramp up equal to 2% of Gross Rooms Revenue (a net 3.0% Royalty Fee). We will also provide an advertising assistance of 1% for the second year.

Other Fees: The following fees listed in the FDD will be charged separately as they have been included in the Royalty and Incentive Fees proposed above:

    1)        Services Contribution Fee: Three percent (3%) of Gross Rooms Revenue of the Holiday Inn Resort, utilized for marketing and reservations services.

    2)        Technology Fee: $12.51 per room per month

Revenue Management for Hire (RMH): IHG could provide revenue management services to assist in optimizing channel performance for this Hotel. RMH fees would be charged for separately. This is an area which we may be able to assist to a greater capacity given an application.

Priority Club Fees: For The Holiday Inn, 4.75% of qualifying full folio revenue of PCR members for qualifying stays plus 1.2% of qualifying meeting revenue. Additionally, a one time initial Priority Club marketing contribution of $10 per room in the Hotel would be payable with the first payment of the Royalty Fee. IHG can change the Priority Club Fees but any proposed changes to Priority Club Fees are subject to the vote of all hotels in good standing.

Other Fees: For a full listing of all applicable fees and conditions relating to them please refer to Items 5 and 6 of the FDD, but noting the exceptions outlined above in section 5(f) and 5(g). Fees, excluding Rooms Royalties, can be increased in accordance with the provisions of the license and the brand standards applicable to hotels in the Holiday Inn system.

Liquidated Damages: The standard provision for liquidated damages is three years of fees.

3

7. <u>FAC Approval</u>. IHG has no obligation to accept your application, and in any event, such acceptance is conditioned upon approval by IHG's Franchise Approval Committee ("FAC"). This letter is therefore not an offer of a franchise and the proposed business terms described herein remain subject to IHG's application and approval process. We would however support and recommend the business terms summarized in this letter to the FAC in their consideration of your application.

8. <u>Non-Binding Understanding</u>. This Letter is intended only to reflect the general understanding of the parties as to the proposed application. This Letter is non-binding and no party has incurred any obligation or liability whatsoever by virtue of this Letter.

Ken, we are prepared to move forward upon your acceptance of this proposal. I need the signed receipt document for our FDD and the completed application form. Our Franchise Approval Committee meets every two weeks and we need the application two or three weeks prior to prepare for any meeting. You already have an application for that purpose.

There is still a considerable amount of renovation work to be done at the resort prior to opening as a Holiday Inn Resort. We are prepared to provide a more detailed PIP upon submission of an application.

Again…thank you for your consideration. I will follow up with you in the next week. Please feel free to call me at 503-443-1550 if you have any questions. Mahalo.

Sincerely,

Ed Shaw
Director – Franchise Development
5464 Southwood Dr.
Lake Oswego, OR  97035
503-443-1550

4

1

**EXHIBIT "I"**
**LETTER OF INTENT TO FUND $1.5M TO PAY CLASS 2 AND 3**
**CLAIMANTS, REPLENISH PREFORMANCE BONDS AND TO PAY**
**ADMINISTRATIVE EXPENSES**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**AMERICA ASIA TRAVEL CENTER INC.**
117 E. Garvey Avenue
Monterey Park, California 91755
Telephone (626)571-2988
Fax (626)571-1102

March 15, 2013

Mr. Kenneth Fujiyama
CEO
Hawaii Outdoor Tours, Inc.
P.O. Box 1417, Hilo, Hawaii 96720

Re:    Proposal to Fund New Value, case # Case No. 12-02279 (RJF)

Helen Severson proposes to fund $1,500,000 on the Effective date of the Reorganization Plan in case # 12-02279 (RJF) estimated to be funded on or about September or October of 2013 as a new value contribution to fund the reorganization plan of Hawaii Outdoor Tours, Inc.

The funding of the $1,500,000 is contingent upon bankruptcy court approval of Debtors March, 2013 Reorganization Plan and a final review of Helen Severson of such approved plan before funding is released. The release of funds shall be at Helen Severson's sole discretion upon review of the Court approval of Debtor's reorganizational plan.

The monies to fund the New Value Contribution are available through a credit line in favor of _AATC_ that has in excess of $1,500,000 available for draw down.

The funds shall be utilized to make payments due under the reorganization plan as follows:

Approximately $521,861.15 shall be utilized to pay in full, the Hawaii State Tax Collector, Department of Taxation referenced as Class 2 in the Reorganization Plan.

Approximately $423,673.43 shall be utilized to pay in full, the Director of Finance, for Real Property Taxes, County of Hawaii referenced as Class 3 in the Reorganization Plan.

Approximately $259,971.03 shall be utilized to replenish the Performance Bond such that the balance on deposit at First Citizens Bank in Torrance, California is $500,000.

Approximately $2,526.15 shall be utilized to pay in full, the State of Hawaii Department of Land and Natural Resources past due lease payment.

The approximately $290,000 balance remaining after payment of the above to be utilized to pay administrative claims as approved by the Court.

In exchange for the herein referenced New Value contribution, Helen Severson shall receive a ten percent (10%) shareholder interest in Hawaii Outdoor Tours Inc.

_Helen Severson_
Helen Severson

Agreed to and Accepted this 20 day of March, 2013

_Kenneth Fujiyama_
Kenneth Fujiyama, CEO
Hawaii Outdoor Tours, Inc.